Michael P. Balaban   State Bar No. 9370
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, NV  89141
(702)586-2964
Fax: (702)586-3023
E-Mail: mbalaban@balaban-law.com

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SHEILA SALEHIAN, | CASE NO. 2:21-cv-01512-GMN-NJK |
| | PLAINTIFF'S RESPONSE TO DEFENDANTS STATE OF NEVADA, NEVADA STATE TREASURER'S OFFICE AND ZACH CONINE, STATE TREASURER'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6). |
| Plaintiff, | |
| vs. | |
| STATE OF NEVADA, NEVADA STATE TREASURER'S OFFICE; ZACH CONINE, STATE TREASURER; DOES 1-50; and ROE CORPORATIONS 1-50, | |
| Defendants. | |

Plaintiff SHEILA SALEHIAN ("Plaintiff" or "Salehian") submits this Response to Defendants STATE OF NEVADA, NEVADA STATE TREASURER'S OFFICE and ZACH CONINE, STATE TREASURER'S (collectively "Defendants" or individually "State of Nevada" or "Conine") motion to dismiss pursuant to Fed. Civ. P. 12(b)(1) and 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

In what increasingly has become the norm in this District, Defendants and specifically their attorneys have filed a motion to dismiss "right out of the gate", before either party has had the chance to do any discovery.

They have done so under the mistaken belief that the *Iqbal/Twombly* standard now makes it acceptable to file a motion to dismiss as a procedural start to defending the case no matter what facts are plead in the complaint.

The *Iqbal/Twombly* standard does not in any way change the rules of pleading under the Federal Rules of Civil Procedure. Under Rule 8(a)(2), a complaint must only include a short and plain statement of the claim showing that the pleader is entitled to relief. Detailed *factual allegations* are *not* required.

That being said, much of Defendants' arguments in their motion to dismiss is that the allegations in the complaint are conclusory and speculative.

In fact there are a lot more facts plead than need to be plead pursuant to Rule 8(a)(2). It is clear from the motion to dismiss that regardless of what facts were plead, a motion to dismiss would have been filed by the Defendants.

When deciding a motion to dismiss, the Court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party.

Assuming that is done in this case, Defendants' motion to dismiss should be denied in its entirety and Defendants should be ordered to answer Plaintiff's Complaint forthwith.[1]

---

[1] Plaintiff will no longer pursue cause of actions six through ten and thus agrees to dismissal of the same.

## II.

## STATEMENT OF FACT[2]

"Plaintiff, a 59 year old female, was hired by Defendant on January 9th, 2012 as a Senior Deputy Treasurer.  Salehian's last position was Executive Director of the Governor Guinn Millennium Scholarship Program, prior to her termination without cause, which occurred on October 28th, 2019. [Complaint at ¶12.]

Prior to her termination, Salehian was repeatedly subjected to negative comments about her age, and age related abilities, "i.e., dot matrix printers", "policies that hadn't been updated in 20 years", "desire to talk on the phone to customers versus handle issues online because she "was not a millennial", assigned a smaller office than a younger Deputy who had less seniority in the Office, told 'she had been with the state forever' and the State was moving to a new location to refresh the office, and were interested in 'fresh faces', and starting with a clean slate. [Complaint at ¶13.]

In addition, Plaintiff experienced a reduction of duties, media outreach, attending an invitation only conference, all directed toward younger staff, etc.  Further, Salehian was continually asked for information, reports and data, only to be repeatedly told by Chief of Staff Miles Dickson ("Chief of Staff Dickson" or "Dickson"), that he "had not had a chance to review what he had asked for" despite the urgent need for the information which required client to work numerous extra hours to provide. [Complaint at ¶14.]

Also Plaintiff was never allowed to pick up Treasurer Conine and accompany him to public facing meetings or functions, despite the fact that it was a main component of her job for the past 7 years, before Treasurer Conine took office in January 2019.  Instead other younger staff, all under 40 years of age, were the only employees allowed to accompany Treasurer Conine to public functions or Treasurer interviews, even when Salehian sourced and set up the interviews. [Complaint at ¶15.]

Further in approximately July of 2018, Dennis Stoddard (male), Senior Deputy Treasurer, was asked to resign but was allowed to retire and get his PERS retirement benefits and PEBP health benefits and was also allowed to "ride out" his accrued vacation time before he left, unlike Plaintiff who was terminated with an unfavorable termination code unless she signed away her legal rights, and was told she had to leave within 90 minutes. [Complaint at ¶16.]

Also in approximately July of 2018, Richard Foreman (male), IT Director, was investigated for wrongdoing, but was put on paid leave for over a month while the investigation was being conducted.  Once the investigation concluded he was allowed to retire after "riding out" his accrued vacation time with full PERS retirement benefits and PEBP health benefits like Stoddard and a favorable termination code. [Complaint at ¶17.]

---

[2]The Statement of Fact is taken verbatim from the Plaintiff's First Amended Complaint.

Plaintiff, as set forth above was terminated with an unfavorable termination code and was told she had to leave within 90 minutes.  She was not allowed to continue her employment by using her accrued vacation time and was not offered early retirement.  In addition, because of the immediate nature of her termination, she lost her option to buy additional years of retirement, which she had already done in the past, and planned to do further before leaving the Nevada State Treasurer's Office. [Complaint at ¶18.]

Finally in January of 2019, Grant Hewitt (male), Chief of Staff, was terminated for cause 'for lying to the Treasurer' as stated by Treasurer Conine on January 9th, 2019.  Further, despite the fact that he was terminated for cause, Hewitt was given paid administrative leave, and allowed to keep his office, computer access, building access, health insurance, etc. until the end of the month, unlike Plaintiff who was asked to leave immediately and punitively put on 'leave without pay', unless she signed a waiver of her legal rights. [Complaint at ¶19.]

