# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHEILA SALEHIAN, | Case No. 2:21-cv-01512-CDS-NJK |
| Plaintiff, | |
| v. | **Order** |
| NEVADA STATE TREASURER'S OFFICE; ZACH CONINE, State Treasurer; STATE OF NEVADA, | |
| Defendants. | |

Before the Court is a Motion to Dismiss brought by Defendants Nevada State Treasurer's Office, Zach Conine (the Nevada State Treasurer), and the State of Nevada. ECF No. 11. Plaintiff Sheila Salehian filed a complaint in state court alleging employment discrimination during her time working at the Nevada State Treasurer's Office. ECF No. 1-3. Defendants removed the action to this Court and now seek to dismiss Salehian's claims. For the reasons outlined below, I GRANT in part and DENY in part Defendants' Motion to Dismiss.

## I.    Relevant Background Information

Salehian sued Defendants for alleged discrimination and civil rights violations that occurred during Salehian's employment at the Nevada State Treasurer's Office. *See* First Amended Complaint, ECF No. 1-3. She also alleges age discrimination, disability discrimination, and sex/gender discrimination precipitated her termination from that office. *Id.* Prior to filing her lawsuit, Salehian filed a Charge of Discrimination with the Nevada Equal Rights Commission ("NERC") and Equal Employment Opportunity Commission ("EEOC"). *Id.* at 3. She requested a

Notice of Right to Sue from the United States Department of Justice and received it, attaching it as an exhibit to her First Amended Complaint. *Id.* at 4, ¶10. Salehian was notified that she had the "right to institute a civil action…under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and Title V, Section 503 of the Act, 42 U.S.C. 12203." *Id.* at 25.

Salehian filed her initial lawsuit in state court. *See Salehian v. State of Nevada et al.*, Eighth Judicial District Court, Case No. A-21-834768-C, ECF No. 1-2. Salehian alleged eleven causes of action, including violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Family and Medical Leave Act ("FMLA"), 42 U.S.C. § 1983, and Nevada Revised Statute 613.330(1)(a). *Id.* Salehian also alleged various causes of action under Nevada common law. *Id.*

Defendants removed the lawsuit to federal court. Petition for Removal, ECF No. 1. Defendants then moved to dismiss the action, relying on Eleventh Amendment sovereign immunity, Nevada's discretionary immunity statute, the claim that Plaintiff failed to exhaust her administrative remedies, and general assertions that Plaintiff failed to meet her burden at the pleading stage. *See generally* Motion to Dismiss, ECF No. 11.

Salehian responded that Eleventh Amendment immunity was waived when Defendants removed the case to federal court. Response to Motion to Dismiss, ECF No. 15 at 6-7. She adds that discretionary immunity does not apply here, as Defendants acted in bad faith and contrary to law. *Id.* at 7-8. Salehian claims that she exhausted her administrative remedies, *id.* at 8-10, and that she has plausibly pled causes of action for age discrimination, age harassment, sex/gender discrimination, intentional infliction of emotional distress, FMLA violations, and ADA violations. *Id.* at 10-24. Finally, Salehian stated she would no longer pursue causes of action six through ten (claims of retaliation, violation of 42 U.S.C. § 1983, wrongful termination, and

breaches of implied-in-fact contract and the covenant of good faith and fair dealing) "and thus agrees to dismissal of the same." *Id.* at 2, n.3.

Defendants replied that, because the parties agree Salehian's claims are brought against the State of Nevada and against Conine in his official capacity, the discretionary-act immunity granted by Nevada law does apply.[1] Reply to Response to Motion to Dismiss, ECF No. 23 at 2-3 (citing NRS 41.032(2)). They reassert that Salehian failed to exhaust her administrative remedies and that Salehian inadequately pled her state law claims. *Id.* at 4-11.

