Michael P. Balaban   State Bar No. 9370
LAW OFFICES OF MICHAEL P. BALABAN
10726 Del Rudini Street
Las Vegas, NV  89141
(702)586-2964
Fax: (702)586-3023

Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| SHEILA SALEHIAN, | ) | CASE NO. 2:21-cv-01512-CDS-NJK |
| | ) | |
| | ) | SECOND AMENDED COMPLAINT FOR |
| | ) | DAMAGES, REINSTATEMENT AND |
| | ) | OTHER RELIEF BASED UPON: |
| | ) | |
| Plaintiff, | ) | 1. AGE DISCRIMINATION IN VIOLATION |
| | ) | OF THE AGE DISCRIMINATION IN |
| vs. | ) | EMPLOYMENT |
| | ) | 2. HOSTILE ENVIRONMENT |
| | ) | HARASSMENT IN VIOLATION OF AGE |
| STATE OF NEVADA, NEVADA STATE | ) | DISCRIMINATION IN EMPLOYMENT |
| TREASURER'S OFFICE; ZACH CONINE, | ) | ACT |
| STATE TREASURER; DOES 1-50; and ROE | ) | 3. VIOLATION OF THE FAMILY AND |
| CORPORATIONS 1-50, | ) | MEDICAL LEAVE ACT |
| | ) | 4. DISABILITY DISCRIMINATION AND |
| | ) | FAILURE TO ACCOMMODATE IN |
| | ) | VIOLATION OF THE AMERICANS |
| | ) | WITH DISABILITIES ACT |
| Defendants. | ) | 5. SEX/GENDER DISCRIMINATION IN |
| | ) | VIOLATION OF TITLE VII OF THE |
| | ) | CIVIL RIGHTS ACT |
| | ) | |
| | ) | JURY DEMAND |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

Plaintiff SHEILA SALEHIAN ("Plaintiff" or "Salehian") alleges as follows:

1.    This action is brought pursuant the Age Discrimination in Employment Act of

1967, as amended, *29 USC §621, et seq.* (hereinafter "ADEA"); the Family and Medical Leave Act of 1993, *29 U.S.C. § 2601, et seq.* (hereinafter "FMLA"); the Americans With Disabilities Act of 1990, 42 U.S.C. §12101, et seq. (hereinafter "ADA"); and Title VII of the Civil Rights Act of 1964, *42 USC §2000e*, et seq. (hereinafter "Title VII").

2.     At all relevant times, the STATE OF NEVADA, NEVADA STATE TREASURER'S OFFICE ("Defendant Nevada State Treasurer" or "Nevada State Treasurer") employed twenty (20) or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year, and are therefore subject to the provisions of the ADEA, FMLA, ADA and Title VII.

## PARTIES

3.     Plaintiff, Salehian, is a citizen of the United States and at all relevant times was a resident of the State of Nevada, County of Clark and City of Las Vegas.

4.     Defendant Nevada State Treasurer, is a public entity and a Department of the State of Nevada, who Plaintiff was employed by at all relevant times giving rise to the claims asserted herein.

5.     Defendant ZACH CONINE, STATE TREASURER ("Defendant Conine" or "Treasurer Conine") is being sued in his official capacity as State Treasurer and director of the Nevada State Treasurer's Office.

6.     On information and belief, Defendant Conine is a citizen of the United States and a resident of the State of Nevada, County of Clark and City of Las Vegas.

7.     Doe Defendants 1 through 50 inclusive and Roe Corporation Defendants 1 through 50 inclusive, are unknown at the present time and thus sued by Plaintiff in such fictitious names. Plaintiff alleges however that said Defendants are in some manner responsible for the damages sustained by Plaintiff and that said Defendants will be named with peculiarity once their identities are known.  At such time, Plaintiff will seek leave of court to state more fully herein the names and acts of said Defendants.

8.      Plaintiff is informed and believes and thereon alleges that at all relevant times giving rise to the claims asserted, Plaintiff was employed in Las Vegas, Nevada by Defendant Nevada State Treasurer.

