AARON D. FORD
Attorney General
JUDY A. PRUTZMAN
Deputy Attorney General
NV Bar No. 6078
BRANDON R. PRICE
Senior Deputy Attorney General
NV Bar No. 11686
State of Nevada Office of the Attorney General
5420 Kietzke Lane, Suite 202
Reno, NV 89511
(775) 687-2100 (phone)
(775) 688-1822 (fax)
Email: jprutzman@ag.nv.gov
         bprice@ag.nv.gov

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| SHEILA SALEHIAN,<br><br>              Plaintiff,<br><br>vs.<br><br>STATE OF NEVADA, NEVADA STATE TREASURER'S OFFICE; ZACH CONINE, STATE TREASURER; DOES 1-50; and ROE CORPORATIONS 1-50,<br><br>              Defendants. | Case No. 2:21-cv-01512-CDS-NJK<br><br>**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Defendants STATE OF NEVADA, NEVADA STATE TREASURER'S OFFICE ("State Treasurer's Office") and ZACH CONINE, STATE TREASURER (collectively "Defendants"), by and through their attorneys, AARON D. FORD, Attorney General, JUDY A. PRUTZMAN, Deputy Attorney General, and BRANDON R. PRICE, Senior Deputy Attorney General, and pursuant to Fed. R. Civ. P. 56, hereby move this Court for an order granting summary judgment in favor of Defendants, as there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.

This motion is based upon the following memorandum of points and authorities, the pleadings and papers on file herein, and all exhibits attached hereto.

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3

4

5

6

7

8

9

10

11

12

13

14

15

     This is a lawsuit filed by a disgruntled former employee who was terminated from her unclassified at-will position in the Nevada State Treasurer's Office ("Treasurer's Office" or "Office"). Plaintiff was terminated solely because of her poor work performance, inability to get along with co-workers, and her unwillingness to adapt to changes and focus on and prioritize programs important to the Office after Treasurer Conine was elected. When Plaintiff Sheila Salehian ("Plaintiff") was notified of her termination on October 28, 2019, she was offered six weeks of paid administrative leave and the opportunity to voluntarily resign. Plaintiff declined this offer, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), then initiated this lawsuit. The gravamen of Plaintiff's lawsuit is that she was harassed because of her age, treated differently from similarly situated male employees, and terminated for exercising her rights under the Family and Medical Leave Act ("FMLA") and/or because of her age and alleged disability (skin cancers). Plaintiff also asserts that Defendants failed to provide intermittent leave as an accommodation for her alleged disability.

16

17

18

19

20

21

22

23

24

25

26

27

28

     The allegations asserted by Plaintiff are completely without merit and unsupported by the evidence in the record. The undisputed material facts show that Plaintiff was not discriminated against or terminated for any improper reason. Defendants did not know about Plaintiff's medical condition until *after* they decided to terminate her and had started the termination process, nor did they know Plaintiff needed or intended to take leave due to a medical condition. It is also undisputed that Plaintiff never requested intermittent leave as an accommodation for her alleged disability. Plaintiff was an unclassified at-will employee who served at the pleasure of the elected State Treasurer. Plaintiff's hostile work environment and disparate treatment claims are based upon nothing more than Plaintiff's subjective beliefs and unfounded assumptions. Plaintiff never made a single complaint of being treated differently from male employees or a hostile work environment during her employment. The instant action is nothing more than an attempt by Plaintiff to avoid taking responsibility for her actions while employed at the Treasurer's Office. . . . .

## II.    RELEVANT PROCEDURAL HISTORY

Plaintiff's original Complaint and First Amended Complaint ("FAC") contained eleven causes of action. See ECF No. 1-2, pp. 16-20; ECF No. 1-3, pp. 16-20. After Defendants filed a Motion to Dismiss (ECF No. 11), Plaintiff realized that nearly half of her claims were baseless and consented to dismissal of these claims. ECF No. 15, p. 2, n.1. On August 1, 2022, the Court granted Defendants' Motion to Dismiss in part, dismissing nine of Plaintiff's claims with leave to amend, and leaving only Plaintiff's age discrimination and FMLA claims intact. *See* ECF No. 34.

On August 16, 2022, Plaintiff filed an untimely[1] Second Amended Complaint ("SAC") asserting the following five claims for relief against Defendants: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (2) hostile environment age harassment in violation of the ADEA; (3) violation of the FMLA; (4) disability discrimination and failure to accommodate in violation of the Americans With Disabilities Act ("ADA"); and (5) sex/gender discrimination in violation of Title VII of the Civil Rights Act ("Title VII"). ECF No. 37. Plaintiff's claims are meritless. The filing of the SAC was Plaintiff's opportunity to rectify deficiencies in the FAC with respect to her age harassment, ADA and Title VII claims dismissed by the Court. However, these three claims suffer from the same facial deficiencies that existed in the FAC - they do not contain sufficient facts to state viable claims. Moreover, all of Plaintiff's five claims should be dismissed with prejudice as there are no genuine issues of material fact and Defendants are entitled to judgment in their favor as a matter of law.

## III.    STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    The Treasurer's Office Has A Zero Tolerance Nondiscrimination Policy

The Treasurer's Office has a zero tolerance nondiscrimination policy. *See* Exhibit 1 at DEF 589. The policy directs employees of the Treasurer's Office to comply with the Governor's Policy Against Sexual Harassment and Discrimination ("Governor's Policy"). *Id*. at DEF 593. Both the Treasurer's Office Employee Policy Manual and the Governor's Policy outline the internal procedures for reporting incidents of harassment or discrimination. *Id.* at DEF 593, DEF

---

[1] The deadline for filing a Second Amended Complaint was August 15, 2022, per the Order to Modify the Scheduling Order filed by the Court on August 5, 2022. ECF No. 36, p. 6.

608. For instance, employees can file a complaint on NEATS (the Nevada Employee and Timekeeping System) or complete a Sexual Harassment or Discrimination Complaint Form located on the State of Nevada's Division of Human Resource Management ("DHRM") website. *Id.* Employees can also report harassment or discrimination by calling DHRM's Harassment/Discrimination toll-free hotline. *Id.* at DEF 608.

Plaintiff acknowledged receiving and understanding the Governor's Policy at the beginning of her employment, and she attended mandatory harassment and discrimination prevention training courses during her employment. *See* Exhibit 2, Salehian Depo., pp. 134, ll. 20-25, 138, ll. 17-25; *see also* Exhibit 1 at DEF 1008. Plaintiff did not take advantage of the available internal policies and procedures by filing a formal complaint during her employment. *See* Exhibit 2, Salehian Depo., p. 151, ll. 12-18.

### B.    Plaintiff's Employment With The Treasurer's Office

Plaintiff was hired, at age 49, as a Senior Deputy Treasurer by former State Treasurer Kate Marshall in January 2012. *See* Exhibit 2, Salehian Depo., pp. 16-18. In May of 2015, Plaintiff was moved into the position of Executive Director of the Governor Guinn Millennium Scholarship Program, and she remained in that position until her termination. *Id.* at 19, ll. 1-11. Plaintiff supervised six staff members in Carson City and Las Vegas and reported directly to a Senior Deputy Treasurer named Beth Yeatts for the last two years of Plaintiff's employment. *Id.* at 20, ll. 17-22, 21, ll. 1-14; Exhibit 1 at DEF 543. Plaintiff worked in the "South" office of the Treasurer's Office,[2] and her primary duties were related to savings and scholarship programs that help Nevadans save and pay for post-secondary education, including the Governor Guinn Millennium Scholarship Program; Nevada-sponsored national 529 savings plans; and the Nevada Prepaid Tuition Program. *See* Exhibit 1 at DEF 543-544.