In the fall of 2019 Salehian was seen by Kristen Addis Brown, M.D. at Thomas Dermatology to treat four skin cancer lesions.  In early October 2019 she began a topical chemotherapy treatment drug for the cancer.  On October 11th, 2019 Salehian went home with scabbing and pain on her face from the treatment and thereafter was granted a request to work from home by Treasurer Conine and Chief of Staff Dickson until October 28th, 2019. [Complaint at ¶20.]

On October 17th, 2019 Salehian was again treated by Dr. Brown, who filled out FMLA paper work for intermittent FMLA leave for continued intermittent treatment that would be administered on an ongoing basis to treat Plaintiff's condition. [Complaint at ¶21.]

Salehian had a scheduled meeting with Treasurer Conine and Chief of Staff Dickson, along with her Supervisor, Beth Yeatts at 3:30 pm on Monday October 28th, 2019, her first day back in the office. [Complaint at ¶22.]

Plaintiff planned to turn in her completed FMLA paperwork at that meeting, since the meeting was in person (normally it was by teleconference), and Salehian thought it would be more appropriate to make the request face to face, at her weekly meeting.  Instead of meeting as planned, the Chief of Staff Dickson asked Yeatts to "give them a few minutes" before joining the weekly meeting upstairs. [Complaint at ¶23.]

Once Salehian arrived, instead of accepting the FMLA paperwork, Treasurer Conine and Chief of Staff Dickson proceeded to inform Plaintiff that her employment with the Nevada State Treasurer had ended.  Plaintiff was shocked, surprised and completely caught off guard by the firing and despite repeated requests by Salehian for the reason behind the termination, Treasurer Conine refused to give a reason for the termination, except to say "he was going in a different direction" and Chief of Staff Dickson would present Plaintiff her final paperwork. [Complaint at ¶24.]

Plaintiff was terminated without receiving any prior disciplinary action of any kind. Further she was performing her job satisfactorily at the time of her termination and in fact was

given letters of recommendation by the past two State Treasurer's, the honorable Lt. Governor Kate Marshall and the honorable State Treasurer Dan Schwartz, as well as her immediate supervisor for the prior two years, Yeatts. [Complaint at ¶25.]

Further when Plaintiff was terminated, she had just finished coordinating a nationwide training conference for all State Treasurer's offices and had been recognized by the National Association of State Treasurer's, with appreciation for the role that she played in planning the successful statewide conference.  The Deputy who co-chaired that conference from the State of Washington thanked Salehian and provided a letter of recommendation. [Complaint at ¶26.]

Salehian was 58 years old at the time of her termination, and Yeatts, Plaintiff's supervisor, age 62 at the time of her termination, was terminated the same day as Salehian without cause like Plaintiff.  Further Yeatts was replaced with an employee half her age, Kirsten Van Ry, who was approximately 30 years old when she was hired to replace Yeatts, and Plaintiff's replacement, Tya Mathis-Coleman, was approximately 39 years old when she replaced Salehian.  In addition, when Mathis-Coleman replaced Plaintiff, she had no prior experience in financial services. [Complaint at ¶27.]

In fact, eight out of the ten positions hired or promoted in the College Savings Division since Treasurer Conine took office in January 2019 were individuals under the age of 40. [Complaint at ¶28.]"

### III.

### APPLICABLE LEGAL STANDARD

Rule 12(b)(6) motions test the sufficiency of a pleading. *Smith v. Frye*, 488 F.3d 263, 274 (4th Cir. 2007).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (1980).

Under Rule 12(b)(6), a claim may be dismissed either because it asserts a legal theory that is not cognizable as a matter of law or because the factual tale alleged is implausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

When a claim is challenged under this Rule, the court construes the pleading liberally in the pleader's favor. *Kaltenbach v. Richards*, 464 F.3d 524, 526-527 (5th Cir. 2006).  The court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party.

1   *Twombly*, 550 U.S. at 555.

2       No claim will be dismissed merely because the trial judge disbelieves the allegations or

3   feels that recovery is remote or unlikely. *Twombly*, 550 U.S. at 555-556.

4       Courts will test for comportment with Rule 12(b)(6) by performing a two-step inquiry-first

5   legal conclusions will be isolated, so as to uncover the pleading's purely factual allegations, and

6   second, those factual allegations will be presumed true and then examined for plausibility. *Iqbal*,

7   556 U.S. at 677-678 (1980).  Pleadings that are unable to show the requisite plausible entitlement

8   to relief are thereby exposed by Rule 12(b)(6) at an early stage in the litigation so as to minimize

9   the costs of time and money by litigants and courts. *Twombly*, 550 U.S. at 558.

10      Finally, if the court grants a motion to dismiss, it must then decide whether to grant leave

11  to amend.  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so

12  requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the

13  part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue

14  prejudice to the opposing party by virtue of allowance of the amendment, futility of the

15  amendment, etc." *Foman v. Davis,* 371 U.S. 178, 182 (1962).  Generally, leave to amend is only

16  denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See*

17  *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992).

18

19                                          **IV.**

20                                      **ARGUMENT**

21      **A.    Defendants waived its Eleventh Amendment Immunity when it Removed their**
        **ADEA, FMLA and ADA Claims to Federal Court.**
22

23      "A state that removes a case to federal court waives its immunity from suit on all federal-

24  law claims". *Walden v. State of Nevada*, 945 F.3d 1088, 1090 (9th Cir. 2019).  It is "anomalous or

25  inconsistent" for a State to invoke federal jurisdiction by removing the case and simultaneously

26  claim Eleventh Amendment immunity, thereby denying federal jurisdiction. *Id.* at 1093 (quoting

27  *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 616 (2002). See also

28  *Embury v. King*, 361 F.3d 562, 566 n.20 (9th Cir. 2004)(which did not expressly decide whether a

removing State defendant remains immunized from federal claims that Congress failed to apply to the States through unequivocal and valid abrogation of their Eleventh Amendment immunity.)