## II.    Legal Standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which

---

[1] Defendants also filed a motion for leave to file supplemental legal authority in support of their motion to dismiss. ECF No. 13. They contend that the Supreme Court of Nevada published a decision "that strengthens their argument that [Plaintiff's] claims are barred by discretionary-act immunity" on the same day that Defendants filed their motion to dismiss. ECF No. 13 at 2 (citing *Echeverria v. State*, 495 P.3d 471 (Nev. 2021)). Defendants also state that *Echeverria* "prevents Defendants from seeking dismissal of claims based on sovereign immunity." ECF No. 13 at 2. I do not find the requisite good cause to allow Defendants to file supplemental authority in this case. The Local Rules of this District require a showing of "good cause" in determining whether supplemental authority should be permitted. LR 7-2(g). Good cause exists when the supplemental authority "controls the outcome of the litigation…[and] is precedential or is an authority that is particularly persuasive or helpful." *Hunt v. Washoe Cty. Sch. Dist.*, 2019 WL 4262510, at *3 (D. Nev. Sep. 9, 2019). *Echeverria* does not concern discretionary act immunity; its holding is narrow and limited to the scope of Nevada's waiver of sovereign immunity for FLSA violations. *See Echeverria*, 495 P.3d at 477 ("We answer the certified question…by enacting NRS 41.031(1), Nevada has consented to damages liability for a State agency's violation of the minimum wage or overtime provisions of the federal Fair Labor Standards Act."). Furthermore, *Echeverria* was not a decision that precludes Defendants from asserting sovereign immunity. As discussed further *infra* there is a long line of reasoning that prevents Defendants from asserting sovereign immunity in this case. *Echeverria* is neither "particularly persuasive [n]or helpful" in deciding the issues pertaining to discretionary act immunity facing this Court in the instant litigation. Consequently, I deny Defendants' motion (ECF No. 13).

it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555.

Accordingly, Fed. R. Civ. P. 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Fed. R. Civ. P. 15(a), a court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive of the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178 (1962).

## III.   Analysis

### a.   *Nevada Waived its Sovereign Immunity by Removing this Action to Federal Court*

The Eleventh Amendment grants states immunity from suit in federal court by their own citizens. U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1 (1890). States can waive their Eleventh Amendment sovereign immunity from suit. *Lapides v. Bd. Of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613, 618-21 (2002). By statute, Nevada voluntarily waives its immunity from liability under

state-law claims. Nev. Rev. Stat. § 41.031. Because Nevada has such a statute, the State cannot voluntarily remove suits on state-law claims from state court to federal court and then try to escape waiver of sovereign immunity by asserting that immunity in federal court. *See Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir. 2019) ("The Supreme Court has held that, when a State that has enacted one of these [immunity-waiving] statutes voluntarily removes a suit on state-law claims from state to federal court, that State waives its Eleventh Amendment immunity from suit." (citing *Lapides*, 535 U.S. at 618-21)). Animating the Court's decision in *Lapides* was the hypocrisy of asserting both removal jurisdiction and sovereign immunity:

> It would seem anomalous or inconsistent for a state both (1) to invoke federal jurisdiction, thereby contending that the "Judicial power of the United States" extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the "Judicial power of the United States" extends to the case at hand.

*Lapides*, 535 U.S. at 619. A State "expresses its intent to voluntarily invoke the federal court's jurisdiction by voluntarily agreeing to remove the case to federal court." *Walden*, 945 F.3d at 1093 (cleaned up). The general legal principle requiring waiver when a State voluntarily invokes federal jurisdiction "ought to apply" in order to prevent states from "achiev[ing] unfair tactical advantages." *Id.* (quoting *Lapides*, 535 U.S. at 620, 621).

The Ninth Circuit has taken *Lapides* further than just applying to state-law claims; it has held "that a State defendant that removes a case to federal court waives its immunity from suit on all federal-law claims in the case, including those claims that Congress failed to apply to the States through unequivocal and valid abrogation of their Eleventh Amendment immunity." *Walden*, 945 F.3d at 1094. Essentially, the Ninth Circuit has adopted a "removal means waiver" rule to sovereign immunity. *Id.* (citing *Embury v. King*, 361 F.3d 562 (9th Cir. 2004)).

The State of Nevada's removal of this action from state court before asserting sovereign immunity "generate[s] seriously unfair results." *Lapides*, 535 U.S. at 619. Consequentially, the

State of Nevada may not wield the shield of sovereign immunity to block Salehian's claims. Defendants' motion to dismiss this action based on a claim of sovereign immunity is denied.

      *b.   Discretionary-Act Immunity Does Not Apply Because Salehian Plausibly Alleges Bad Faith*

Notwithstanding Nevada's waiver of sovereign immunity discussed *supra*, the State retains immunity for its officers, employees, agencies, and political subdivisions for actions "[b]ased upon the exercise of performance or the failure to exercise or perform a discretionary function or duty ... whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2). Such immunity attaches when the actions in question are discretionary, meaning they "(1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *Martinez v. Maruszczak*, 168 P.3d 720, 729 (Nev. 2007). Thus, decisions requiring "analysis of government policy concerns" are afforded discretionary immunity. *Id.* at 729. In analyzing discretionary immunity, courts "must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 728 (citation omitted). Immunity applies under this criterion **only if** "the injury-producing conduct is an integral part of governmental policy-making or planning, if the imposition of liability might jeopardize the quality of the governmental process, or if the legislative or executive branch's power or responsibility would be usurped." *Id.* at 728-29 (emphasis added).