9.      Defendant Nevada State Treasurer is an employer within the meaning of *42 USC §2000e(b) and 29 USC §§623 and 630(b).*

## EXHAUSTION OF REMEDIES

10.     Plaintiff timely filed a "Charge of Discrimination" with the Equal Employment Opportunity Commission (hereinafter "EEOC") and Nevada Equal Rights Association (hereinafter "NERC") against Defendant Nevada State Treasurer, et al. and she has received a Notice of Right to Sue from the EEOC on this charge on June 22, 2021.  A copy of this Notice is attached to the Complaint as Exhibit "A".

11.     Salehian was forced to file her original complaint before receiving her Notice of Right to Sue from the U.S. Department of Justice because of the statute of limitations on her ADEA cause of action, among other causes of action.

## STATEMENT OF FACTS

12.     Plaintiff, a 59 year old female, was hired by Defendant on January 9, 2012 as a Senior Deputy Treasurer.  Salehian's last position was Executive Director of the Governor Guinn Millennium Scholarship Program, prior to her termination without cause, which occurred on October 28, 2019.

13.     Salehian was 57 years old when Treasurer Conine took office in January 2019, the second oldest in age (behind Beth Yeatts ["Yeatts"]) of the ten deputy appointees in Nevada State Treasurer's office.

14.     Prior to her termination, Salehian was repeatedly subjected to offensive, humiliating and harassing comments that she felt were directed towards her, her age and her ability to do her job because of her age.

15.     First in March of 2019 Chief of Staff Miles Dickson ("Chief of Staff Dickson" or

"Dickson") asked Plaintiff to walk him through the historical programs on Financial Literacy. Salehian put together a comprehensive summary document and met with Dickson and Beth Yeatts on it. In the meeting Dickson asked Plaintiff how long she had been with the Nevada State Treasurer's office and when she responded seven years, Dickson said "she had been with the state forever" and commented that that was longer than he had ever worked anywhere. This made Salehian feel embarrassed because she felt that Dickson was trying to point out that Plaintiff had been around so long as a way to belittle her because of her age.

16.     Second in April of 2019 at a Deputy meeting with all Deputies present, Chief of Staff Dickson made a statement about how outdated the Nevada State Treasurer's websites that he recently reviewed were and mentioned that "all of the deputies that were Millennials at the table and on video conference would much rather look at and appealing website then talk to a public servant" and that it was probably an "age thing" but that the Nevada State Treasurer's websites and ways of interacting with customers would need to change. Plaintiff felt very offended by the comment and that it was directed at her. She tried to lighten the conversation by saying, "Well in my mind I am a Millennial" to make it less uncomfortable and to convey to Dickson that she felt singled out by the comment.

17.     Shortly after that in April 2019, Chief of Staff Dickson asked to be given an overview of the Governor Guinn Millennium Scholarship Program because he was concerned about the extensive work that was done in the office to reconcile payments made to the Nevada System of Higher Education each semester.

18.     The meeting participants included Salehian, Dickson, Plaintiff's supervisor Yeatts and Evelyn Castro and Plaintiff tried to explain the reason for the audits and the necessity for them and Dickson made a comment about "how it probably has been 20 years since the policies and procedures were updated".

19.     Salehian was offended and explained that they did not have IT support for over a year and a half and that Plaintiff and her staff had made many changes to streamline servicing

since she had been in charge of the program and Dickson responded that he could only imagine when the program was installed there was probably "dot matrix printer" and people spending hours reconciling and that Dickson didn't see much difference now.

20.    Plaintiff was extremely offended and humiliated by Chief of Staff Dickson's comments which she felt were directed at her age and her ability to do her job because of her age.

21.    Finally in April of 2019 Salehian was invited to represent the State of Nevada Treasurer's Office at an all-expense paid Financial Literacy leadership meeting in Nashville, TN. Plaintiff asked the nonprofit to reach out to Treasurer Conine to ensure it was ok if she accepts. Defendant Conine informed the nonprofit that he would rather Chief of Staff Dickson attends.