All positions held by Plaintiff were unclassified positions and Plaintiff understood that her employment was at-will, meaning she could be terminated at any time without cause. *See* Exhibit 2, Salehian Depo., pp. 23, ll. 7-9, 26, ll. 17-20. As such, she was not entitled to protected job status

---

[2] Approximately half of the staff of the Treasurer's Office works in the "North" in Carson City, Nevada and half the staff works in the "South" in Las Vegas. *See* Exhibit 3, Conine Depo., pp. 34. ll. 24-25, 35, ll. 1-6.

and the notice or process provisions of Chapter 284 of the Nevada Revised Statutes ("NRS") and the Nevada Administrative Code ("NAC") before being terminated. *See* NRS 284.383-284.405 (process for discipline or dismissal of permanent *classified* employee); NAC 284.638-284.6563 (same); Exhibit 3, Conine Depo., p. 26, ll. 9-24. Plaintiff, like other unclassified employees in the Office, was appointed, sworn in by and served at the pleasure of the elected Nevada State Treasurer. *See* Exhibit 2, Salehian Depo., p. 30, ll. 14-25, 31, ll. 1-5; Exhibit 3, Conine Depo., pp. 16, ll. 19-25, 17, ll. 2-7.

In November 2018, Defendant Zach Conine ("Treasurer Conine") was elected as Nevada State Treasurer. Miles Dickson was hired as the new Chief of Staff at the end of January 2019. *See* Exhibit 4, Dickson Depo., p. 23. Mr. Dickson supervised Plaintiff's direct supervisor and was responsible for the staff and two programs in the Las Vegas office of the Treasurer's Office, including the College Savings Department that Plaintiff worked in. *See* Exhibit 4, Dickson Depo., pp. 18, ll. 20-25, 19, ll. 1-15.

### C.    Plaintiff Was Not Satisfactorily Performing Her Job

After Treasurer Conine was elected, he met with Plaintiff and Ms. Yeatts to discuss the changes he wanted to see in the College Savings Department and where the department could grow. *See* Exhibit 3, Conine Depo., pp. 33, ll. 21-25, 34-36. During the Nevada State Legislative session of 2019, the Treasurer's Office significantly increased the marketing budget for College Savings and created new positions that would report to Plaintiff. *See* Exhibit 4, Dickson Depo., pp. 34, ll. 16-21. When the legislative session ended, the Treasurer's Office Executive Team, consisting of Treasurer Conine, Chief Deputy Treasurer Tara Hagan and Mr. Dickson, started discussing whether the deputies responsible for College Savings, including Plaintiff and Ms. Yeatts, would be able to support the significant program expansions secured during the legislative session. *See* Exhibit 3, Conine Depo., p. 69, ll. 16-25, 70, ll.1-5; Exhibit 4, Dickson Depo., pp. 33, ll. 23-25, 34-36. By that point, Mr. Dickson had noticed Plaintiff's poor overall performance relative to other deputies in the Office, her reluctance to adapt to changes requested by senior management and unwillingness to focus on Treasurer Conine's priorities. *See* Exhibit 4, Dickson Depo., pp. 71, ll. 3-19, 73, ll. 19-25, 74, ll. 1-15. Mr. Dickson was also concerned about Plaintiff's

inability to provide a clear strategy to move the College Savings Department in the direction it needed to go. *Id.* at 20-22, 71, ll. 21-25, 72, 73, ll. 1-4. When asked to put together a strategic plan, Plaintiff produced a plan that was unresponsive and "absolutely incoherent." *See* Exhibit 3, Conine Depo., p. 99, ll. 2-11.

Treasurer Conine also noticed Plaintiff's resistance to focus on the things he wanted to focus on and considered Plaintiff's work product to be scattered and suboptimal. *See* Exhibit 3, Conine Depo., pp. 50, ll. 9-25, 51, 52, ll. 1-13, 98, ll. 3-9. He also observed a "massive amount of toxicity" between employees in the North and South offices that was coming primarily from Plaintiff and Ms. Yeatts. *Id.* at 35, ll. 7-12. Plaintiff created a toxic environment with "persistent belittling of staff" and yelling at coworkers. *Id.* at 48, ll. 10-16, 49, ll. 8-13, 114, ll. 16-25. Ms. Hagan, who had worked with Plaintiff in the Treasurer's Office for over five years, observed that Plaintiff was not always professional in her interactions with coworkers and was not the best team player. *See* Exhibit 5, Hagan Depo., pp. 34, ll. 18-25, 35, ll. 1-9. Employees had come to Ms. Hagan in tears because they felt badgered by Plaintiff. *Id.* at 35, ll. 10-25, 36, ll. 1-13. Ms. Hagan also noticed that Plaintiff had a difficult time with change that occurs when there was a change in administration, a new Treasurer and a new direction for the Office. *Id.* at 48, ll. 22-25, 49, ll. 20-25. Indeed, Ms. Hagan's concerns about Plaintiff's performance had been discussed with former Treasurer Schwartz and resulted in a January 10, 2017, letter to Plaintiff that outlined those concerns. *Id.* at 36, ll. 21-25, 37, ll. 1-7, 38-40; *see also* Exhibit 1 at DEF 520-523.

## D.    Plaintiff's Termination

During the spring of 2019, Mr. Dickson had noticed early warning signs related to Plaintiff's performance and reached the conclusion over the course of the summer that Plaintiff was not the right person to lead the program expansions in College Savings that had just been secured at the legislature. *See* Exhibit 4, Dickson Depo., pp. 36, ll. 15-25, 37, 38, ll. 1-11. By the end of August 2019, the Executive Team made the decision to terminate Plaintiff. *See* Exhibit 3, Conine Depo., pp. 69, ll. 16-25, 70; Exhibit 4, Dickson Depo., pp. 38, ll. 6-25, 39, ll. 1-5; Exhibit 5, Hagan Depo., p. 63, ll. 4-22. At that point, Ms. Hagan and Mr. Dickson started working on the logistics of Plaintiff's termination. *See* Exhibit 3, Conine Depo., pp. 84, ll. 19-25, 85, ll. 2-17, 86,

ll. 2-14. For example, Mr. Dickson sent emails to Ms. Hagan on August 16, 2019, and September 3, 2019, inquiring about Plaintiff's position to confirm that it was unclassified for purposes of preparing a separation agreement. *See* Exhibit 1 at DEF 1218-1219; Exhibit 5, Hagan Depo., pp. 66-67, 68, ll. 12-22, 69, ll. 6-25, 70, ll. 1-16, 72-74. In a September 19, 2019, email to Ms. Hagan, Mr. Dickson discussed Plaintiff's position, severance amounts and letters, as well as a tentative October 4th target date for the termination. *See* Exhibit 1, DEF 1220.

Because Treasurer Conine wanted to notify Plaintiff of her termination in person on a Friday and Plaintiff had started working from home on or about October 11, 2019, Plaintiff was not terminated until she returned to work in the office on October 28, 2019. *See* Exhibit 3, Conine Depo., pp. 86, ll. 15-25, 87, ll. 1-3, 88, ll. 13-25, 89, ll. 8-17; Exhibit 4, Dickson Depo., pp. 50, ll. 8-25, 51, ll. 2-13. When she was notified of her termination, Plaintiff was given the opportunity to voluntarily resign and receive six weeks of paid administrative leave. *See* Exhibit 2, Salehian Depo., pp. 196, ll. 20-25, 197-199; *see also* Exhibit 6 at Salehian 43. On November 12, 2019, Plaintiff rejected the opportunity to resign. *Id.* at 201, ll. 1-6.