Further in their supplemental filing dated September 22, 2021 the Defendants even admit that they are prevented from seeking dismissal of claims based on sovereign immunity.  See *Echeverria v. State of Nevada*, 137 Nev. Adv. Op. 49, 2021 WL 4235014 (Nev. Sept. 16, 2021).

Thus this court should disregard Defendants' assertion that they have sovereign immunity under the Eleventh Amendment pertaining to Plaintiff's claims under the Age Discrimination in Employment Act ("ADEA"), Family and Medical Leave Act ("FMLA") or the Americans with Disabilities Act ("ADA").

**B.    Discretionary Act Immunity does not Bar Plaintiff's Claims for a Number of Reasons.**

Defendants claim that Plaintiff's federal and state claims are alternatively barred because Defendants are protected by discretionary-act immunity pursuant to NRS 41.032(2) is faulty for number of reasons.

First, discretionary-act immunity does not apply if the actions were taken in bad faith. See *Falline v. GNLV Corporation*, 823 P.2d 888, 892 (1991).  Defendants claim that Salehian does *not* allege any facts establishing bad faith but this is just not the case.  Plaintiff has alleged that Defendants violated and terminated her in violation of the ADEA, FMLA, ADA and Title VII of the Civil Rights Act of 1964 ("Title VII") which is certainly in bad faith because it is against the law.

Second, the United States Supreme Court has made clear that discretionary-act immunity only exists when government agents are acting in a manner grounded in policy and not expressly prohibited statute. *U.S. v. Gaubert*, 499 U.S. 315 (1991).  Clearly if Defendants were acting in a manner that violates federal statutory law under the ADEA, FMLA, ADA and Title VII, they were acting in a manner that *was* expressly prohibited statute.

Third, it does not make sense that Defendants are *not* immune under the Eleventh Amendment for federal law claims they choose to remove to federal court and yet they are

immune under discretionary-act immunity under NRS 41.032(2).  After all there would always have to be some discretionary act performed to violate one of the aforementioned statutes and thus the State would never be liable under discretionary-act immunity.

Fourth, the cases that Defendants cite in support of their argument that they have discretionary-act immunity under NRS 41.032(2), ie., *Wayment v. Holmes*, 912 P.2d 816 (Nev. 1996) and *Cates v. Public Employees' Retirement Systems of Nevada*, No. 3:05-cv-00696-LRH-RAM, 2008 WL 873611, *6(D. Nev. Mar. 27, 2008), involve claims for Tortious Discharge in Violation of Public Policy *not* federal and state statutory discrimination claim like here.

And finally, assuming discretionary-act immunity does *not* apply here, Conine would also *not* be immunity from liability because he was acting in his official capacity as State Treasurer and director of the Nevada State Treasurer's Office when he terminated Salehian. [Complaint at ¶¶5 and 24.]

Thus this court should also disregard Defendants' claim that have they have discretionary-act immunity under NRS 41.032(2) here.

**C.    Plaintiff has Exhausted her Administrative Remedies.**

Defendants claim that the Court does not have subject-matter jurisdiction to hear allegations that were not in Plaintiff's Charge of Discrimination because of failure to exhaust her administrative remedies.  This is contrary to existing law.

The administrative exhaustion requirement is satisfied if the allegations of the civil action are within the scope of the Equal Employment Opportunity Commission ("EEOC") charge, any EEOC investigation actually completed, or any investigation that might reasonably have been expected to grow out of the charge.  Thus, the judicial complaint may encompass any discrimination "like and reasonably related to" the allegations of the EEOC charge. *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 899 (9th Cir. 1994).

Accordingly, "[i]t is sufficient that the EEOC be apprised, in general terms, of the alleged discriminatory parties and the alleged discriminatory acts." *Sosa v. Hiraoka*, 920 F.2d 1451, 1458

(9th Cir. 1990); see also *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002) – EEOC charges construed "with utmost liberality".

In addition to the claims presented to the EEOC, the lawsuit may include subsequent conduct "like or reasonably related to" the charges filed. *Sosa v. Hiraoka*, 920 F.2d at 1456.

Thus here the Plaintiff's Charge of Discrimination clearly contains claims based on sex/gender, age and disability (ie. all these boxes are checked in Plaintiff's Charge of Discrimination that Defendants have attached as Exhibit No. 1 to their motion to dismiss) and any allegations alleged in the complaint clearly are within the scope, grow out of or are like or related to the this Charge of Discrimination.

Further Defendants object to Plaintiff's age and gender discrimination claims because the right to sue letter received from the Department of Justice ("DOJ") only relates to the claims filed for disability discrimination under the ADA and Rehabilitation Act.

Salehian is not sure why the right to sue letter only contains claims under the ADA and Rehabilitation Act but the Charge of Discrimination clearly includes claims for sex/gender and age discrimination as set forth above.[3]

Finally Defendant object to the state law claims for age and gender discrimination contained in the first amended complaint because they aren't included in the Charge of Discrimination.

State agencies are authorized to investigate and enforce Title VII claims pursuant to "work-sharing agreements" with the Equal Employment Opportunity Commission ("EEOC"). *42 U.S.C. § 2000e-8(b); 29 C.F.R. §1626.10(c).*

As a result of such work-sharing agreements, each agency designates the other as its agent for the purpose of receiving charges on discrimination claims that overlap under federal and state law. Thus, charges filed with either the EEOC or the state agency are deemed "constructively

---

[3]Further the charge number on the Charge of Discrimination clearly matches the charge number on the notice of right to sue from the DOJ, ie., 487-2020-00488, so Salehian is not sure why it doesn't include the age and sex/gender claims.

filed" with the other. *29 C.F.R. §1626.10(c)*; *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175-1176 (9th Cir. 1999).