The policy justification behind a discretionary act becomes irrelevant, however, when a Plaintiff properly alleges that the Defendant(s) had undertaken such action in bad faith. "Had [Defendants] terminated [Plaintiff] in bad faith, [Defendants'] actions would no longer be discretionary and subject to immunity." *Wayment v. Holmes*, 912 P.2d 816, 820 (Nev. 1996) (citing *Falline v. GNLV Corp.*, 823 P.2d 888, 892 (Nev. 1991)). Bad faith "involves an implemented attitude

that completely transcends the circumference of authority granted the individual or entity." *Falline*, 823 P.2d at 892, n.3. "An act of bad faith has no relationship to a rightful prerogative even if the result is ostensibly within the actor's ambit of authority." *Id.*

Plaintiff sets forth a plausible case that she was discriminated against because of her age and ultimately terminated in bad faith. ECF No. 1-3 at 4-5. Prior to Salehian's termination, she alleges that she was subjected to specific age-related comments, such as "[Salehian] had been with the [S]tate forever" and that the State was "interested in fresh faces." *Id.* at 5. Salehian also alleges that she experienced a "reduction of duties [that were] all directed toward younger staff." *Id.* As for Salehian's termination, she alleges that "Treasurer Conine refused to give a reason for the termination," and that she "was terminated without receiving any prior disciplinary action of any kind." *Id.* at 7. Salehian "in fact was given letters of recommendation by" the past two State Treasurers, "had just finished coordinating a nationwide training conference for all State Treasurers offices," and "had been recognized by the National Association of State Treasurers." *Id.* Salehian adds that she was 58 at the time of her termination, and her supervisor was 62 at the time of her termination; they were replaced with employees aged 39 and 30, respectively. *Id.* Finally, Salehian asserts that she was "terminated with an unfavorable termination code and...told she had to leave within 90 minutes," *id.* at 5, in contrast to other employees terminated for cause around the same time. *Id.* at 6. She was denied various benefits at the time of her termination that were given to other terminated employees, including a denial of using unspent vacation time, denial of early retirement, and loss of option to purchase additional years of retirement. *Id* at 4-5.

Finally, Salehian alleges that in October 2019, she began topical chemotherapy to treat skin cancer lesions. *Id.* at 6. Salehian and her medical doctor filled out FMLA paperwork to apply

for intermittent FMLA leave, but just as Salehian attempted to turn in that paperwork to Defendant Conine on October 28, 2019, she was fired. *Id.*

While the decision to terminate Salehian may have been a discretionary one, Salehian states a plausible case that the decision was not based on considerations of social, economic, or political policy by alleging that the decision was in fact grounded in bad faith. In isolation, any single allegation by Salehian might not be sufficient. But the totality of the circumstances of Salehian allegations surrounding her termination suffice to plausibly assert an implemented attitude that completely transcends the circumference of authority granted to the State of Nevada and Treasurer Conine in hiring and firing employees.

There are no facts in the record to suggest that Salehian's termination was based on considerations of social, economic, or political policy rather than bad faith. Defendants broadly argue that the decision to fire Salehian "involved an element of individual judgment by Defendants and was based on considerations of social and economic policy." ECF No. 23 at 2. Defendants do not describe those policies, nor do they apply those policies to the facts of Salehian's termination. *See generally id.* It is true that the Nevada Supreme Court "has held that there is a strong public policy for granting employers broad discretion in managing their offices, and the hiring and firing of employees is a large part of management[.]" *Cates v. Public Emps.' Ret. Sys. of Nev.*, 2008 WL 873611, at *6 (D. Nev. Mar. 27, 2008). However, such public policy inheres to cases in which bad faith does not motivate the discretionary act in question. Plaintiff's plausible allegations of bad faith, coupled with Defendants' lack of specific policy justification for Plaintiff's termination, suffice to establish the impropriety of discretionary-act immunity with respect to Salehian's claims. Accordingly, the Court does not find that discretionary immunity applies in this action.