22.    Plaintiff had to learn of the denial of her attendance by the non-profit partner, in lieu of notification from Defendant Conine or Chief of Staff Dickson.  When Salehian asked about the reasoning for the denial, given her vast experience in financial literacy vs. newly appointed Chief of Staff Dickson's own admission that "he was not a financial literacy expert", her questions went unanswered.

23.    In September 2019 Chief of Staff Dickson was making plans for the Treasurer's office to move to the fifth floor.  When Salehian asked Dickson about the move, she was told by Dickson that the Nevada State Treasurer's office was moving to a new location to "refresh the office and was interested in fresh faces and starting with a clean slate."  Plaintiff was offended by Dickson's remark that they were looking for fresh faces and starting a clean slate and took this to mean they wanted younger employees when the office moved.

24.    Salehian was also told that she would be getting a smaller office than younger staff/deputies and when she asked why, Dickson told her that there was no debating it and that was how it was going to be.  This ran in contravention to a prior planned office move a few years earlier in which offices were going to be assigned based on staff level and seniority according to State of Nevada rules.

25.    In addition between February 2019 and October 2019, Plaintiff experienced a

reduction of duties including media outreach responsibilities that were given to younger newly appointed deputies under Defendant Conine's leadership which Salehian thought was because of her age.

26.     Further during this time frame, Salehian was continually asked for information, reports and data, only to be repeatedly told by Chief of Staff Dickson, that he "had not had a chance to review what he had asked for" despite the urgent need for the information which required client to work numerous extra hours to provide. In addition Dickson/Conine's servicing letters had to be reviewed by a much younger appointed employee despite Plaintiff's oversight and seven years of successful experience running the programs and all customer communications.

27.     Also Plaintiff was never allowed to pick up Treasurer Conine and accompany him to public facing meetings or functions, despite the fact that it was a main component of her job for the past 7 years, before Treasurer Conine took office in January 2019. Instead other younger staff, all under 40 years of age, were the only employees allowed to accompany Treasurer Conine to public functions or Treasurer interviews, even when Salehian sourced and set up the interviews.

28.     Finally Tara Hagan assigned staff to review every outgoing long distance phone call Plaintiff made to make sure the calls were not personal phone calls. When Salehian escalated the disparate treatment to Dickson, he refused to address the issue with Hagan despite the fact *not one* call was ever found to be a personal call made by Plaintiff.

29.     Further Salehian was treated differently than similarly situated unclassified male deputies at the Nevada State Treasurer's office.

30.     This included Plaintiff being asked to pack her things to leave the workplace within two hours after almost eight years of successful employment at the Nevada State Treasurer's office.

31.     Salehian being told she would be given 21 days to review the "Separation and Release of All Claims Agreement" yet being placed immediately in "Leave without Pay" status which meant she lost her healthcare benefits three days later.

32.     Plaintiff not being allowed to send an email to staff or colleagues notifying them of her departure, or even properly say goodbye to employees she had worked with for many years.

33.     Salehian not being allowed to purchase additional years of service in PERS, as she was immediately and punitively placed on Leave without Pay.

34.     Plaintiff being locked out of her computer within 15 minutes of being fired so she was unable to even put an "out of office" notice on her email.

35.     Salehian not being given an offer to retire, only to resign, despite the fact she was the same age as another male employee, Dennis Stoddard, who was given the option to retire.

36.     Further Plaintiff's supervisor Beth Yeatts was also treated like her when she was terminated the same day as Salehian and in the same manner.

37.     This was in contrast to how similarly situated unclassified male deputies were treated.

38.     This included emails from Grant Hewitt stating he was leaving State Service and that "Treasurer Conine was supportive in attempting to help find Hewitt another position". Further all employee emails were sent by Hewitt despite the fact that Treasurer Conine had told Salehian and Yeatts, and members of the Unclaimed Property Department that Hewitt was fired for "lying to the Treasurer" in January 2019, days after Defendant Conine was sworn into office.