### E.    Plaintiff's Termination Had Nothing To Do With Her Alleged Medical Condition Or Her Purported Attempt To Exercise Rights Under The FMLA

Plaintiff's termination had nothing to do with her alleged medical condition or her alleged intent to exercise her rights under the FMLA. *See* Exhibit 12 at ¶ 5; Exhibit 13 at ¶ 7. It is undisputed that the Executive Team members were not aware of Plaintiff's medical condition until early or mid-October of 2019, at least two months *after* the decision to terminate Plaintiff had been made. *See* Exhibit 3, Conine Depo., p. 62, ll. 6-14; Exhibit 4, Dickson Depo., pp. 52, ll. 10-25, 53, l.1; Exhibit 5, Hagan Depo., pp. 29, ll. 14-25, 30, ll. 1-2; Exhibit 12 at ¶ 4; Exhibit 13 at ¶ 6. In fact, the decision to terminate Plaintiff was made *before* Plaintiff's first visit with her dermatologist, Kristen Brown, M.D. ("Dr. Brown"), on August 26, 2019, for treatment of Plaintiff's skin lesions. *See* Exhibit 2, Salehian Depo., p. 158. Plaintiff admits she was not told she was being terminated because of her skin cancer. *Id.* at 173, ll. 20-22.

Plaintiff never requested FMLA leave before she was terminated. *Id.* at 171, ll. 21-25, 172, l. 1. Plaintiff also acknowledges that her skin cancer treatment did not require her to miss

work for a continuous period and she was able to continue working. *Id.* at 166, ll. 15-24, 167, ll. 1-21. In addition, Treasurer Conine, Mr. Dickson and Ms. Hagan were unaware that Plaintiff needed or intended to request time off because of her medical condition. *See* Exhibit 3, Conine Depo., pp. 67, ll. 13-25, 68, ll. 1-7; Exhibit 4, Dickson Depo., pp. 59, ll. 12-25, 60, ll. 1-3.; Exhibit 5, Hagan Depo., pp. 32, ll. 8-25, 33, ll. 1-5. During a meeting on October 8, 2019, Plaintiff notified Treasurer Conine, Mr. Dickson and Ms. Yeatts of her skin cancer and her need to possibly work from home. *See* Exhibit 2, Salehian Depo., pp. 42, ll. 4-20, 44-45; Exhibit 3, Conine Depo., p. 63, ll. 17-21; Exhibit 4, Dickson Depo., pp. 52, ll. 1-9, 104, ll. 15-23, 105, ll. 2-14. Plaintiff started working from home after she called in sick on October 11, 2019, when she experienced "redness of the face" and "scabbing" from treatment. *See* Exhibit 2, Salehian Depo., pp. 167, ll. 13-25, 168, ll. 1-4.

Mr. Dickson recalls that Plaintiff "wanted to keep working and she just preferred doing it at home." *See* Exhibit 4, Dickson Depo., p. 52, ll. 1-9. Plaintiff sent an email to Treasurer Conine, Mr. Dickson and Ms. Yeatts on October 22, 2019, to thank them "for allowing [her] to work from home for the past 7 days" and to let them know that she planned to "be back in the office physically on Monday [October 28, 2019]." *See* Exhibit 2, Salehian Depo., pp. 168, ll. 20-25, 169, ll. 1-17; *see also* Exhibit 7. Plaintiff said nothing in her October 22, 2019, email about needing or requesting time off for her medical condition and stated that working remotely had allowed her to "take all calls, meetings, handle staff needs, emails, etc. as if [she] were in the office." *See* Exhibit 7 at Salehian 65.

F.    **Plaintiff Was Not Denied An ADA Accommodation**

Plaintiff never asked for an ADA accommodation due to an alleged disability. In particular, Plaintiff did not request intermittent leave as an accommodation for her alleged disability. *See* Exhibit 2, Salehian Depo, pp. 188, ll. 11-20, 189, ll. 15-18. As discussed above, Plaintiff did ask to work from home, and she was permitted to do so. *See* Exhibit 2, Salehian Depo., pp. 166-168.

. . . .

. . . .

### G.    Plaintiff Was Not Discriminated Against Because of Her Age

There is no evidence in the record that Defendants terminated Plaintiff because of her age. In fact, the evidence shows that Plaintiff's termination had nothing to do with her age. *See* Exhibit 12 at ¶ 5; Exhibit 13 at ¶ 8. Indeed, Plaintiff admits she was not told she was being terminated because of her age. *See* Exhibit 2, Salehian Depo., p. 61, ll. 21-23. Plaintiff relies on her own assumption that she was terminated based on her age because she was replaced by Tya Mathis-Coleman ("Dr. Coleman"), a 38-year-old female whom Plaintiff assumes had "no prior experience in financial services." *See* ECF No. 37, ¶¶ 56, 63. The undisputed facts of this case establish that Plaintiff's assumption is incorrect.

Dr. Mathis-Coleman testified during her deposition that she did have financial services experience when she was hired by the Treasurer's Office – she had spent nine years working as a recruiter for the University of Nevada, Reno, where she worked with students to plan their financial budgets and discuss paying for college. *See* Exhibit 8, Mathis-Coleman Depo., pp. 7-8, 9, ll. 1-8. When Dr. Mathis-Coleman was hired, she had earned a bachelor's degree, a master's degree in public administration and a doctorate degree in public policy. *Id.* at 6, ll. 16-25. She also had about sixteen years of public sector, education and college savings experience working for the University of Nevada, the Public Education Foundation and Clark County School District. *Id.* at 40, ll. 20-25, 41, ll. 1-11. In her prior public sector experience, Dr. Mathis-Coleman worked closely with students to apply for scholarships for post-secondary education. *Id.* at 21, ll. 10-25, 22, ll. 1-11. Dr. Mathis-Coleman also ran a scholarship program in Southern Nevada for over ten years. *Id.* at 22, ll. 5-11, 25. By comparison, Plaintiff had earned only a bachelor's degree, then worked twenty-two years in the private sector and two years with the Clark County Recorder in jobs unrelated to education or college savings. *See* Exhibit 2, Salehian Depo., pp. 12, ll. 4-6, 13, ll. 12-25, 14-15, 16, ll. 1-3.

Plaintiff's allegation that there was "a clear preference of hiring younger employees since Treasurer Conine took office" (ECF No. 37, ¶ 64) is based on nothing but Plaintiff's speculative assumptions about the ages of her former co-workers and the recruitment process for filling vacancies in the Treasurer's Office. Treasurer Conine stated under oath that he personally does

not prefer or relate better to younger employees, and that most of the employees in the Treasurer's Office are older than he is (age 40). *See* Exhibit 3, Conine Depo., pp. 25, ll. 21-25, 29, ll. 21-22. There is no evidence in the record demonstrating that Treasurer Conine preferred to hire younger employees. With regard to the vacancies in the College Savings Division that Plaintiff alleges were filled by individuals under the age of 40, Treasurer Conine wasn't even involved with hiring those individuals because they were classified employee hires. *Id.* at 136, ll. 9-20.

Plaintiff also makes unfounded allegations that she was subjected to a hostile work environment, harassed because of her age and repeatedly subjected to negative comments about her age and age-related abilities. *See* ECF No. 37, ¶¶ 72-73. Plaintiff's harassment claim is based upon alleged comments and/or conduct by Mr. Dickson and Treasurer Conine. There is absolutely no evidence to support Plaintiff's accusation that she was subjected to a hostile work environment. Moreover, Plaintiff never told Mr. Dickson that she believed his comments or conduct reflected an age bias and she did not ask Mr. Dickson to stop making the comments. *See* Exhibit 2, Salehian Depo., p. 144, ll. 12-14; Exhibit 4, Dickson Depo., p. 81, ll. 3-7. Plaintiff also failed to take advantage of the available internal policies and procedures by filing a formal complaint of harassment during her employment. *See* Exhibit 2, Salehian Depo., p. 151, ll. 12-18. Plaintiff's allegations are based on nothing but speculation and unwarranted assumptions.