Plaintiff does not know why the state law claims are not in the Charge of Discrimination, but because when a charge is filed with the EEOC or the state agency it is deemed to be constructively filed with the other, it seems only equitable to allow Salehian to proceed with the state law claims in her current first amended complaint. Further they are within the scope, grow out of or are like or related to the EEOC Charge of Discrimination. See *EEOC v. Farmer Bros. Co., supra*, 31 F.3d at 899.

**D.    Plaintiff has Plausibly Plead a Cause of Action for Age Discrimination.**

ADEA, *29 USC* § 621 et seq., protects workers aged forty or older from employment discrimination on the basis of their age. The ADEA "reflects a societal condemnation of invidious bias in employment decisions." See *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 357 (1995).

Congress passed the ADEA to address the practice of employment discrimination against older workers, and especially to redress the difficulty such workers faced in obtaining new employment after being displaced from their jobs. The ADEA also addresses arbitrary age limits that were common at the time of its passage, and embodies congressional recognition that older workers are particularly at risk for long-term unemployment and its undesirable results: deterioration of skill, morale and employer acceptability. *29 USC § 621(a)(1)-(3)*.

The ADEA prohibits discrimination in employment against workers 40 or older by making it unlawful for an employer to do any of the following because of an employee's age:

- to fail or refuse to hire, or to discharge, any individual or otherwise to discriminate against any individual with respect to his or her compensation, terms, conditions or privileges of employment;
- to limit, segregate or classify employees in any way that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his or her status as an employee; or
- to reduce the wage rate of any employee in order to comply with the ADEA. *29 USC § 623(a)*.

The ADEA prohibits employers from failing or refusing to hire, discharging, or otherwise discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." *29 U.S.C. §623(a)(1)*.  ADEA claims based on circumstantial evidence use the burden shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-06 (1973); *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  Thus, the proof structure in an ADEA case is the same as that of Title VII. *Pejic v. Hughes Helicopters, Inc.*, 840 F.2d 667, 674 (9th Cir. 1988).[4]

The plaintiff carries the initial burden of establishing a prima facie case of age discrimination. *Diaz*, 521 F.3d at 1207.  If the plaintiff "has justified a presumption of discrimination," the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. *Id.*  If the employer satisfies its burden, the employee must then prove that the reason advanced by the employer constitutes mere pretext for unlawful discrimination.  The plaintiff has the "ultimate burden of proving that age was a 'determining factor' in the employer's alleged unlawful conduct." *Pejic*, 840 F.2d at 674.

A plaintiff can establish a prima facie case of age discrimination by demonstrating he was "(1) at least forty years old, (2) performing his job satisfactorily, (3) discharged, and (4)  either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise "giving rise to permit an inference of age discrimination." *Diaz*, 521 F.3d at 1207-1208.

As set forth in Plaintiff's first amended complaint, she has alleged that she was 58 years old when she was terminated (¶31 of first amended complaint), performing her job satisfactorily at the time of her termination (¶32 of first amended complaint), discharged (¶31 of first amended

---

[4] Although the United States Supreme Court ruled that "but-for" causation is required in an ADEA case, the Supreme Court has *not* ruled definitively on whether the *McDonnell Douglas* framework still applies to ADEA cases and for that reason courts still use the *McDonnell Douglas* analysis in evaluating disparate treatment cases brought under the ADEA. *Gross v. FBL Fin'l Services, Inc.*, 129 S.Ct. 2343, 2349, fn. 2.s

complaint) and was replaced by an employee who was 39 years old and had no prior experience in financial services (¶¶27 and 33 of first amended complaint).[56]

Thus it is mindboggling how Defendants and their attorneys are making a good faith argument that the first amended complaint is not sufficiently plead.

Further there is no pleading requirement to plead "but-for" causation and the two cases they cite are *not* Rule 12(b)(6) sufficiency of pleadings cases, but rather appeal from a summary judgment, *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012), and an appeal after trial, *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

In addition Plaintiff has plead further facts to support her age discrimination claim in paragraphs 13 through 15 of her first amended complaint.

As set forth above, the court presumes that all well-pleaded allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 555.

If this is done, Salehian has clearly plead sufficient facts to make a claim for age discrimination plausible here.

**E.    Plaintiff has Plausibly Plead a Cause of Action for Age Harassment.**

As set forth above, the ADEA protects workers aged forty or older from employment discrimination on the basis of their age.  The ADEA "reflects a societal condemnation of invidious bias in employment decisions." *McKennon v. Nashville Banner Pub. Co., supra,* 513 U.S. at 357.

Although the United States Supreme Court has not addressed this issue, several federal circuits have recognized hostile work environment claims based on age. See *Crawford v. Medina General Hospital*, 96 F.3d 830, 834 (6th Cir. 1996); *Burns v. AAF-McQuay, Inc.*, 166 F.3d 292,

---

[5] Most courts hold that 5 years is substantial younger, [See *Williams v. Raytheon*, 220 F.3d 16, 20 (1st Cir. 2000); *Whittington v. Nordam Group, Inc.*, 429 F.3d 986, 996 (10th Cir. 2005)], while some courts hold there must be at least a 10 year difference. See *Radue v. Kimberly-Clark Corp*., 219 F.3d 612, 619 (7th Cir. 2000); *Bennington v. Caterpillar, Inc.*, 275 F.3d 654, 659 (7th Cir. 2001).

[6] Plaintiff further alleges in paragraphs 27 of the first amended complaint that Plaintiff's supervisor was  terminated the same day as Salehian and was 62 years old at the time of her termination and replaced by someone that was

1   294 (4ᵗʰ Cir. 1999); *EEOC v. Massey Yardley Chrysler Plymouth, Inc.*, 117 F.3d 1244, 1249 (11ᵗʰ

2   Cir. 1997); *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5ᵗʰ Cir. 2011); *Stapp v. Curry*

3   *County Board of County Commissioners*, 672 Fed.Appx. 841, 847 (10ᵗʰ Cir. 2016); *Rivera-Rivera*

4   *v. Medina & Medina, Inc.*, 898 F.3d 77, 91 (1ˢᵗ Cir. 2018).