       *c.   Salehian Has Partially Failed to Exhaust Her Administrative Remedies*

Salehian exhausted her administrative remedies with respect to her ADA, ADEA, and Title VII claims, but this Court lacks sufficient evidence in the record to conclude that she has exhausted her state law claims, which must be dismissed without prejudice. For this Court to exercise subject matter jurisdiction over Salehian's claims, Salehian was required to "exhaust [her] administrative remedies by either filing a timely charge with the EEOC, or the appropriate state agency, thereby affording the agency an opportunity to investigate the charge." *Freeman v. Oakland Unified School Dist.*, 291 F.3d 632, 636 (9th Cir. 2002) (internal quotations omitted). Allegations of discrimination not included in a plaintiff's EEOC charge generally "may not be considered by a federal court." *Id.* However, subject matter jurisdiction extends over all allegations of discrimination that either "fell within the scope of the EEOC's *actual* investigation or an EEOC investigation which *can reasonably be expected* to grow out of the charge of discrimination." *Id.* (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1100 (9th Cir. 2002)) (emphasis in original); *see also Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir. 1990) (noting that the court "must inquire whether the original EEOC investigation would have encompassed the additional charges made in the court complaint but not included in the EEOC charge itself") (internal quotations omitted).

Courts consider a plaintiff's civil claims to be reasonably related to allegations in the charge to the extent that those claims are consistent with the plaintiff's original theory of the case. *Freeman*, 291 F.3d at 636 (citing *B.K.B.*, 276 F.3d at 1100). While it is true that Courts "construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading, there is a limit to such judicial tolerance when principles of notice and fair play are involved." *Id.* (internal quotations omitted). Consequently, in determining whether the exhaustion requirement has been satisfied, this

Court considers "such factors as the alleged basis of the discrimination, dates of discriminatory acts specified within the charge, perpetrators of discrimination named in the charge, and any locations at which discrimination is alleged to have occurred." *Id.* "The crucial element of a charge of discrimination is the factual statement contained therein." *Id.*

Salehian filed her EEOC charge alleging discrimination based on sex, retaliation, age, and disability. ECF No. 11-1 at 2. Her claims of violations of the ADA, ADEA, and Title VII all stem from the EEOC charge or would reasonably be expected to grow out of the EEOC charge. Consequently, Salehian has exhausted her administrative remedies with respect to those claims.

Defendants assert that, because Salehian failed to raise state law discrimination in her EEOC charge and cannot show that NERC adjudicated her claims, Salehian failed to exhaust administrative remedies on her state law claims. Plaintiff responds that the state law claims were exhausted pursuant to a work-sharing agreement between the EEOC and NERC but has failed to show that NERC in fact adjudicated her claims and failed to adduce the agreement between the EEOC and NERC. Plaintiff did not plead in her complaint that NERC had a work-sharing agreement with the EEOC, that NERC waived its right to adjudicate the claim because of Plaintiff's contemporaneous filing with the EEOC, or that her state law filings were presumptively adjudicated by either EEOC or NERC. Consequently, Plaintiff's state law claims (within her first, second, fourth, and fifth causes of action) must be dismissed without prejudice.

*d.   Salehian Has Plausibly Stated Claims for Relief under the ADEA and ADA*

Remaining before this Court are Plaintiff's allegations of ADEA violations (first and second causes of action for age discrimination and hostile environment harassment, respectively), FMLA violations (third cause of action for willful and unlawful interference under the FMLA), ADA violations (fourth cause of action asserting disability discrimination and

failure to accommodate), Title VII violations (fifth cause of action asserting sex/gender discrimination), and intentional infliction of emotional distress (eleventh cause of action: IIED claim against Defendant Conine).

Based on the allegations in Salehian's First Amended Complaint, I find that Plaintiff has plausibly stated claims for relief under the ADEA for age discrimination and under the FMLA. She has not, however, stated plausible claims for relief under the ADEA for hostile environment harassment, under Title VII, or under state law for intentional infliction of emotional distress. I address each in the order of the causes of action of Plaintiff's complaint.

> i.    *ADEA – Age Discrimination*

Plaintiff's first cause of action alleges that Defendants discriminated against her by terminating her due to her age. ECF No. 1-3 at 7-8. Salehian states that she "was 58 years of age when she was terminated on October 28th, 2019," that she "received no disciplinary action of any kind prior to her termination and was performing her job satisfactorily at the time of her termination," and that she was replaced by a 39-year-old with no prior experience in financial services. *Id.*

The Age Discrimination in Employment Act makes it unlawful "to discharge any individual...because of such individual's age." 29 U.S.C. § 623(a)(1). The prohibition is "limited to individuals who are at least 40 years of age." 29 U.S.C. § 631(a). To establish a *prima facie* case of age discrimination, Salehian must allege that she was "(1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (internal quotations and citations omitted). An inference of discrimination "can be established by showing the employer had a continuing need for [the employees'] skills

and services in that their various duties were still being performed...or by showing that others not in their protected class were treated more favorably." *Id.* (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)).