39.     Emails sent on behalf of Dennis Stoddard, Mark Ciavola, and Al Kramer written by Chief Deputy Hagan announcing a very cordial employee retirement.

40.     Timesheets from Stoddard that reflected the ability to "ride out" vacation time and extend healthcare benefits and PERS benefits.

41.     Further Plaintiff and Yeatts were both subjected to a level of scrutiny with respect to the handling of employee travel that Salehian did not witness with any of her male deputy counterparts or subordinates over the almost eight years of her employment including delays in travel approval, questioning policy, & reimbursement, etc.

42.     In addition Chief of Staff Dickson continuously asked Plaintiff for reports, input,

and information related to the programs that Plaintiff was responsible for, ie., 529, prepaid tuition, marketing, etc. and Salehian would wait weeks, and even months without commentary or feedback on items she had been asked to provide to Treasurer Conine or Dickson.

43.    In contrast, if Plaintiff's male subordinate Troy Watts, or peer Erik Jimenez, would send requested reports or information that Treasurer Dickson or Conine requested, they would respond within days, acknowledging and thanking the male employees for their follow up.

44.    For example Watt's comments on Marketing RFT and requests for support of FAFSA and Jimenez' request for feedback on Facebook marketing key words emails were responded to quickly while Plaintiff's Marketing RFP in August 2019, feedback on strategic goals in July 2019, approval of Mother's Day Blog in May 2019, overview of GGMS Scholarship Program Procedures in April 2019, Financial Literacy Program Feedback in October 2019, Nevada College Kick Start regulations next steps in October 2019 and Ascensus meetings for contract negotiations were ignored.

45.    In the fall of 2019 Salehian was seen by Kristen Addis Brown, M.D. at Thomas Dermatology to treat four skin cancer lesions.  In early October 2019 she began a topical chemotherapy treatment drug for the cancer.

46.    On October 8, 2019 in a meeting with Treasurer Conine, Chief of Staff Dickson and Yeatts, Plaintiff's initial accommodations to work from home were approved.  This became necessary because of the scabbing and pain on her face from the treatment.

47.    During this time Plaintiff continued to update her supervisor Yeatts, Treasurer Conine and Chief of Staff Dickson on her condition and her continued need to work from home as a reasonable accommodation for her disability.

48.    On October 17, 2019 Salehian was again treated by Dr. Brown, who filled out FMLA paper work for intermittent FMLA leave or accommodations for continued intermittent treatment that would be administered on an ongoing basis to treat Plaintiff's condition.

49.    On October 18, 2019 Plaintiff attended a Deputy Treasurer's meeting from home

via telephone with Treasurer Conine, Dickson and Yeatts and other deputies up north. After Salehian completed her project update, she informed Treasurer Conine and all the other people on the call/meeting that she had completed her first round of chemotherapy treatments, ie., two weeks of a six week regiment, and thus had four weeks of treatment left.

50.    Further on October 22, 2019 Salehian sent an email to Treasurer Conine, Chief of Staff Dickson and Yeatts, thanking them for allowing her to work from home during her current chemotherapy treatment and informing them that Plaintiff will have to undergo two more rounds of chemotherapy treatment in early November and mid-December.

51.    Then on October 28, 2019, Salehian's first day back in the office, she had a scheduled meeting with Treasurer Conine and Chief of Staff Dickson, along with her Supervisor Yeatts at 3:30 pm.

52.    Plaintiff planned to turn in her completed FMLA paperwork at that meeting, since the meeting was in person (normally it was by teleconference), and Salehian thought it would be more appropriate to make the request face to face, at her weekly meeting. Instead of meeting as planned, Chief of Staff Dickson asked Yeatts to "give them a few minutes" before joining the weekly meeting upstairs.