### H.    Plaintiff Was Not Discriminated Against Because of Her Sex/Gender

Despite Plaintiff's unsupported allegations to the contrary, she was not treated differently from similarly situated male employees. Plaintiff alleges Dennis Stoddard was given the option to retire and allowed to "ride out" vacation time and extend healthcare and PERS benefits, while she was not. ECF No. 37, ¶¶ 35, 40. Plaintiff also alleges that Chief Deputy Hagan announced "a very cordial employee retirement" in emails sent on behalf of Mr. Stoddard, Mark Ciavola and Al Kramer when they retired and Grant Hewitt was permitted to send emails stating he was leaving State service, despite the fact that he was fired. *Id.* at ¶¶ 38-39. The uncontroverted evidence demonstrates that Plaintiff's allegations about these male employees are based on false assumptions about the circumstances under which their employment ended. More importantly, the record is devoid of any evidence that these employees were similarly situated to Plaintiff.

1    Plaintiff also claims she was "subjected to a level of scrutiny with respect to the handling

2    of employee travel" that her male deputy counterparts and subordinates were not subjected to,

3    and she had to wait weeks or months to receive feedback from Treasurer Conine or Mr. Dickson,

4    while her male co-workers would receive a more immediate response. ECF No. 37, ¶¶ 42-44.

5    There is no evidence that any of this alleged different treatment occurred, and even if it did, there

6    is no evidence that Plaintiff was treated differently because of her gender.

7    **IV.    STANDARD OF REVIEW**

8    Summary judgment is appropriate when "there is no genuine dispute as to any material

9    fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex*

10   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving parties bear the burden of showing that

11   they are entitled to summary judgment. *Id*. However, if the non-movant ultimately bears the

12   burden of proof at trial, the summary judgment movant need not support its motion with evidence

13   negating the non-movant's case. *Id*. at 325. Rather, the summary judgment movant may satisfy its

14   burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id*. ("the

15   burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district

16   court -- that there is an absence of evidence to support the nonmoving party's case."). *Id*. Summary

17   judgment shall be entered "against a party who fails to make a showing sufficient to establish the

18   existence of an element essential to that party's case, and on which that party will bear the burden

19   of proof at trial." *Id*. at 322.

20   To survive summary judgment, the non-moving party may not rest upon the mere

21   allegations or denials of her pleading but must produce admissible evidence that demonstrates a

22   genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).

23   A "material fact" is a fact "that might affect the outcome of the suit under the governing law."

24   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a

25   sufficient evidentiary basis would allow a reasonable jury to find for the nonmoving party. *Kenner*

26   *v. Miller*, 2015 WL 5562704, at * 3 (D. Nev. Sept. 21, 2015) (citing *Anderson v. Liberty Lobby*,

27   477 U.S. 242, 248–49 (1986)). Conclusory statements, speculative opinions, pleading allegations,

28   . . . .

or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Id.* (citing *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996)).

## V.    LEGAL ARGUMENT

### A.    Defendants Are Entitled To Summary Judgment On Plaintiff's Age Discrimination Claim

Plaintiff cannot establish a prima facie case of age discrimination because she was not performing her job in a satisfactory manner, and she was not replaced by someone substantially younger with equal or inferior qualifications. Even if Plaintiff could establish a prima facie case, the undisputed facts of this case demonstrate that Defendants' decision to terminate Plaintiff was based on legitimate nondiscriminatory reasons that were not a pretext for age discrimination.

#### 1.    Plaintiff Cannot Establish A Prima Facie Case Of Age Discrimination

To establish a prima face case of age discrimination, Plaintiff must demonstrate that she was (1) at least 40 years old; (2) performing her job satisfactorily; (3) discharged; and (4) replaced by someone substantially younger with equal or inferior qualifications. *See Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008). While Plaintiff is over 40 years of age and her employment was terminated, she cannot establish the remaining prima facie elements of her claim.

Plaintiff's conclusory allegation that she was performing her job in a satisfactory manner is unsupported by evidence and therefore is insufficient to create a genuine issue of fact. *See Kenner v. Miller*, 3:13-cv-00706-MMD-VPC, 2015 WL 5562704, at *3 (D. Nev. Sept. 21, 2015) (citing *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996)); *see also Mahomes v. Potter,* 590 F.Supp.2d 775, 782 (D.S.C. 2008) ("[i]t is the employer's perception of job performance, and not the employee's perception, that is controlling."). The uncontroverted evidence of this case establishes that Plaintiff was not performing her job satisfactorily at the time she was terminated. Defendants offer the sworn testimony of three members of the Treasurer's Office Executive Team who made the decision to terminate Plaintiff. Those individuals based their decision on Plaintiff's performance, including Plaintiff's resistance to changes and challenges in the Treasurer's Office, her general unwillingness to focus on Treasurer Conine's priorities, and

her unprofessional and disruptive conduct towards co-workers. *See* Exhibit 3, Conine Depo., pp. 50, ll. 9-25, 51, 52, ll. 1-13, 98, ll. 3-9; Exhibit 4, Dickson Depo., pp. 71, ll. 3-19, 73, ll. 19-25, 74, ll. 1-15; Exhibit 5, Hagan Depo., pp. 34, ll. 18-25, 35, ll. 1-9, 49, ll. 20-25. Because Plaintiff cannot prove that she was performing her job in a satisfactory manner, her claim fails as a matter of law.

Plaintiff also cannot prove that she was replaced by someone who was substantially younger with equal or inferior qualifications. Plaintiff was replaced by Dr. Mathis-Coleman, and there is no evidence in the record that Dr. Mathis-Coleman had equal or inferior qualifications compared to Plaintiff. In contrast, Defendants present undisputed evidence that Dr. Mathis-Coleman was more qualified than Plaintiff and had "exceptionally more appropriate experience." *See* Exhibit 3, Conine Depo. p. 130, ll. 4-18. Dr. Mathis-Coleman has a master's degree, is a doctor of public policy and has fifteen years of public sector experience, including nine years working with students to help them afford a post-secondary education and ten years of experience running a college scholarship program. *See supra* p. 9. By comparison, Plaintiff had no advanced degree and no college savings or education experience aside from the seven years she worked in the Treasurer's Office. *Id.* Therefore, summary judgment is appropriate on Plaintiff's age discrimination claim because she cannot establish the existence of two essential elements to her case.

### 2. Defendants Have Articulated Legitimate, Nondiscriminatory Reasons For Plaintiff's Termination

Even if Plaintiff could establish a prima facie case of age discrimination (which she cannot), summary judgment should be granted on this claim because Defendants had legitimate and nondiscriminatory reasons for Plaintiff's termination. Under the *McDonnell Douglas* framework, if a plaintiff establishes a prima facie case, the burden of production shifts to the defendants to offer evidence of legitimate nondiscriminatory reasons for the adverse employment action at issue. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (stating that courts evaluate ADEA claims based on circumstantial evidence of discrimination by using the *McDonnell Douglas* burden-shifting framework). Age discrimination claims require a heightened standard and Plaintiff must show that age was the determinative factor in her termination. *DiDiana v. Parball Corp.*, 472 F. App'x 680,

681 (9th Cir. 2012) (identifying "but-for" causation standard in ADEA age discrimination cases, explaining the "high hurdle" a plaintiff must overcome, and affirming summary judgment for defendant) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-78 (2009)). If Defendants meet this burden, the presumption created by Plaintiff's prima facie allegations "simply drops out of the picture.' *Dominguez-Curry v. Nevada Transp. Dep't*, 424 F.3d 1027, 1037 (9th Cir. 2005) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Defendants need only set forth a legally sufficient explanation. *Lowe v. City of Monrovia*, 775 F.2d 998, 1007 (9th Cir.1985); *Swan v. Bank of Am. Corp.*, 2:07-cv-00217-PMP-LRL, 2008 WL 2859066, at *6 (D. Nev. July 22, 2008).