5          The requirements for age harassment claim are as follows:

6   • employee is at least 40 years old;

7   • employee was subjected to age-related harassing works or actions;

8   • the harassment unreasonably interfered with the employee's work performance and

9      created an objectively intimidating, hostile or offensive work environment; and

10  • there is a basis for holding the employer responsible for the harassment. *Crawford*

11     *v. Medina General Hospital*, 96 F.3d at 836.

12         Here as set forth above, Plaintiff's first amended complaint alleges that she was 58 years

13  old when she was terminated (ie. at least forty years old) see paragraph 31 of first amended

14  complaint; "[p]rior to her termination, Salehian was repeatedly subjected to negative comments

15  about her age, and age related abilities, 'i.e., dot matrix printers', 'policies that hadn't been

16  updated in 20 years', 'desire to talk on the phone to customers versus handle issues online because

17  she 'was not a millennial", assigned a smaller office than a younger Deputy who had less seniority

18  in the Office, told 'she had been with the state forever' and State was moving to a new location to

19  refresh the office, and were interested in 'fresh faces', and starting with a clean slate" (ie.

20  employee was subjected to age-related harassing works or actions) see paragraph 13 of first

21  amended complaint; the harassment unreasonably interfered with the employee's work

22  performance and caused emotional distress as alleged in paragraph 43 of the first amended

23  complaint; and there is a basis for holding the employer responsible for the harassment because it

24  created a hostile environment in the workplace for Salehian, as alleged in paragraph 41 of the first

25  amended complaint.

26

27  _____

28  approximately 30 years of age and in paragraph 28 that "eight out of the ten positions hired or promoted in the College
Savings Division since Treasurer Conine took office in January 2019 were individuals under the age of 40."

Harassment is actionable if it is "so severe or pervasive as to alter the conditions of (the victim's) employment and create an abusive working environment." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270 (2001).

The case that Defendants cite for the proposition that the alleged harassment here was not severe or pervasive enough to be actionable under the law, ie. *Koutseva v. Wynn Resorts Holding, LLC*, Case No. 2:17-cv-3021-JCM-CWH, 2018 WL 3731085, *6-*7 (D. Nev. Aug. 6, 2018), is no more than Judge Mahan's opinion in that case. It is not a published opinion and Plaintiff's attorney could find no published authority that makes it proper to dismiss an age harassment claim at the pleading stage as the Defendants are asking the court to do here. Even on summary judgment, it is more appropriate to leave the issue of severity or pervasiveness to the fact-finder.

Where the severity or pervasiveness of abuse is questionable, "it is more appropriate to leave the assessment to the fact-finder than for the court to decide the case on summary judgment." *Davis v. Team Electric Company*, 520 F.3d 1080, 1096 (9th Cir. 2008).

Further the allegations in *Koutseva* and this case are vastly different. In fact in that case, the court only found one comment that even referenced harassment and found that that comment referenced Koutseva's gender, not her age.

In contrast, as set forth above, Salehian alleges a number of comments that are clearly age related. And this is only the pleading stage. When Defendants take Plaintiff's deposition it is possible that she remembers other ageist comments which were made during the time she was employed by the State of Nevada.

Thus dismissing Plaintiff's second cause of action at this point would be wrong as Salehian has at the very least plausibly plead a cause of action for age harassment.

**F.      Plaintiff has Plausibly Plead a Violation of the Family and Medical Leave Act.**

To protect the employee, the FMLA prohibits interference with the exercise of the employee's right to take leave. *29 USC §2615(a)*. The relevant provision reads "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to

exercise, any right provided under this title [and subchapter]." *29 USC §2615(a)(1)*.

Congress has authorized the Department of Labor ("DOL") to issue implementing regulation for the FMLA. *29 USC §2654*. These regulations are entitled to deference. *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843-44 (1984); *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 n.9 (9th Cir. 2001).

DOL regulations state that "[t]he FMLA prohibits interference with an employee's rights under the law." *29 CFR §825.220(a)*. Any violation of the FMLA itself or of the DOL regulations constitute interference with an employee's rights under the FMLA. *29 CFR §825.220(b)*. The DOL interprets "interference" it include "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." *Id*. The regulations specify on form of employer interference - i.e., "employers cannot use the taking of FMLA leave as a negative factor in employment actions." *29 CFR §825.220(c)*.

Further an employer, or any other person, is prohibited from discriminating against, or discharging, an employee for taking FMLA Leave, or for opposing or complaining about violations of FMLA. *29 USC §2615(a)(2); 29 CFR §825.220(a)(2), (3),(c)*.

Employers may not discriminate against employees or applicants who have taken FMLA leave in hiring, promotional decisions, disciplinary actions or other terms and conditions of employment. *29 CFR §825.220(c)*.

Here Salehian alleges in paragraph 20 of her first amended complaint that "[I]n the fall of 2019 Salehian was seen by Kristen Addis Brown, M.D. at Thomas Dermatology to treat four skin cancer lesions. In early October 2019 she began a topical chemotherapy treatment drug for the cancer. On October 11th, 2019 Salehian went home with scabbing and pain on her face from the treatment and thereafter was granted a request to work from home by Treasurer Conine and Chief of Staff Dickson until October 28th, 2019."

Then Salehian alleges in paragraph 21 of her first amended complaint that "On October 17th, 2019 Salehian was again treated by Dr. Brown, who filled out FMLA paper work for

1   intermittent FMLA leave for continued intermittent treatment that would be administered on an

2   ongoing basis to treat Plaintiff's condition."