As a threshold matter, Salehian's allegations satisfy the first three requirements: she was 58 at the time of her termination and at the time of her termination, she was performing satisfactorily, had received letters of recommendation by previous State Treasurers and her immediate supervisor, and had received recognition for her role in coordinating a nationwide training conference for all State Treasurers' offices. ECF No. 1-3 at 7. She was terminated from her employment with the Nevada State Treasurer's Office on October 28, 2019, with Treasurer Conine present when she was terminated. *Id.* at 7.

Thus, the only disputed element of the *prima facie* age discrimination test is the fourth element. ECF No. 11 at 8. It requires Salehian to allege that she was either replaced by a substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination. *Diaz*, 521 F.3d at 1207. Defendants contend that Salehian has relied on conclusory statements and speculation. *Id.* However, Salehian has pled with specificity that she was replaced by a substantially younger employee with inferior qualifications. *See* ECF No. 1-3 at 7 ("Plaintiff's replacement … was approximately 39 years old when she replaced Salehian" and "[her] replacement had no prior experience in financial services.")

Additionally, the cumulative facts set forth in Salehian's allegations suffice to demonstrate that others not in Salehian's protected class (i.e., coworkers younger than 40 years old) were treated more favorably. Salehian alleges that "Treasurer Conine refused to give a reason for the termination, except to say 'he was going in a different direction,'" that "eight out of the ten positions hired or promoted in the College Savings Division since Treasurer Conine

took office...were individuals under the age of 40," that Plaintiff was "assigned a smaller office than a younger Deputy who had less seniority in the Office," and that "Plaintiff experienced a reduction in duties...all directed toward younger staff [prior to her termination]." *Id.* at 5-6. She further alleges that she "was never allowed to pick up Treasurer Conine and accompany him to public facing meetings or functions, despite the fact that it was a main component of her job...before Treasurer Conine took office" and that "other younger staff, all under 40 years of age, were the only employees allowed to accompany Treasurer Conine to public functions or Treasurer interviews." *Id.* at 5.

Because Salehian has pled with specificity and plausibility that she was replaced by a substantially younger employee with inferior qualifications, and that she was discharged under circumstances otherwise giving rise to an inference of age discrimination, Salehian has met her burden in pleading a *prima facie* case for an ADEA age discrimination claim.

Defendants also contend that Salehian is unable to establish that age was the "but-for" cause of her termination. ECF No. 11 at 8. To prevail on a claim for age discrimination under the ADEA, a plaintiff must prove at trial that age was the "but-for" cause of the employer's adverse action. *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012). "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." *Id.* (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009)).

The strong showing of causation requested by Defendants is presently unnecessary; it would be inappropriate to dismiss a case based on a lack of demonstrated cause-in-fact during the pleadings phase. *See Shelley*, 666 F.3d at 559 (stating that a plaintiff must prove **at trial** that age was the "but-for" cause) (emphasis added). At this stage, Salehian needs only to allege sufficient factual material to make it plausible that age was the *sine qua non* cause of her

termination. As discussed *supra*, Salehian has met that burden. Accordingly, Defendants' motion to dismiss Salehian's first cause of action for age discrimination under the ADEA is denied.

         *ii.*        *ADEA – Hostile Environment Harassment*

Plaintiff's second cause of action alleges hostile environment harassment in violation of ADEA. She alleges that she was "harassed because of her age which created a 'hostile environment' in the workplace." ECF No. 1-3 at 9. This included "being subjected to negative comments about her age, and age-related abilities." *Id.* However, Salehian fails to allege behavior on the part of Defendants that rises to the level of a hostile environment.

"Hostile environment" harassment refers to situations where employees work in offensive or abusive environments. *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). Whether an environment is "hostile" or "abusive" is a matter that "can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris*, 510 U.S. at 21–22). The circumstances that determine whether an environment is abusive "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23.

While Salehian alleges that the comments made to her were offensive and humiliating, Salehian fails to connect those comments to Defendants or provide context as to how they can be used to meet her burden under the law. Specifically, Salehian states that she was subjected to negative comments, "i.e., dot matrix printers, policies that hadn't been updated in 20 years, desire to talk on the phone to customers versus handle issues online because she 'was not a millennial,' she had been with the state forever" and that the "State was moving to a new