53.    Once Salehian arrived, instead of accepting the FMLA paperwork, Treasurer Conine and Chief of Staff Dickson proceeded to inform Plaintiff that her employment with the Nevada State Treasurer had ended. Plaintiff was shocked, surprised and completely caught off guard by the firing and despite repeated requests by Salehian for the reason behind the termination, Treasurer Conine refused to give a reason for the termination, except to say "he was going in a different direction" and Chief of Staff Dickson would present Plaintiff her final paperwork.

54.    Plaintiff was terminated without receiving any prior disciplinary action of any kind. Further she was performing her job satisfactorily at the time of her termination and in fact was given letters of recommendation by the past two State Treasurer's, the honorable Lt. Governor

Kate Marshall and the honorable State Treasurer Dan Schwartz, as well as her immediate supervisor for the prior two years, Yeatts.

55.    Further when Plaintiff was terminated, she had just finished coordinating a nationwide training conference for all State Treasurer's offices and had been recognized by the National Association of State Treasurer's, with appreciation for the role that she played in planning the successful statewide conference.  The Deputy who co-chaired that conference from the State of Washington thanked Salehian and provided a letter of recommendation.

56.    Salehian was 58 years old at the time of her termination, and Yeatts, Plaintiff's supervisor, age 62 at the time of her termination, was terminated the same day as Salehian without cause like Plaintiff.  Further Yeatts was replaced with an employee more than half her age, Kirsten Van Ry, who was 30 years old when she was hired to replace Yeatts, and Plaintiff's replacement, Tya Mathis-Coleman, was 38 years old when she replaced Salehian and thus 20 years her junior. In addition, when Mathis-Coleman replaced Plaintiff, she had no prior experience in financial services.

57.    In fact, nine of the eleven positions hired or promoted in the College Savings Division since Treasurer Conine took office in January 2019 (including the two mentioned above) were individuals under the age of 40.

58.    This included Erik Jimenez who was under the age or 30 when he was hired as Senior Deputy Treasurer-North in January 2019; Kirsten Van Ry who was originally hired by the Nevada State Treasurer in January 2019 when she was 29 years of age to fill the Executive Assistant position which had been vacated by Sandy Dombroski, age 60; Dickson who was under 40 when he was hired as Chief of Staff in February 2019; Evelyn Castro who was under 40 when she was promoted to the open Student Loan Ombudsman position in November 2019; Elizabeth Mares who was under 40 when she was hired as the new Governor Guinn Millennium Scholarship Program Officer 1 in November 2019; Matthew DeFalco who was under the age of 30 when he was hired as the new Executive Assistant for Treasurer Conine in March of 2020; and finally

Jamille Walton who was under 40 when hired in July 2020.

## FIRST CAUSE OF ACTION

### (For Age Discrimination and in Age Discrimination

### In Employment Act of 1967)

### (Against Defendants Nevada State Treasurer and Treasurer Conine)

59.    Plaintiff Salehian incorporates the allegation set forth in paragraphs 1 through 58, inclusive, as if fully set forth herein.

60.    This cause of action is brought pursuant to ADEA to obtain relief for Plaintiff for discriminating against her in the terms, conditions or privileges of her employment because of her age in violation of the ADEA.

61.    As set forth above Plaintiff was fifty-eight years of age when she was terminated on October 28, 2019.

62.    As further set forth above, Salehian received no disciplinary action of any kind prior to her termination and was performing her job satisfactorily at the time of her termination.

63.    Further as set forth above, Plaintiff's was replaced by Mathis-Coleman, who was 38 years old when she replaced Salehian and had no prior experience in financial services, making it reasonable to infer that the reason Defendant Nevada State Treasurer terminated Salehian was because of her age.

64.    Finally as set forth above, nine of the eleven positions hired or promoted in the College Savings Division since Treasurer Conine took office in January 2019 were individuals under the age of 40, showing a clear preference of hiring younger employees since Treasurer Conine took office.

65.    As a direct, foreseeable, and legal result of Defendants' age discrimination, Plaintiff has suffered, overall economic losses in earnings, pension, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

66.     The age discrimination by Defendants was willful and thus Plaintiff should be awarded liquidated damages pursuant *29 USC §626(b).*

67.     Further Salehian is entitled to injunctive relief in the form of reinstatement to her former position as Executive Director of the Millennium Scholarship Program.