Whether a defendant has met its burden of production involves "no credibility assessment." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993); *Bodett v. CoxCom, Inc.*, 366 F.3d 736, 742 (9th Cir. 2004). Indeed, courts are not "super-personnel board[s] to micromanage . . . employment actions." *Aguilera v. Baca*, 510 F.3d 1161, 1171 (9th Cir. 2007) (deciding Fourth Amendment issue); *U.S. E.E.O.C. v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1313–14 (D. Nev. 2009) (granting summary judgment, holding "employer's belief that the employee's performance was unsatisfactory, even if mistaken, is not grounds for inferring discrimination").

Here, Plaintiff was terminated for legitimate nondiscriminatory reasons related to Plaintiff's performance, i.e., Plaintiff's resistance to changes/challenges, her general unwillingness to focus on the new administration's priorities, and her unprofessional conduct towards co-workers. *See supra* pp. 6-7. Furthermore, there is no dispute that Plaintiff was an unclassified State employee who served at the pleasure of the elected State Treasurer. The Nevada Supreme Court has made it clear that the jobs of unclassified employees are not protected to the same degree as classified employees. *See Ham v. State of Nev.*, 788 F. Supp. 455, 461 (D. Nev. 1992). Because Plaintiff was an at-will employee, she could be terminated for "a good reason, bad reason or no reason at all." *See Fronapfel v. Hormazdi*, 533 Fed. App'x 709, 710 (9th Cir. 2013) (quoting *Engquist v. Oregon Dep't of Agriculture*, 553 U.S. 591 (2008)).

. . . .

. . . .

### 3.    There Is No Evidence Of Pretext

Because Defendants have provided legitimate and nondiscriminatory reasons for Plaintiff's termination, the burden shifts back to Plaintiff to demonstrate that Defendants' given reasons are mere pretext for discrimination. *McDonnell Douglas Corp.,* 411 U.S. at 804. Plaintiff must demonstrate pretext either (1) "directly, by showing that unlawful discrimination more likely motivated the employer" or (2) "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise is not believable." *Mayes v. WinCo Holdings, Inc.*, 846 F.3d 1274, 1280 (9th Cir. 2017). When a plaintiff's offered evidence of pretext is circumstantial, "the plaintiff must produce 'specific' and 'substantial' facts to create a triable issue of pretext." *Earl v. Nielsen Media Research, Inc.,* 658 F.3d 1108, 1112-13 (9th Cir. 2011).

Plaintiff can offer no evidence, much less "specific" and "substantial" evidence that Defendants' stated reasons for Plaintiff's termination are merely a pretext for discrimination. Plaintiff also offers no evidence giving rise to an inference that her age was the reason she was terminated. Plaintiff's subjective belief that she was performing her job well at the time she was terminated is insufficient to create an inference that her termination was age-related and defeat summary judgment. *See Clark v. Mirage Casino Hotel, Inc.*, 2:18-cv-0392-APG-BNW, 2019 WL 11271468, at *4 (D. Nev. June 13, 2019) (slip copy) (citing *Bradley v. Harcourt, Brace, and Co.*, 104 F.3d 267, 270 (9th Cir. 1996)); *see also Schuler v. Chronicle Broad. Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (concluding that despite the plaintiff's claims that she had performed her job well, that "an employee's subjective personal judgments of her competence alone do not raise a genuine issue of material fact")). Accordingly, this Court should grant summary judgment in favor of Defendants on Plaintiff's first cause of action.

. . . .

. . . .

. . . .

. . . .

. . . .

**B.     Plaintiff Cannot Prove A Hostile Work Environment Claim And Defendants Are Entitled To Summary Judgment On This Claim**

The Ninth Circuit has "never definitively recognized an age-related hostile work environment claim." *See Mirage Casino Hotel,* 2019 WL 11271468, at *5 (quoting *Stevens v. Cty. of San Mateo*, 267 Fed. App'x 684, 685 (9th Cir. 2008)). Even if such a claim is cognizable, Plaintiff's claim for hostile work environment based on her age fails as a matter of law.

**1.     The Hostile Work Environment Claim Is Insufficiently Pled**

Plaintiff's second cause of action should be dismissed because the SAC fails to state a plausible claim for hostile work environment based on age. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff has not alleged enough facts to state a claim to relief that is plausible on its face.[3]

To prevail on a hostile work environment claim, Plaintiff must show that: (1) she was subjected to verbal or physical conduct because of her age; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the terms or conditions of employment and create an abusive work environment. *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (discussing only race and gender). To determine whether conduct was sufficiently severe or pervasive, courts look at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* To be actionable, Defendants' conduct must be more than "merely offensive," and create an objectionably hostile work environment; the workplace has to be permeated with discriminatory intimidation, ridicule and insult that is sufficiently severe and pervasive to alter the conditions of employment and create an abusive working environment. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993). Merely offensive comments, teasing, and isolated incidents are not sufficient to create a hostile work environment. *Id.* at 21-22.

---

[3] "[F]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007). Mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Id.* Rather, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Despite alleging that she was "repeatedly" subjected to negative comments about her age and age-related abilities, Plaintiff identifies only approximately six comments allegedly made by Mr. Dickson on what appears to be five separate occasions:

- Mr. Dickson's comment that Plaintiff "had been with the state forever" and seven years was longer than he had worked anywhere.

- Mr. Dickson's comment, when discussing outdated customer facing websites, that "all the deputies that were Millennials at the table and on video conference would much rather look at an appealing website than talk to a public servant" and that it was "probably an age thing."

- Mr. Dickson's comment that "it probably has been 20 years since the policies and procedures were updated" for the program that reconciled payments for a scholarship program Plaintiff managed and Mr. Dickson's comment that "when it was installed there were probably dot-matrix printers."

- Mr. Dickson's comments that he "would prefer to get a recorded message and then hang up," when discussing a call center phone tree Plaintiff had worked on, and that it must be "an age thing" since Plaintiff and Ms. Yeatts liked to talk to a human, and he preferred to hang up as quickly as possible.

- Mr. Dickson's comment that the office was moving to "refresh the office and was interested [sic] in fresh faces and starting with a clean slate."

*See* ECF No. 37, ¶¶ 15-16, 18-19, 23, 73. Plaintiff also alleges she experienced a reduction of duties, including media outreach responsibilities that were given to younger employees; was continually asked to provide information, only to be told by Mr. Dickson that he had not had a chance to review what he asked for; and was "never allowed to pick up Treasurer Conine and accompany him to public facing meetings or functions." *See* ECF No. 37, ¶¶ 25-27. On their face, Mr. Dickson's alleged comments about "policies and procedures that had not been updated in 20 years," the existence of "dot matrix printers," communication preferences of "Millennials at the table" and refreshing the office with "fresh faces and starting with a clean slate," were clearly not directed at Plaintiff and had nothing to do with Plaintiff's age. Likewise, Plaintiff's allegations do not indicate that her age had anything to do with office assignments, changes in job responsibilities, or Treasurer Conine's desire to drive himself to certain public events.

Plaintiff's harassment claim, as alleged in the FAC, was dismissed by the Court because Plaintiff failed to provide facts that would explain how such comments give rise to a claim of hostile work environment. *See* ECF No. 34, at 15. The only facts Plaintiff added to her age

harassment allegations in the SAC are that she felt "embarrassed," "singled out," "belittled," or "offended" (ECF No. 37, ¶¶ 15-16, 19), but these facts do not save Plaintiff's hostile environment claim. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (A hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."). The SAC does not contain any facts showing that the alleged conduct was objectively hostile. The SAC also does not contain facts demonstrating that the conduct was frequent enough or severe to alter Plaintiff's working conditions.