3      Further in paragraph 22 Salehian alleges that she "had a scheduled meeting with Treasurer

4   Conine and Chief of Staff Dickson, along with her Supervisor, Beth Yeatts at 3:30 pm on Monday

5   October 28th, 2019, her first day back in the office" and then in paragraph 23 that "Plaintiff

6   planned to turn in her completed FMLA paperwork at that meeting, since the meeting was in

7   person (normally it was by teleconference), and Salehian thought it would be more appropriate to

8   make the request face to face, at her weekly meeting.  Instead of meeting as planned, the Chief of

9   Staff Dickson asked Yeatts to 'give them a few minutes' before joining the weekly meeting

10  upstairs."

11     Finally in paragraph 23 Salehian alleges in pertinent part [o]nce Salehian arrived, instead of

12  accepting the FMLA paperwork, Treasurer Conine and Chief of Staff Dickson proceeded to

13  inform Plaintiff that her employment with the Nevada State Treasurer had ended."

14     As set forth above it is unlawful for an employer to "deny the exercise of or attempted

15  exercise" under the FMLA. *29 USC §2615(a)(1).*

16

17     Clearly the first amended complaint alleges that Plaintiff was trying to give her filled out

18  FMLA paperwork to Defendants, thus attempting to exercise her rights under the FMLA when she

19  was terminated.

20     Thus if the Court resolves all reasonable doubts and inferences in the pleader's favor, and

21  views the pleading in the light most favorable to Salehian as it is supposed to when deciding a

22  motion to dismiss, Plaintiff's FMLA claim should survive Defendant's motion to dismiss.

23     **G.    Plaintiff has Plausibly Plead a Cause of Action for Disability Discrimination
           and Failure to Accommodate.**

24

25     The Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") which

26  became law on January 1, 2009, significantly broadens the ADA in several respects, particularly in

27  connection with what constitutes a "disability" and what "substantially limits" means under the

28  ADA.

Under the ADAAA, "[D]isability shall be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." *42 U.S.C. §12102(4)(A).*

"The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA. Consistent with the Amendments Act's purpose of reinstating a broad scope of protection under the ADA, the definition of "disability" in this part shall be construed broadly in favor of expansive coverage to the maximum extent permitted by the terms of the ADA. The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether the individual meets the definition of disability. The question of whether an individual meets the definition of disability under this part should not demand extensive analysis." *29 C.F.R. §1630.1 (c)(4).*

Further, "[T]he term "substantially limits" shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." *42 U.S.C. §12102(4)(b).*

Specifically as it applies to the facts of this case:

"The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. Substantially limits" is not meant to be a demanding standard." *29 C.F.R. §1630.2 (j)(1)(i).*

"The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis." 29 *C.F.R. §1630.2 (j)(1)(iii).*

"The determination of whether an impairment substantially limits a major life activity requires an *individualized assessment*. However, in making this assessment, the term "substantially limits" shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for "substantially limits" applied prior to the ADAAA." *29 C.F.R. §1630.2 (j)(1)(iv).*[7]

---

[7] EEOC's regulations prior to the passage of the ADAAA defined "substantially limited" as: "Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." *29 CFR* § 1630.2(j) (2005) but this was superseded by *29 CFR* § 1630.2(j)(1)(i) (2011) (construing "substantially limits" broadly in favor of expansive coverage in accordance with the ADA Amendments Act of 2008 as set forth above). Further the EEOC regulation/guidance Defendants cite to, ie., that courts should consider: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) . . . permanent or long term impact of or resulting from the impairment" *29 CFR* § 1630.2(j)(2)(2005) was again superseded by the ADAAA, Pub. L. No. 110-325, 122 Stat. 3553 (effective Jan. 1, 2009) and thus is old law at

1

2          Applying the ADAAA to Salehian complaint in this matter, Plaintiff was clearly disabled

3   under the ADA as set forth below.

4          Under the ADA "disability" means, with respect to an individual: (a) a physical or mental

5   impairment that substantially limits one or more major life activities; (b) a record of such an

6   impairment; or (c) regarded as having such an impairment. *42 USC §12102(2); 29 CFR*

7   *§1630.2(g)*; EEOC Compliance Manual §902.1.

8          Here in her first amended complaint Plaintiff alleges in paragraph 20 that "[i]n the fall of

9   2019 Salehian was seen by Kristen Addis Brown, M.D. at Thomas Dermatology to treat four skin

10  cancer lesions.  In early October 2019 she began a topical chemotherapy treatment drug for the

11  cancer.  On October 11th, 2019 Salehian went home with scabbing and pain on her face from the

12  treatment and thereafter was granted a request to work from home by Treasurer Conine and Chief

13  of Staff Dickson until October 28th, 2019."

14         Further in paragraph 62 alleges in pertinent part the "skin cancers **** made her unable or

15  made it difficult to perform public speaking while going through chemotherapy and other

16  medically necessary treatments as well as perform public service, outreach and education of

17  college savings programs and scholarships."

18         Finally in paragraph 63 of Salehian's first amended complaint she alleges the "[t[hese

19  ailments qualify as physical impairments under the ADA.  Further they substantially limited

20  Plaintiff in performing major life activities, including but not limited to working, and thus

21  qualified Salehian as being disabled under the ADA."

22         Thus the complaint clearly alleges a physical impairment (ie. four skin cancer lesions that

23  required a topical chemotherapy treatment drug) and the physical impairment substantially limited

24  Salehian "in performing major life activities, including but not limited to working."

25         Further as to the major life activity of working, which is a enumerated major life under the

26

27  _____

28  this point.

18

ADAAA[8], Plaintiff has set forth specific facts that she needed off on an intermittent because of her physical impairment, *see* Complaint, paragraph 21, "[O]n October 17th, 2019 Salehian was again treated by Dr. Brown, who filled out FMLA paper work for intermittent FMLA leave for continued intermittent treatment that would be administered on an ongoing basis to treat Plaintiff's condition."