14

location to refresh the office, and were interested in 'fresh faces' and starting with a clean slate." ECF Nos. 1-3 at 4-5; 15 at 13. Salehian does not link those comments to any particular person, including Defendant Conine. Salehian fails to provide context that would explain how such comments give rise to a claim of hostile work environment; for example, the phrase "dot matrix printers" is alleged as an offensive comment with no context regarding to whom the statement is uttered, who delivered the statement, how the statement is offensive, etc. The same is true of other comments; for example, in isolation, the fact that the State had "policies that hadn't been updated in 20 years" could be factually correct, thus without context or additional information, Plaintiff fails to show that the comments were either subjectively or objectively hostile, or plead with specificity the frequency or pervasiveness of the comments. *See, e.g., Kortan v. Calif. Youth Authority*, 217 F.3d 1104, 1106-11 (9th Cir. 2000) (holding that crass and denigrating comments about a female employee were insufficient to establish a hostile work environment claim, in part, because the comments were concentrated on one occasion); *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 643–44 (9th Cir. 2003) (holding a coworker's isolated remarks, six months apart, that an employee had "a typical Hispanic macho attitude" and "should consider transferring to the field because 'Hispanics do good in the field'" were not severe enough to create a hostile work environment).

Furthermore, without the context of those statements, this Court is unable to determine if Conine, the State of Nevada, or the Nevada State Treasurer's Office can be held liable. An employer's liability for a hostile work environment turns based on the action it takes in response to an employee's or third party's discrimination that the employer knew or should have known about. *See, e.g., Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643 (9th Cir. 2021) ("It is well established that an employer can create a hostile work environment by failing to take immediate and corrective

action in response to a coworker's or third party's sexual harassment or racial discrimination the employer knew or should have known about.")

Salehian does not allege that the offensive statements were known, or should have been known, by Defendants in this action, or that Defendants took or failed to take remedial action following knowledge of the statements. Because "not every insult or harassing comment will constitute a hostile work environment," *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000), Salehian must do more than merely allege that she was subjected to insulting comments about her age to make out a claim of hostile environment harassment. Consequently, this Court dismisses Salehian's hostile environment claim under the ADEA without prejudice with leave to amend. In order to amend the complaint, Salehian must plead sufficient factual allegations or contextual circumstances that would enable this Court to determine whether Defendants can be found liable for the alleged comments.

### iii.     Family and Medical Leave Act

Plaintiff's third cause of action alleges interference with the Family and Medical Leave Act. ECF No. 1-3 at 10-11. Under the FMLA, it is "unlawful for any employer to interfere with...any right provided" for in the statute, 28 U.S.C. § 2615(a)(1), or implementing regulations, 29 C.F.R. § 825.220(b). *Aguirre v. California*, 842 Fed. Appx. 91, 93 (9th Cir. 2021). To make out a *prima facie* case of FMLA interference, an employee must establish that "(1) [they] were eligible for the FMLA's protections, (2) [their] employer was covered by the FMLA, (3) [they] were entitled to leave under the FMLA, (4) [they] provided sufficient notice of [their] intent to take leave, and (5) [their] employer denied [them] FMLA benefits to which [they] were entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (internal quotations omitted).

Defendants contend that Salehian fails to allege with specificity that she provided sufficient notice of her intent to take leave, or that her employer denied her FMLA benefits to

which she was entitled. ECF No. 11 at 10. Salehian states that she was about to submit her FMLA paperwork just before the meeting at which she was fired. ECF No. 1-3 at 6, 10. She adds that, instead of accepting her FMLA paperwork, Defendants proceeded to inform her that her employment with the Nevada State Treasurer had ended. *Id.* at 6-7.

Salehian plausibly alleges that she notified Defendants of her intent to obtain FMLA leave *prior* to her termination. "After an employee alerts the employer of desiring to take leave for a reason that would qualify under the FMLA, the employer will be expected to obtain any additional required information through informal means." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) (internal quotations omitted). "The employee need not expressly assert rights under the FMLA or even mention the FMLA...but the employer should inquire further of the employee if it is necessary to have more information about *whether FMLA leave is being sought by the employee*, and to obtain the necessary details of the leave to be taken." *Id.* (emphasis in original) (citing 29 C.F.R. § 825.302(c)). Salehian alleges that she had received her certification under the FMLA on October 17, 2019, in preparation for the meeting for October 28, 2019. ECF No. 1-3 at 10. She further alleges that she "provided Defendant Nevada State Treasurer with all necessary information regarding her need for leave, and otherwise performed all duties necessary to take advantage of the rights conferred by FMLA." *Id.* Finally, Salehian states that she "went home with scabbing and pain on her face from the [chemotherapy] treatment and thereafter was granted a request to work from home until October 28th, 2019." *Id.* Consequently, even if Salehian did not explicitly inform Defendants of her intent to take leave under the FMLA, Defendants had an obligation to inquire further whether Salehian was seeking FMLA leave rather than summarily terminating her. *Escriba*, 743 F.3d at 1243.