68.     Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

69.     Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claim and Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

## SECOND CAUSE OF ACTION

### (For Hostile Environment Harassment in violation of ADEA)

### (Against Defendants Nevada State Treasurer and Treasurer Conine)

70.     Plaintiff Salehian incorporates the allegations set forth in paragraphs 1 through 69, inclusive, as if fully set forth herein.

71.     This cause of action is brought pursuant to ADEA as it involves a claim by Plaintiff for "Hostile Environment" age harassment.

72.     As previously set forth herein above, Plaintiff was harassed because of her age which created a "Hostile Environment" in the workplace for Salehian.

73.     This included repeatedly being subjected to negative comments about her age, and age related abilities, as set forth above.

74.     These comments were made by the specific individuals set forth above and taken together were severe and pervasive enough to create a "Hostile Environment" in the workplace for Salehian.

75.     Further Defendants had notice of that these comments created a "Hostile Environment" in the workplace for Salehian because Plaintiff let the Defendants and the individuals that made the comments know that they were offensive and harassing and Defendants

1    failed to take remedial action to stop the harassing comments.

2        76.    As a direct, foreseeable, and legal result of this age harassment by Defendants and

3    those acting on behalf of Defendants, Plaintiff has suffered crying attacks, embarrassment, being

4    unable to sleep, indignity, mental anguish, humiliation, emotional distress, nervousness, tension,

5    anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other

6    pecuniary losses, the extent of which is not fully known at this time, for which she seeks damages

7    in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the

8    time of trial.

9        77.    In acting as they did, Defendants knowingly, willfully, and intentionally acted in

10   conscious disregard of Plaintiff's rights.  Their conduct was despicable, has subjected Plaintiff to

11   oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a

12   sum according to proof at trial.

13       78.    Plaintiff claims the damages alleged herein, together with prejudgment interest as

14   provided by law, in a sum according to proof at trial.

15

16       79.    Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of

17   her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to

18   proof at trial.

19                              **THIRD CAUSE OF ACTION**

20                            **(For Violation of the FMLA)**

21        **(Against Defendants Nevada State Treasurer and Treasurer Conine)**

22       80.    Plaintiff Salehian incorporates the allegations set forth in paragraphs 1 through 79,

23   inclusive, as if fully set forth herein.

24       81.    At all relevant times Plaintiff was an "eligible employee" as that term is defined by

25   *29 U.S.C. § 2611(2),* entitled to 12 work weeks of leave under *29 U.S.C. § 2612(a)(1).*

26       82.    At all relevant times the Defendant Nevada State Treasurer was an "employer" as that

27   term is defined by *29 U.S.C. § 2611(4),* as it was engaged in "commerce" and an "industry or

28

activity affecting commerce" within the meaning of *29 U.S.C. § 2611(1)*.

83.     At all relevant times Plaintiff's medical condition (ie. recurrent skin cancers) constituted a "serious medical condition" as defined *29 U.S.C. § 2611(11)*.

84.     Plaintiff provided Defendant Nevada State Treasurer with all necessary information regarding her need for leave, and otherwise performed all duties necessary to take advantage of the rights conferred by the FMLA.

85.     On October 17, 2019, Salehian received a Certification from her Health Care Provider under the FMLA due to her serious medical condition.

86.     Upon her return to the office on October 28, 2019 from working from home for two weeks, Plaintiff was brought into a meeting with Treasurer Conine and Chief of Staff Dickson, and told she was being terminated without cause, effective immediately.

87.     Defendants' actions in terminating Plaintiff for trying to exercising her rights under FMLA constituted willful and unlawfully interference under the FMLA.

88.     As a direct and proximate result of Defendants' willfully interfering with Plaintiff exercising her rights under the FMLA, Salehian has suffered loss of income, including but not limited to past and future wages, benefits, pension, expenses, insurance, loss of back pay, front pay, other consequential damages, pain and suffering and other damages to be proven at trial.