### 2. Plaintiff Cannot Establish A Prima Facie Case Of Age-Related Hostile Work Environment

Even if the claim was sufficiently pled in the SAC, Plaintiff cannot establish a prima facie case of age-related hostile work environment. There is no evidence in the record that the comments or actions by Defendants were made or carried out because of Plaintiff's age. Treasurer Conine denies that any of Plaintiff's job duties were changed because of her age, and he explained that Plaintiff's media outreach and press release duties did change because all media activities were assigned to Senior Deputy Erik Jimenez, who was serving as the public information officer for the Treasurer's Office. *See* Exhibit 3, Conine Depo., p. 149, ll. 2-23. Moreover, Plaintiff concedes she has no direct evidence that her job duties were changed because of her age, and she even admits that "you expect a new administration to make changes." *See* Exhibit 2, Salehian Depo., pp. 98, ll. 17-25, 99, ll. 2-3, 100, ll. 2-15. Plaintiff also admits that Treasurer Conine never told her he did not want to be seen with him in public. *Id.* at 108, ll. 11-13. Treasurer Conine testified that he did not refuse to sit with or talk to Plaintiff at public events. *See* Exhibit 3, Conine Depo., p. 128, ll. 12-24. He explained that it was normal protocol for him to sit with and talk to elected officials or members of the community instead of staff at certain public events and that doing so had nothing to do with Plaintiff or her age. *Id.* at 145, ll. 19-25, 146-147, 148, ll. 1-5. Treasurer Conine also testified that Plaintiff's job duties did not include driving the Treasurer to events and there was no need for her to do so because he typically drove himself to events. *Id.* at 123-124.

. . . .

Mr. Dickson denies that he ever made any derogatory remarks about age. *See* Exhibit 4, Dickson Depo., p. 78, ll. 2-10. The only comments allegedly made by Mr. Dickson that were in fact directed at Plaintiff were related to Mr. Dickson's inquiry about how long Plaintiff had worked with the Nevada State Treasurer's Office. However, there is no evidence that Mr. Dickson's comments were anything more than an attempt to acknowledge Plaintiff's experience and expertise. Because Plaintiff cannot prove she was subjected to verbal conduct because of her age, her claim fails as a matter of law. Moreover, Plaintiff never told Mr. Dickson that she believed his comments or conduct reflected an age bias and she did not ask Mr. Dickson to stop making the comments. *See* Exhibit 2, Salehian Depo., p. 144, ll. 12-14; Exhibit 4, Dickson Depo., p. 81, ll. 3-7. She also failed to take advantage of the available internal policies and procedures by filing a formal complaint of harassment during her employment. *See* Exhibit 2, Salehian Depo., p. 151, ll. 12-18. This demonstrates that the purported conduct at issue was not "unwelcome."

Plaintiff's claim also fails because the isolated comments and/or conduct alleged in the SAC were not, as a matter of law, severe or pervasive enough to create an abusive working environment. It is well established that "stray remarks" unrelated to an employment decision are insufficient to establish liability for discrimination or harassment. *See Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 918–19 (9th Cir. 1996) (holding that supervisor's statements that he intended to get rid of "old-timer" was insufficient to demonstrate age discrimination because the comment was ambiguous and, more importantly was not tied directly to plaintiff's termination); *see also Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (holding that alleged comment by plaintiff's immediate supervisor that "we don't necessarily like grey hair" was merely a stray remark and was not tied directly to plaintiff's termination.); *Mirage Casino Hotel,* 2019 WL 11271468, at *6 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (finding that offensive comments, teasing, and isolated incidents are not sufficient to create a hostile work environment)). Plaintiff relies on only a handful of comments that were purportedly made by Mr. Dickson to claim she was subject to a hostile work environment. *See* Exhibit 2, Salehian Depo., pp. 70-89, 94-98, 108-116, 118, 126, 130-131. Based upon the undisputed evidence of this case, Plaintiff cannot demonstrate her workplace was permeated with discriminatory intimidation,

ridicule, and insult that was "sufficiently severe or pervasive to alter the conditions" of her employment and created an abusive working environment. *See Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (internal citation omitted).

In determining whether a work environment is considered objectively "hostile," courts analyze the facts by asking whether a reasonable person under the same or similar circumstances with the same fundamental characteristics as the plaintiff, would find the work environment to be hostile. *See Crowe v. Wiltel Communications Sys.*, 103 F.3d 897, 900 (9th Cir. 1996). When analyzing the undisputed facts of this case, a reasonable person would not find Plaintiff's work environment to be hostile. Defendants are entitled to summary judgment of Plaintiff's second cause of action.

## C.    Defendants Are Entitled To Summary Judgment On Plaintiff's FMLA Interference Claim

A claim of FMLA interference requires an employee to establish five elements: "(1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014). To prevail on an FMLA interference claim, a plaintiff must establish "by a preponderance of the evidence that [the] taking of FMLA-protected leave constituted a negative factor in the decision to terminate [the employee]." *Swan v. Bank of Am.*, 360 F. App'x 903, 906 (9th Cir. 2009) (quoting *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001)).

Plaintiff's claim for FMLA interference fails because there is no evidence that Plaintiff's termination was motivated by Plaintiff's use of or request for FMLA leave. In fact, the evidence in the record demonstrates that Plaintiff neither requested FMLA leave nor gave sufficient notice of her need for FMLA leave before she was terminated. The evidence merely indicates that Plaintiff requested and was allowed to work from home because of redness and "scabbing" on her face. *See* Exhibit 2, Salehian Depo., pp. 166-167, 168, ll. 1-11. Even though Plaintiff allegedly had FMLA paperwork filled out by Dr. Brown on October 17, 2019, she said nothing about her need

for intermittent leave in the October 22, 2019, email in which she thanked Treasurer Conine, Mr. Dickson and Ms. Yeats for allowing her to work from home. *See* Exhibit 7. In addition, Plaintiff concedes she never requested FMLA leave. *See* Exhibit 2, Salehian Depo., pp 171, ll. 21-25, 172, l. 1.

Plaintiff cannot invoke FMLA protection on the basis of an unexecuted plan to request FMLA leave. Without sufficient notice that an employee needs or intends to take medical leave, the employer's obligations under the FMLA are never triggered in the first place. *See Walls v. Central Contra Costa Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011); *see also Bailey v. Southwest Gas Co.,* 275 F.3d 1181, 1186 (9th Cir. 2002) (granting summary judgment in employer's favor where employee denied in her deposition that she sought FMLA leave, expressly or otherwise). Accordingly, Defendants are entitled to summary judgment on Plaintiff's third cause of action.

### D.    Defendants Are Entitled To Summary Judgment On Plaintiff's Failure To Accommodate Claim

Plaintiff's failure to accommodate claim fails as a matter of law because Plaintiff cannot establish a prima facie case. The ADA prohibits employment discrimination against qualified individuals with a disability. 42 U.S.C. §§ 12112(a), 12132. To establish a prima facie case of discrimination and failure to accommodate under the ADA, a plaintiff must demonstrate that she: (1) is disabled within the meaning of the ADA; (2) is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) suffered an adverse employment action because of her disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012) (failure to accommodate); *Nunes v. Wal–Mart Stores, Inc.*, 164 F.3d 1243, 1246 (9th Cir. 1999) (discrimination). If the plaintiff presents a prima facie case, "the burden shifts to the defendant to produce some evidence demonstrating a legitimate, nondiscriminatory reason for" the adverse employment action. *Bodett v. CoxCom, Inc.*, 366 F.3d

. . . .