Further operation of bodily functions, including but not limited to, functions of the immune system and normal cell growth for someone with cancer are now enumerated major life activities under the ADAAA[9] .

Finally to the extent that Defendants are claiming Plaintiff's impairment was temporary, transitory or minor, the six-month 'transitory' part of the 'transitory and minor' exception to 'regarded as' coverage in § 1630.15(f) does not apply to the definition of 'disability' under paragraphs (g)(1)(i) (the 'actual disability' prong) or (g)(1)(ii) (the 'record of' prong) of this section. The effects of an impairment lasting or expected to last fewer than six months can be substantially limiting within the meaning of this section. *29 C.F.R. §1630.2 (j)(1)(ix).*

Finally Salehian has clearly pleaded that Defendants failed provide Plaintiff reasonable accommodation once the learned of the need for the same.

Discrimination under the ADA, also includes: "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. *42 USC §12112(b)(5)(A).*

"Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Memorial*

---

[8] See *42 U.S.C.* §12102(4)(A).

[9] See *42 U.S.C.* §12102(2)(B).

1    *Hospitals Association*, 239 F.3d 1128, 1137 (9th Cir. 2001); *EEOC v. Sears, Roebuck & Co.*, 417

2    F.3d 789, 805-808 (7th Cir. 2005).

3           Here Salehian has alleged in paragraph 66 of her first amended complaint that, "[F]urther

4    Salehian received a note from her doctor advising that she receive continued intermittent treatment

5    given Plaintiff's cutaneous sun damage, actinic keratosis and NMSC.  By not honoring Salehian

6    request for intermittent time off to deal with her disability, Defendants were in violation of the

7    ADA."

8           Thus when construing the pleading liberally in the pleader's favor, presuming all well-

9    pleaded allegations are true, resolving all reasonable doubts and inferences in the pleader's favor

10   and viewing the pleading in the light most favorable to the non-moving party, it is clear that

11   Plaintiff has plausibly plead that she was disabled under the ADA and that Defendants failed to

12   accommodate that disability.

13   **H.    Plaintiff has Plausibly Plead a Cause of Action for Sex/Gender Discrimination.**

14          Title VII prohibits employers from discriminating on the basis of "race, color, religion, sex,

15   or national origin." *Civil Rights Act of 1964, § 703(a), 42 U.S.C. § 2000e-2 (a)*.

16          Title VII prohibits employers from failing or refusing to hire, discharging, or otherwise

17   discriminating against any individual "with respect to his compensation, terms, conditions, or

18   privileges of employment." *42 U.S.C. § 2000e-2 (a)(1)*.

19          To establish a prima facie case of sex and/or gender discrimination, a plaintiff-employee

20   must generally present evidence showing four things: (1) plaintiff was a member of a protected

21   class; (2) plaintiff was qualified for the position sought or performing satisfactory in the position

22   held (i.e., satisfying the employer's legitimate expectations); (3) plaintiff was subjected to an

23   adverse employment action; and (4) the adverse employment action occurred under circumstances

24   suggesting a discriminatory motive (e.g., persons outside the protected class with equal or lesser

25   qualifications were given more favorable treatment). *McDonnell Douglas Corp.*, 411 U.S. 802.

26          The supreme court has cautioned that the prima facie requirements for making a Title VII

27

28

1    claim "is not onerous" and poses "a burden easily met." *Texas Department of Community Affairs v.*

2    *Burdine*, 450 U.S. 248, 253 (1981).

3        Here Plaintiff has alleges in her first amended complaint that she was a female, paragraph

4    12, terminated, paragraph 24 and at the time of her termination was performing her job

5    satisfactorily, paragraph 25.

6        Finally in paragraph 75 she alleges that "various males including Grant Hewitt, Dennis

7    Stoddard and Richard Foreman were treated better than Salehian because of their sex/gender in

8    violation of Title VII."

9        Specifically Plaintiff alleges in paragraph 16 that "in approximately July of 2018,

10   Dennis Stoddard (male), Senior Deputy Treasurer, was asked to resign but was allowed to

11   retire and get his PERS retirement benefits and PEBP health benefits and was also allowed to

12   'ride out' his accrued vacation time before he left, unlike Plaintiff who was terminated with an

13   unfavorable termination code unless she signed away her legal rights, and was told she had to

14   leave within 90 minutes."

15

16       Further she alleges in paragraph 17 that "in approximately July of 2018, Richard

17   Foreman (male), IT Director, was investigated for wrongdoing, but was put on paid leave for

18   over a month while the investigation was being conducted.  Once the investigation concluded

19   he was allowed to retire after 'riding out' his accrued vacation time with full PERS retirement

20   benefits and PEBP health benefits like Stoddard and a favorable termination code."

21       And in paragraph 18 Salehian alleges that she "was terminated with an unfavorable

22   termination code and was told she had to leave within 90 minutes.  She was not allowed to

23   continue her employment by using her accrued vacation time and was not offered early

24   retirement.  In addition, because of the immediate nature of her termination, she lost her option

25   to buy additional years of retirement, which she had already done in the past, and planned to do

26   further before leaving the Nevada State Treasurer's Office."

27       Finally in paragraph 19 Plaintiff alleges that "in January of 2019, Grant Hewitt (male),

28

Chief of Staff, was terminated for cause 'for lying to the Treasurer' as stated by Treasurer Conine on January 9th, 2019.  Further, despite the fact that he was terminated for cause, Hewitt was given paid administrative leave, and allowed to keep his office, computer access, building access, health insurance, etc. until the end of the month, unlike Plaintiff who was asked to leave immediately and punitively put on 'leave without pay', unless she signed a waiver of her legal rights."

Defendants main objection is the males that Plaintiff names in the complaint were not similarly situated.[10]

First of all this is just the pleading stage and facts and evidence will be developed from discovery, etc.