Defendants' argument that Salehian was never denied FMLA leave does not absolve them of their burden to investigate whether Salehian should have appropriately been granted such

leave. *See Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1130 (9th Cir. 2001) (holding that a company whose employee provided two doctor's notes regarding her absences "was therefore placed on notice that the leave might be covered by the FMLA, and could have inquired further to determine whether the absences were likely to qualify for FMLA protection").

In sum, Salehian alleges plausibly that she provided sufficient intent of notice to take leave. By firing Salehian instead of allowing her to take leave, Defendants may have denied her FMLA benefits to which she was entitled. Salehian has stated a plausible claim for FMLA interference under these facts. Accordingly, Defendants' motion to dismiss Plaintiff's FMLA claim is denied.

                *iv.*      *ADA – Disability Discrimination*

Plaintiff's fourth cause of action alleges disability discrimination on the part of Defendants. ECF No. 1-3 at 11-13. She alleges that her suffering from skin cancer rendered her unable or made it difficult to perform specific job-related duties, major life activities, and that she was discriminated against for the same. *Id.* To establish a *prima facie* case under the ADA, a plaintiff "must first demonstrate that (1) [she] is disabled within the meaning of the ADA; (2) [she] is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [she] suffered an adverse employment action because of [her] disability." *Allen v. Pacific Bell*, 348 F.3d 1113 (9th Cir. 2003) (citing *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999)). Assuming *arguendo* that Salehian has pled with sufficient specificity that her skin cancer qualifies as a disability within the meaning of the ADA, she has not met her pleading burden with respect to "reasonable accommodation" and thus has not established a *prima facie* case of disability discrimination.

"[T]he ADA says that discrimination includes an employer's not making reasonable accommodations to the known physical or mental limitations of an otherwise

qualified...employee unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its business." *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010) (internal quotations omitted). "[O]nce the employee requests an accommodation...the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). But "there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018).

Salehian does not state that she requested disability accommodations under the ADA, that Defendants ever received a request for disability accommodations from her, or that Defendants denied her disability accommodations. Instead, Plaintiff broadly alleges that she "received a note from her doctor advising that she receive continued treatment" and alleges that "[b]y not honoring [her] request for intermittent time off to deal with her disability, Defendants [were] in violation of the ADA." ECF No. 1-3 at 12. Salehian does not plead that Defendants had knowledge of the doctor's note, that Defendants were otherwise aware of her disability, or that Defendants had knowledge of Plaintiff's need for intermittent treatment and time off.

Ultimately, Salehian does not allege that she had requested any accommodation at her workplace, or that Defendants had denied any accommodation Salehian requested. As "discrimination results from denying an available and reasonable accommodation," *Snapp*, 889 F.3d at 1095, and Salehian has not described any request for an accommodation, this cause of action fails. Salehian's ADA claim is dismissed without prejudice.

v.      *Title VII – Sex/Gender Discrimination*

Plaintiff's fifth cause of action alleges sex and/or gender discrimination on the part of Defendants. ECF No. 1-3 at 13-14. She alleges that "various males...were treated better than

1    Salehian because of their sex/gender in violation of Title VII." *Id.* However, Salehian's claims are
2    conclusory, and this Court cannot plausibly infer that Salehian was treated differently due to her
3    sex or gender based simply on the conditions of her termination.

4           Under Title VII, employers may not discriminate against any individual with respect to
5    their compensation, terms, conditions, or privileges of employment because of that individual's
6    sex. 42 U.S.C. § 2000e-2 (a). Disparate treatment arises when an employer treats some
7    employees less favorably than others due to their sex. *Harris*, 510 U.S. at 20; *Frank v. United Airlines,*
8    *Inc.*, 216 F.3d 845, 853 (9th Cir. 2000). To establish a *prima facie* case of gender discrimination, a
9    Plaintiff must plead facts that: (1) they are a member of a protected class, (2) they performed
10   according to legitimate expectations, (3) they suffered an adverse employment action, and (4)
11   similarly situated individuals outside their protected class were "treated more favorably, or
12   other circumstances surrounding the adverse employment action give rise to an inference of
13   discrimination." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

14          After applying the *Twombly* and *Iqbal* standard for specificity in pleading, Salehian does
15   not allege enough on that fourth prong for the Title VII claim to survive Defendants' motion to
16   dismiss. Plaintiff argues the absence of comments about Plaintiff's gender, or other facts
17   demonstrating Defendants' actions were motivated by discriminatory animus, does not matter
18   "if Salehian can show that she was treated differently than the men because of her gender." ECF
19   No. 15 at 22, n.10. But Salehian does not provide sufficient detail to establish that terminated
20   male employees were "similarly situated individuals", nor does she argue that the circumstances
21   of their terminations made them similarly situated. Plaintiff argues that "discovery is
22   for...try[ing] to determine if each employee was similarly situated," but allegations that fail to
23   clear even the lowest bar for plausibility – at the dismissal stage of the lawsuit, with inferences
24   taken in the light most favorable to the plaintiff – cannot survive to discovery.