89.     Defendants' actions were with deliberate indifference to such rights or were willful, entitling Plaintiff to an award of liquidated damages equal to double the amount of her actual damages.

90.     Further Salehian is entitled to injunctive relief in the form of reinstatement to her former position as Executive Director of the Millennium Scholarship Program.

91.     Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

92.     Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to

proof at trial.

**FOURTH CAUSE OF ACTION**

**(For Disability Discrimination and Failure to Accommodate in**

**Violation of the Americans with Disabilities Act of 1990)**

**(Against Defendants Nevada State Treasurer and Treasurer Conine)**

93.    Plaintiff Salehian incorporates the allegations set forth in paragraphs 1 through 92, inclusive, as if fully set forth herein.

94.    This cause of action is brought pursuant to the ADA to obtain relief for Plaintiff for failing to accommodate her disabilities in violation of the ADA.

95.    As set forth hereinabove, Salehian suffered from skin cancers which made her unable or made it difficult to perform public speaking while going through chemotherapy and other medically necessary treatments as well as perform public service, outreach and education of college savings programs and scholarships.

96.    These ailments qualify as physical impairments under the ADA.  Further they substantially limited Plaintiff in performing major life activities, including but not limited to working, and thus qualified Salehian as being disabled under the ADA.

97.    Further Plaintiff was a qualified individual with a disability under the ADA because she could have been accommodated by being provided intermittent leaves of absences for treatment, among other things.

98.    Thus as set forth above Salehian was a qualified individual with a disability under the ADA.

99.    In addition as set forth above, Defendant Conine and other senior members of the Nevada State Treasurer's Office knew of Plaintiff's cancer diagnosis and allowed her to work from home to accommodate the negative medical impacts of her topical chemotherapy treatment and were aware that she had four more weeks of treatment left before they moved to terminate Plaintiff's employment.

100.    Despite the knowledge of Plaintiff's current medical diagnosis, chemotherapy treatment plan, and need for continued accommodations, Defendant Nevada State Treasurer moved to terminate Salehian's employment October 28, 2019, the first day she returned to work after working from home.

101.    Further Defendant Conine's move to terminate Plaintiff Salehian was especially punitive as he knew her healthcare coverage was critical, yet the Nevada State Treasurer's "Separation and Release of All Claims" document was prepared in such a way that Salehian would lose medical coverage within 72 hours if she did not sign the release/waiver agreement.

102.    As a direct, foreseeable, and legal result of Defendants failing to accommodate Plaintiff under the ADA and terminating her employment because of her disability, Plaintiff has suffered, overall economic losses in earnings, pension, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

103.    As a further direct, foreseeable, and legal result of Defendants failing to accommodate Plaintiff under the ADA and terminating her employment because of her disability, Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which she seek damages in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the time of trial.

104.    In acting as they did, Defendants knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights.  Their conduct was despicable, has subjected Plaintiff to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

105.    Further Salehian is entitled to injunctive relief in the form of reinstatement to her former position as Executive Director of the Millennium Scholarship Program or some alternative position which she can perform with or without accommodations.

106.    Plaintiff claim the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

107.    Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

### FIFTH CAUSE OF ACTION

**(For Sex/Gender Discrimination in Violation of Title VII)**

**(Against Defendants Nevada State Treasurer and Treasurer Conine)**

108.    Plaintiff Salehian incorporates the allegation set forth in paragraphs 1 through 107, inclusive, as if fully set forth herein.

109.    This cause of action is brought pursuant to Title VII to obtain relief for Plaintiff for discriminating against her in the terms, conditions or privileges of his employment because of her sex/gender Discrimination in violation of Title VII.

110.    As previously set forth herein above, Salehian was treated differently from similarly situated unclassified male deputies because of her sex/gender in violation of Title VII.