. . . .

. . . .

736, 743 (9th Cir. 2004). If the defendant meets that burden, "the plaintiff must then show that the defendant's alleged reason for [the employment action] was merely a pretext for discrimination." *Id.*

Plaintiff was not disabled within the meaning of the ADA, she did not request an accommodation, and she cannot prove she was terminated *because of* her disability. As such, Defendants are entitled to judgment as a matter of law as to Plaintiff's claim of disability discrimination.

### 1. Plaintiff Was Not "Disabled" Within the Meaning Of The ADA

A plaintiff has the burden of proving that he or she is disabled. *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 988 (9th Cir. 2007). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The impairment at issue in this case is Plaintiff's alleged "skin cancers." Plaintiff cannot prove that the impairment at issue substantially limited her major life activities. In her written discovery responses, Plaintiff asserts that she "experienced *difficulty* in performing manual tasks, seeing, eating, sleeping, standing, speaking, learning, reading, concentrating, thinking, writing, communicating, interacting with others." *See* Exhibit 9 at 17-18 (emphasis added). However, Plaintiff has not produced evidence that her alleged disability *substantially limited* her with respect to these life activities. *See* 42 U.S.C. § 12102(1). (citing 29 C.F.R. § 1630.2(j)(1)).

A "substantial limitation" is not just any limitation, but one that "limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii) (2012). Thus, not every impairment will constitute a disability under the ADA. *Id.* A plaintiff must show evidence beyond "bald assertions or a mere scintilla of evidence in his favor" to demonstrate that an impairment substantially limits one or more major life activity. *F.T.C. v. Stefanchik*, 559 F.3d 924, 929 (9th Cir. 2009). Plaintiff has failed to present evidence that her alleged impairment limited her ability to perform major life activities *compared to most people. See* 29 C.F.R. § 1630.2(j)(1)(ii) (2012). When prompted to explain the "difficulties" Plaintiff says she experienced with regard to the list of major life activities she

provided during discovery, Plaintiff was unable to provide details and stated only that "I was in a lot of pain. I was trying to power through it." *See* Exhibit 2, Salehian Depo., pp. 182, ll. 14-25, 183, ll. 1-5. Similarly, in her written discovery responses, Plaintiff explained that her treatment made it "difficult and painful to perform all of the activities listed above." *See* Exhibit 9 at 18. Plaintiff's complaints of pain are insufficient to establish that her skin cancer substantially impaired her ability to perform major life activities. *See Glass v. Asic North, Inc.,* 848 Fed. App'x 255, 257 (9th Cir. 2021) (citing *Becerril v. Pima Cnty. Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009) (indicating that pain, standing alone, is insufficient proof of a substantial limitation on a major life activity)). Because there is no evidence that Plaintiff's skin cancer substantially limited one or more of Plaintiff's major life activities, Plaintiff has not and cannot demonstrate that her skin cancers qualify as a "disability" that would support an actionable claim for discrimination under the ADA.

### 2. Plaintiff Did Not Suffer An Adverse Employment Action *Because Of* Her Purported Disability

It is not disputed that Plaintiff experienced an adverse employment action – her termination. A discriminatory discharge claim requires a showing that the employer terminated the employee *because of* the employee's disability. *Humphrey v. Mem'l Hosp. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001). In other words, the employee "must show that the adverse employment action would not have occurred but for the disability." *Murray v. Mayo Clinic*, 934 F.3d 1101, 1104-07 (9th Cir. 2019) (overruling *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053 (9th Cir. 2005)'s holding that ADA discrimination claims are evaluated under a motivating factor causation standard in favor of a finding that a but-for causation standard applies). Even if Plaintiff can demonstrate that her skin cancers constituted a disability under the ADA, Plaintiff has not provided evidence to create a causal connection between her disability and her termination.

There is no causal connection between the alleged disability and Plaintiff's termination. The evidence establishes that Plaintiff was terminated for reasons related to Plaintiff's performance and not because of an alleged disability. *See supra* pp. 6-7. The evidence also shows that the decision to terminate Plaintiff was made before members of the Executive Team knew

about Plaintiff's alleged disability. *See supra* p. 6. Beyond the mere timing of events, e.g., the fact that Plaintiff's termination followed a meeting at which she notified Treasurer Conine and Mr. Dickson about her skin cancer and treatment, no other facts support the theory that Plaintiff was terminated because of her alleged disability. Plaintiff has not and cannot proffer any evidence to show that her alleged disability was a factor in the decision to terminate her.

### 3. Defendants Have Articulated Legitimate, Nondiscriminatory Reasons For Plaintiff's Termination And There Is No Evidence Of Pretext

As described above (*supra* pp. 13-14), Defendants have met their burden of showing Plaintiff was terminated for legitimate nondiscriminatory reasons related to Plaintiff's performance. Other than the fact that Plaintiff was terminated shortly after she notified Treasurer Conine and Mr. Dickson of her alleged disability, Plaintiff can offer no evidence to show that Defendants' proffered explanation for Plaintiff's termination is unworthy of credence and a pretext for discrimination based on Plaintiff's disability. Additionally, the close temporal proximity between Plaintiff's disclosure of her alleged disability and her termination, alone, is not specific or substantial evidence of pretext. *See Herron v. Peri & Son's Farms, Inc.*, 3:13-cv-00075-HDM, 2014 WL 1917934, at *6 (D. Nev. May 13, 2014), aff'd sub nom. *Herron v. Peri & Sons Farms, Inc.*, 676 Fed. App'x 639 (9th Cir. 2017) (granting summary judgment on plaintiff's claim of disability discrimination); *see also Rey v. C & H sugar Co., Inc.,* 609 Fed. App'x 923, 924 (9th Cir. 2015) (citation omitted) ("temporal proximity alone is not sufficient to raise a triable issue as to pretext once the employer has offered evidence of a legitimate, nondiscriminatory reason for the termination."). Defendants are therefore entitled to summary judgment on Plaintiff's claims of disability discrimination.

### 4. Plaintiff Never Requested Intermittent Leave For Her Alleged Disability

Plaintiff alleges that she "could have been accommodated by being provided intermittent leaves of absence for treatment, among other things." ECF No. 37, ¶ 37. As in the FAC, Plaintiff does not allege sufficient facts in the SAC to state a claim for failure to accommodate because Plaintiff fails to allege that she requested any accommodation, that Defendants received a request

for accommodation, or that Defendants denied her an accommodation. *See, e.g.,* ECF No. 34, at 19. Furthermore, there is no evidence that Plaintiff asked for intermittent time off, that Defendants otherwise knew Plaintiff needed intermittent time off, or that Defendants denied any accommodation Plaintiff requested. During Plaintiff's deposition, when asked whether she had asked for any accommodation for her skin cancers to help her perform her work, Plaintiff responded, "I don't believe so." *See* Exhibit 2, Salehian Depo. p. 189, ll. 15-18.

"In general . . . it is the responsibility of the individual to inform the employer that an accommodation is needed." *See Farran v. First Transit, Inc*., 2:11-cv-961-JAD-CHW, 2014 WL 496927, at *5 (D. Nev. Feb. 6, 2014) (quoting 29 C.F.R. § 1630.9, App.); *see also Summers v. Teichert & Son, Inc*., 127 F.3d 1150, 1153 (9th Cir. 1997) (finding that employee failed to request reasonable accommodation after injury, even though employer knew of the injury)). Furthermore, discrimination results from *denying* an available and reasonable accommodation. *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018). Because the evidence shows that Plaintiff did not request intermittent leave as an accommodation, Defendants had no knowledge of the need for any such accommodation, and Defendants therefore could not have denied such a request, Defendants are entitled to summary judgment on Plaintiff's third cause of action.