But more importantly the reasons that Salehian says the three males were treated differently is because they were allowed to be on paid leave, use accrued vacation time, allowed to get PERS retirement benefits and PEBP health benefits, etc. and just because they have different jobs or different job duties does not necessary mean they should be treated differently as to using paid leave, accrued vacation time and benefits.  The policies were likely similar on these regardless of what position each employee held and if not that is what discovery is for, ie., to try to determine if each employee was similarly situated or not.

Thus when presuming all well-pleaded allegations are true, resolving all reasonable doubts and inferences in the Salehian's favor and viewing the pleadings in the light most favorable to the Plaintiff, Salehian has plausibly made out a case for gender discrimination.


I.    **Plaintiff has Plausibly Plead a Cause of Action for Intentional Infliction of Emotional Distress against Defendants.**

To establish a cause of action intentional infliction of emotional distress, the plaintiff must establish the following: (1) extreme and outrageous conduct with either the intention of, or

---

[10] Defendants also object to the fact that Plaintiff has not alleged that she was subjected to any negative comments about her gender or any other facts demonstrating that Defendants' actions were motivated by discriminatory animus but that is not necessarily needed to prove gender discrimination if Salehian can show that she was treated differently than the men because of her gender.  Plaintiff, not Defendants, is the master of her complaint and what she decided to plead or not plead.

1   reckless disregard for emotional distress, (2) the plaintiff suffered severe or extreme emotional

2   distress and (3) actual or proximate cause. *Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 447 (1998);

3   *Olivero v. Lowe*, 995 P2d 1023, 1025 (Nev. 2000).

4        "[E]xtreme and outrageous conduct is that which is 'outside all possible bounds of decency'

5   and regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-a Car*, 953

6   P.2d 24, 26 (1998).

7        Under Nevada law, "[t]he Court determines whether the defendant's conduct may be

8   regarded as extreme and outrageous so as to permit recovery, but, where reasonable people may

9   differ, the jury determines whether the conduct was extreme and outrageous enough to result in

10   liability." *Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1121 (D. Nev. 2009).

11        Further Nevada courts have found that verbal statements suffice as extreme and conduct to

12   permit recovery for intentional infliction of emotional distress. *See* McGrath v. Nev. Dep't of Pub.

13   Safety, 2008 U.S. Dist. LEXIS 38814, at *11 (D. Nev. Apr. 30, 2008)(finding plaintiff stated a

14   claim for intentional infliction of emotional distress where the plaintiff alleged that she was

15   subjected to repeated verbal abuse by her supervisor). *See also Gardner v. LKM Healthcare*, No.

16   #:10-dv-0686-LRG-VPC, 2012 WL 3100562 (D. Nev. July 30, 2012) and *Conover v. Vons Stores*,

17   Inc., No. 2:11-cv-01806-GMN-VCF, 2012 WL 4482591 (D. Nev. September 25, 2012)(Racial

18   epithets); *Schaefer v. Diamond Resorts International Marketing, Inc.*, No. 2:14-cv-01900-GMN-

19   CWH, 2015 WL 1932196 (D. Nev. April 28, 2015) and *Shufelt v. Just Brakes Corporation*, No.

20   2:16-cv-0128-GMN-CWH, 2017 WL 379429 (D. Nev. January 25, 2017)(Sexual and otherwise

21   vulgar statements to a woman); and *Kraja v. Bellagio, LLC, et al.*, No. 17-16105 (9th Cir. July 18,

22   2018)(Bullying, harassment and fat shaming).

23        Further it is not proper to dismiss a case at an early stage in the proceedings where the

24   parties have not even engaged in any discovery. *See Fernandez v. Penske Truck Leasing Co.*,

25   2:12-cv-295 JCM-GWF (D. Nev., 2012).

26

27        Here Salehian has set forth a number of actions by Defendants which if viewed in the light

28

most favorable to Plaintiff are arguably extreme and outrageous.

Thus at this point in the case it is at least plausible when construing the pleading liberally in the pleader's favor, presuming all well-pleaded allegations are true, resolving all reasonable doubts and inferences in the pleader's favor and viewing the pleading in the light most favorable to the non-moving party, that Defendants' conduct was extreme and outrageous to have actually and proximately caused Salehian severe and extreme emotional distress.

## V.

## CONCLUSION

Under *Iqbal/Twombly* a motion to dismiss under 12(b)(6) is reserved for those cases where the Plaintiff cannot assert factual allegations that raise a "plausible" right to relief.

As set forth above, for purposes on a 12(b)(6) motion, the court presumes that all well-plead allegations are true, resolves all reasonable doubts and inferences in the pleader's favor, and views the pleading in the light most favorable to the non-moving party.

Salehian has met her burden to "plausibly" show that she is entitled to the relief requested in her first amended complaint against Defendants.

This being the case, Plaintiff respectfully asks this Court to deny Defendants' motion to dismiss pursuant to Rule 12(b)(6) and order Defendants to answer Salehian's First Amended Complaint.  In the unlikely event the Court does feel the Complaint is deficient, Plaintiff would ask for leave to amend the complaint according to the law and the Order of this Court.


DATED:  10/15/2021                          LAW OFFICES OF MICHAEL P. BALABAN


                                            BY: /s/ Michael P. Balaban
                                                Michael P. Balaban
                                                LAW OFFICES OF MICHAEL P. BALABAN
                                                10726 Del Rudini Street
                                                Las Vegas, NV  89141

## CERTIFICATE OF SERVICE

I hereby certify that pursuant to FRCP Rule 5(b)(3), and this Court's Special Order #109, a true and correct copy of the foregoing document was electronically served via the Court's CM/ECF electronic filing system to the following person:

Judy A. Prutzman, Esq.
Brandon R. Price, Esq.
*Attorneys for Defendants State of Nevada, Nevada State
Treasurer's Office and Zach Conine, State Treasurer*

DATED:  10/15/2021                          /s/ Michael P. Balaban
                                            Michael P. Balaban