1   Salehian alleges that she was treated differently because she was not male, but her
2   conclusion is not supported by sufficient factual allegations to make this claim actionable.
3   Consequently, this Court dismisses Salehian's Title VII claim without prejudice to allow
4   Salehian to plead sufficient factual matter that would give rise to a Title VII claim.

5                    vi.      *Intentional Infliction of Emotional Distress*

6            Plaintiff's eleventh cause of action alleges intentional infliction of emotional distress by
7   Defendant Conine. ECF No. 1-3 at 21-22. To establish a claim of intentional infliction of
8   emotional distress ("IIED"), plaintiff must prove (1) defendant engaged in "extreme or
9   outrageous conduct with either the intention of, or reckless disregard for, causing emotional
10  distress; (2) [plaintiff] suffered severe or extreme emotional distress; and (3) actual or proximate
11  causation." *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993). In Nevada, "extreme or
12  outrageous conduct is that which is outside all possible bounds of decency and is regarded as
13  utterly intolerable in a civilized community." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26
14  (Nev. 1998) (internal quotations omitted). When considering whether a plaintiff has sufficiently
15  stated a claim upon which relief can be granted, "[t]he court determines whether the defendant's
16  conduct may be regarded as extreme and outrageous so as to permit recovery, but, where
17  reasonable people may differ, the jury [must determine] whether the conduct was extreme and
18  outrageous enough to result in liability." *Chehade Refai v. Lazaro*, 614 F. Supp. 2d 1103, 1122 (D. Nev.
19  2009).

20           Here, however, Salehian's IIED claim against Conine cannot proceed because it is based
21  on the same alleged illegal employment practices underlying her discrimination claims. The
22  Supreme Court of Nevada has held that NRS 613.330 *et seq.* provides "the exclusive remedy for
23  tort claims premised on illegal employment practice." *Schaefer v. Diamond Resorts Int'l Mktg., Inc.*,
24  2015 WL 1932196, at *7 (D. Nev. Apr. 28, 2015); *see also Sands Regent v. Valgardson*, 777 P.2d 898, 900

(Nev. 1989) ("[T]he legislature has addressed the gravity of violating Nevada's public policy against age discrimination by defining the extent of the remedy available to parties injured by such discrimination."); *D'Angelo v. Gardner*, 819 P.2d 206, 217 n.10 (Nev. 1991) ("[N]o additional court-created remedies...arise out of age-based wrongful discharge for which tort recovery is available by statute."). Salehian's only allegation under her IIED claim is that "Defendant [Conine]'s actions as outlined above [in Salehian's claims for discrimination] constitute[] extreme and outrageous conduct which was intended to cause severe emotional distress to Plaintiff." ECF No. 1-3 at 21-22. Salehian pleads no allegations specific to IIED that exist outside of Salehian's existing allegations regarding discrimination; thus, Salehian must proceed under Nevada's statutory provisions that remedy discriminatory behavior.

This Court dismisses Salehian's IIED claim without prejudice to allow Salehian to sufficiently plead alternative grounds for IIED that are not precluded by statute.

## IV. Conclusion

Based on the foregoing reasons, I hereby GRANT in part and DENY in part Defendants' Motion to Dismiss (ECF No. 11).

IT IS ORDERED that Defendant's Motion to Dismiss is GRANTED with respect to Plaintiff's second, fourth, fifth, sixth, seventh, eighth, ninth, tenth, and eleventh causes of action. These claims are dismissed without prejudice.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss is GRANTED with respect to Plaintiff's state law claims under her first and third causes of action. These claims are dismissed without prejudice.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss is DENIED with respect to Plaintiff's ADEA claim under her first cause of action and Plaintiff's FMLA claim under her third cause of action.

1    IT IS FURTHER ORDERED that Defendant's Motion for Leave to File Supplemental

2 Legal Authority (ECF No. 13) is DENIED.

3    IT IS SO ORDERED.

4

5    DATED this August 1, 2022

6                                        _____
7                                        Cristina D. Silva
                                         United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24