111.    In addition to the male deputies being unclassified employees of the Nevada State Treasurer's office, they were similarly situated because they were also sworn into office by the Nevada State Treasurer and required to take the same oath of office as Plaintiff, were required to take the same training courses by state statute as Salehian, were entitled to the same annual leave by state statute as Plaintiff and earned time in PERS in a like manner to Salehian as provided for by state statute.

112.    As a direct, foreseeable, and legal result of this discrimination because of her sex/gender, Plaintiff has suffered, overall economic losses in earnings, pension, bonuses, job benefits and expenses, in an amount to be proven at trial which exceeds the minimum jurisdictional limits of this Court.

113.    As a further direct, foreseeable, and legal result of this discrimination because of

her sex/gender, Plaintiff has suffered indignity, mental anguish, humiliation, emotional distress, nervousness, tension, anxiety, recurring nightmares, depression, inconvenience and loss of enjoyment of life and other pecuniary losses, the extent of which is not fully known at this time, for which she seeks damages in an amount in excess of the minimum jurisdictional limits of the Court, also to be proven at the time of trial.

114.    In acting as they did, Defendants knowingly, willfully, and intentionally acted in conscious disregard of Plaintiff's rights.  Their conduct was despicable, has subjected Plaintiff to oppression, and it warrants an award of punitive and exemplary damages in favor of Plaintiff, in a sum according to proof at trial.

115.    Further Salehian is entitled to injunctive relief in the form of reinstatement to her former position as Executive Director of the Millennium Scholarship Program.

116.    Plaintiff claims the damages alleged herein, together with prejudgment interest as provided by law, in a sum according to proof at trial.

117.    Plaintiff has incurred, and continues to incur, attorney's fees in the prosecution of her claims.  Plaintiff therefore seeks an award of reasonable attorney's fees, in a sum according to proof at trial.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Salehian demands judgment against Defendant Nevada State Treasurer and Defendant Conine as follows:

1.    Declaring that the acts and practices complained of here are a violation of ADEA, ADA, Title VII, and  FMLA;

2.    Enjoining and permanently restraining the violations by Defendants of the ADEA, ADA, Title VII and FMLA;

3.    For back pay and front pay for overall economic losses in earnings, pension, bonuses, job benefits and expenses, according to proof at time of trial;

4.  For compensatory damages for mental and emotional distress, worry, indignity, mental anxiety, mortification, depression, shame, grief, inconvenience and loss of enjoyment of life and other pecuniary losses, all to Plaintiff's damage in a sum to be shown at the time of trial;

5.  For punitive damages and exemplary damages;

6.  For reinstatement to Plaintiff's former position as Executive Director of the Millennium Scholarship Program or some alternative position which she can perform with or without accommodations.

7.  For attorney's fees and costs in an amount determined by the court to be reasonable;

8.  For pre-judgment interest on all damages; and

9.  For any other and further relief that the court considers proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Nevada Rules of Civil Procedure, Plaintiff demands a trial by jury in this action.


DATED:  8/15/2022                    LAW OFFICES OF MICHAEL P. BALABAN



BY: /s/ Michael P. Balaban
    Michael P. Balaban
    LAW OFFICES OF MICHAEL P. BALABAN
    10726 Del Rudini Street
    Las Vegas, NV  89141

# EXHIBIT

# "A"

# NOTICE OF RIGHT TO SUE



U.S. Department of Justice
Civil Rights Division
NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

June 22, 2021

Ms. Sheila Salehian
c/o Michael P. Balaban, Esquire
Law Offices of Michael P. Balaban
10726 Del Rudini Street
Las Vegas, NV 89141-4216

Re: EEOC Charge Against State of Nevada, Nevada State Treasurer's Office, et al.
    No. 487202000488

Dear Ms. Salehian:

Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action against the above-named respondent under: Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and, Title V, Section 503 of the Act, 42 U.S.C. 12203.

If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

The investigative file pertaining to your case is located in the EEOC Las Vegas Local Office, Las Vegas, NV.

This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by      /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: Las Vegas Local Office, EEOC
    State of Nevada, Nevada State Treasurer's Office, et al.