### E. Plaintiff's Title VII Claim Fails As A Matter of Law

Plaintiff's gender discrimination claim fails because it is insufficiently pled in the SAC and Plaintiff cannot prove a prima facie case.

#### 1. The Gender Discrimination Claim Is Insufficiently Pled In The SAC

To succeed on her disparate treatment discrimination claim, Plaintiff must show that: (1) she belongs to a protected class; (2) she was performing according to the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) similarly situated individuals outside of her protected class were "treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Executive Jet Mgmt.*, Inc., 615 F.3d 1151, 1156 (9th Cir. 2010).

As in the FAC, Plaintiff does not allege a plausible claim to relief under Title VII. Plaintiff has failed to allege sufficient facts in the SAC to establish that the six named male employees were

"similarly situated individuals." An employee is "similarly situated" if he is similarly situated in "all material respects." *Weil v. Citizens Telecom Services Co., LLC*, 922 F.3d 993, 1004 (9th Cir. 2019) (quotation omitted). Such employees must have "similar jobs and display similar conduct." *Id.* (quoting *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)). For example, if one position requires more administrative work than another, the two positions are not similarly situated. *Gipaya v. Barrett*, 803 Fed. App'x 111, 113 (9th Cir. 2020) (holding that employee could not show chosen comparator was similarly situated because they did not have similar jobs or perform similar duties, as plaintiff's role was more administrative). Plaintiff merely alleges that six male deputies, like her, were unclassified employees sworn into office by the Nevada State Treasurer, required to take the same oath of office and training courses as Plaintiff, and entitled to the same annual leave and pension benefits as Plaintiff. ECF No. 37, ¶ 111. However, these alleged facts have nothing to do with the job duties of the named comparators and Plaintiff has therefore not identified any males who were similarly situated to her "in all material aspects."

Additionally, Plaintiff alleges only that she was "treated differently" than similarly situated male employees, not that she was treated "less favorably." *See* ECF No. 37, ¶¶ 29, 110. Disparate treatment arises when an employer "treats some people *less favorably* than others because of their . . . sex." *Frank v. United Airlines, Inc.,* 216 F.3d 845, 853 (9th Cir. 2000). Because the SAC lacks facts to show that Plaintiff was treated less favorably than similarly situated male coworkers, Plaintiff's discrimination claim is insufficiently pled and should therefore be dismissed. *Iqbal*, 556 U.S. at 678.

### 2.    Plaintiff Cannot Prove Her Gender Discrimination Claim

Even if Plaintiff has stated a plausible Title VII claim, the evidence does not support a prima facie case of discrimination. Plaintiff cannot prove the second element necessary to prevail on her claim because she was not performing according to legitimate expectations. As discussed above, Plaintiff was having performance problems. Plaintiff also cannot prove she suffered an adverse employment action. For purposes of a Title VII disparate treatment claim, an "adverse employment action is one that materially affect[s] the compensation, terms, conditions, or privileges ... of employment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). As

a matter of law, being asked to pack things and leave the workplace within two hours of being terminated, being locked out of one's workplace computer within 15 minutes of being terminated, being subjected to a higher level of scrutiny with respect to employee travel and waiting weeks or months for feedback (*see* ECF No. 37, ¶¶ 30, 34, 41, 42) are not actions that materially affect the terms, conditions, or privileges of employment. Moreover, the evidence does not support Plaintiff's allegations that Defendants "did not allow" her to retire or purchase additional years of service in PERS. *See* ECF No. 37, ¶¶ 33, 35.

Plaintiff also cannot prove there were any male employees who were similarly situated to her in all material respects. Plaintiff was the only Executive Director of the Governor Guinn Millennium Scholarship Program employed by the Treasurer's Office at the time of her termination. *See* Exhibit 13 at ¶ 4. As the Executive Director of the Governor Guinn Millennium Scholarship Program, Plaintiff was supervised by the Senior Deputy State Treasurer – South. *See* Exhibit 1 at DEF 543. By comparison, Mr. Hewitt worked in the position of Chief of Staff and was supervised by the Treasurer. *See* Exhibit 10 at ¶ 5. Mr. Stoddard worked in the position of Senior Deputy Treasurer for Northern Nevada and was supervised by the Chief Deputy Treasurer. *Id.* at ¶ 6. Mr. Ciavola worked in the position of Deputy for the Unclaimed Property Division and was supervised by the Chief of Staff. *Id.* at ¶ 7. Mr. Kramer worked in the position of Senior Deputy Treasurer for Northern Nevada and was supervised by the Chief Deputy Treasurer. *Id.* at ¶ 7. Even if these male employees were similarly situated (which they were not), Plaintiff cannot prove she was treated less favorably than they were. There is no evidence in the record to establish that Plaintiff's male coworkers were treated more favorably or that there were other circumstances surrounding her termination that give rise to an inference of discrimination. For these reasons, the Court should grant Defendants' Motion on this claim.

### 3. Defendants Had Legitimate, Nondiscriminatory Reasons For Treating The Male Comparators Differently And There Is No Evidence Of Pretext

Even assuming that Plaintiff can establish a prima facie case of sex/gender discrimination (which she cannot), the Court should grant summary judgment because Defendants had legitimate nondiscriminatory reasons for the alleged different treatment. *See Bodett v. CoxCom, Inc.*, 366

F.3d 736, 743 (9th Cir. 2004). Once the defendant meets that burden, "any presumption that the defendant discriminated 'drops from the case,' and the plaintiff must then show that the defendant's alleged reason for 'the treatment' was merely a pretext for discrimination." *Id.* An employee can prove pretext either: (1) "directly, by showing that unlawful discrimination more likely motivated the employer"; or (2) "indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 849 (9th Cir. 2004) (internal quotation marks omitted).

The circumstances surrounding Plaintiff's termination had nothing to do with her sex or gender. Ms. Hagan and Treasurer Conine explained in their depositions that to the extent Plaintiff was treated differently than the male employees who had left the Treasurer's Office, it was because the circumstances of Plaintiff's termination were different, not because of her sex/gender. *See* Exhibit 3, Conine Depo., p. 79, ll. 7-17; Exhibit 5, Hagan Depo., pp. 94, 95, ll. 1-14, 96, ll. 18-25, 97, ll. 1-4. Plaintiff has not provided any evidence that these stated reasons are pretextual. Rather, Plaintiff's claim of disparate treatment is supported only by her subjective belief that Defendants' actions were gender motivated, which is insufficient to defeat summary judgment. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (The nonmoving party cannot defeat a motion for summary judgment "by relying solely on conclusory allegations unsupported by factual data."). Accordingly, the Court should grant Defendants' Motion on this claim.

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

. . . .

## VI.    CONCLUSION

Based on the foregoing, Defendants respectfully request that summary judgment be granted on each of Plaintiff's five claims because the undisputed facts show that Defendants are entitled to judgment as a matter of law.

DATED this 28th day of September, 2022.

AARON D. FORD
Attorney General

By:    */s/ Judy A. Prutzman*
JUDY A. PRUTZMAN
Deputy Attorney General
BRANDON R. PRICE
Senior Deputy Attorney General

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that she is an employee of the State of Nevada, Office of the Attorney General and that on the 28th day of September 2022, she electronically filed the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the United States District Court by using the CM/ECF Electronic Filing System, which will e-serve the following electronically:

Michael P. Balaban
LAW OFFICES OF MICHAEL P. BALABAN
10725 Del Rudini Street
Las Vegas, Nevada 89141
*Attorneys for Plaintiff*

_/s/ Kaaren Andersen_
An Employee of the State of Nevada
Office of the Attorney General