UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

Sheila Salehian,

Plaintiff

v.

State of Nevada, et al.,

Defendants

Case No. 2:21-cv-01512-CDS-NJK

**Order Granting Defendants' Motion for Summary Judgment and Closing Case**

[ECF No. 39]

This is a civil rights action brought by plaintiff Sheila Salehian, alleging that she was wrongfully terminated from her position with the Nevada State Treasurer's office in violation of (1) the Age Discrimination in Employment Act of 1967 (ADEA), (2) the Family and Medical Leave Act of 1993 (FMLA), (3) the Americans with Disabilities Act of 1990 (ADA), and (4) Title VII of the Civil Rights Act of 1964 (Title VII). Defendants State of Nevada, Nevada State Treasurer's Office and Zach Conine (collectively, "defendants") move for summary judgment, arguing that Salehian's termination was due solely to performance issues and that she fails to proffer sufficient evidence to the contrary. I agree. For the following reasons, I find that Salehian fails to create a genuine dispute of fact for any of her five claims, and thus, that summary judgment for defendants is appropriate. I kindly direct the Clerk of Court to close this case.

I. **Background**

   *A. Salehian's employment with the Nevada State Treasurer.*

   Salehian was initially hired by the Nevada State Treasurer as a Senior Deputy Treasurer in January 2012, at age 49. Salehian Dep., ECF No. 39-3 at 16–18. In May of 2015, she was moved into the position of Executive Director of the Governor Guinn Millennium Scholarship Program, the position she held at the time of her termination. *Id.* Defendant Treasurer Conine took office

in January 2019, at which time Salehian was 57 years old.[1] *Id.*; ECF No. 37 at 3. It is undisputed that all positions Salehian held at the Nevada State Treasurer's office constituted unclassified, at-will employment. ECF No. 39-3 at 23, 26.

     *B. Salehian's cancer treatment.*

     Salehian has been treated for various skin cancers since 2005. ECF No. 42-1 at Ex. 3 (Medical Report from Thomas Dermatology). In October 2019, she began using a topical chemotherapy drug treatment. *Id.* Due to the drug's side effects affecting her appearance and public speaking abilities, Salehian requested, and was approved, to work from home starting on October 11, 2019. *Id.* at Ex. 5. On October 17, 2019, Salehian's doctor filled out FMLA paperwork indicating that intermittent leave or accommodations may be necessary for her to "heal" from her continuing treatment. *Id.* at Ex. 4. Salehian did not give this paperwork to defendants until her termination meeting on October 28, 2019. *Id.* at ¶61.

     *C. Salehian's termination.*

     Salehian returned to work in the office on October 28, 2019, at which point she was notified of her termination, and given the opportunity to voluntarily resign and receive six weeks of paid administrative leave.[2] *See* Salehian Dep., ECF No. 39-2 at 196–199; ECF No. 42-1 at Ex. 7. Salehian rejected the voluntary resignation offer on November 12, 2019. Salehian Dep., ECF No. 39-2 at 201. Her position was filled by Tya Mathias-Coleman, who was 38 years old at the time she replaced Salehian. ECF No. 42 at 9 (citing Salehian Aff. 42-1 at ¶64).

     *D. Salehian files a complaint with the EEOC and then brings this action.*

     On June 22, 2021, Salehian filed a complaint with the Equal Employment Opportunity Commission against defendants. ECF No. 37, Ex. A. She was subsequently issued a Right to Sue and filed her original complaint on May 17, 2021. Compl., ECF No. 1.

---

[1] As discussed more fully *infra*, during her time under Treasurer Connie, Salehian alleges that she experienced an age-motivated reduction in duties and privileges in favor of younger employees and was subjected to multiple age-related hostile comments from Chief of Staff, Dickson.

[2] As discussed more fully *infra*, Salehian alleges that her terminated male counterparts were given more favorable termination conditions than her.

## II.    Legal standard

Rule 56(c) provides that summary judgment must be granted when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must not make credibility determinations or weigh conflicting evidence. *Id.* at 255. Rather, the court must view the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor. *Id.* (internal citation omitted). The movant bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp.*, 477 U.S. at 323. Once the moving party has met its burden of production, the nonmoving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. *Id.* If the nonmoving party fails to produce enough evidence to show a genuine issue of material fact, then the moving party wins. *Id.* Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

## III.    Analysis

*A.  Summary judgment on Salehian's ADEA age discrimination claim is appropriate because she cannot produce specific, substantial evidence sufficient to create a triable issue of pretext.*

Defendants move for summary judgment on Salehian's ADEA age discrimination claim, arguing that Salehian cannot demonstrate a prima facie case of age discrimination, and even if she can, that she cannot proffer evidence sufficient to give rise to an inference that age, rather than her performance, was the reason for her termination. ECF No. 39 at 12–15.

The Age Discrimination in Employment Act makes it unlawful "to discharge any individual...because of such individual's age." 29 U.S.C. § 623(a)(1). The prohibition is "limited to

individuals who are at least 40 years of age." *Id.* at § 631(a). To establish a prima facie case of age discrimination, Salehian must demonstrate that she was "(1) at least forty years old, (2) performing [her] job satisfactorily, (3) discharged, and (4) either replaced by substantially younger employee with equal or inferior qualifications or discharged under circumstances otherwise giving rise to an inference of age discrimination." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (internal quotations and citations omitted). An inference of discrimination "can be established by showing the employer had a continuing need for [the employees'] skills and services in that their various duties were still being performed…or by showing that others not in their protected class were treated more favorably." *Id.* (citing *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)).

i.   Prima Facie Case

Salehian satisfies elements one and three of the four prima facie requirements without dispute: she was 59 years of age at the time of her termination; and she was terminated from her employment with the Nevada State Treasurer's Office on October 28, 2019. Second Amended Compl., ECF No. 37 at 3; Salehian Aff., ECF No. 42-1 at ¶¶2–3.

1.   Element two: performing her job in a satisfactory manner.

Regarding element two, defendants argue that Salehian's conclusory allegations that she was performing her job in a "satisfactory manner" is unsupported by evidence and contradicted by testimony from members of the Treasurer's executive team who testified that Salehian was resistant to changes and challenges in the Treasurer's Office; generally unwilling to focus on the Treasurer Conine's priorities; and displayed unprofessional and disruptive conduct to her coworkers. ECF No. 39 at 12–13. However, despite defendants' contention, Salehian provides more than conclusory, subjective allegations to meet this element. She proffers multiple letters of recommendation from her time at the Nevada State Treasurer's office, lauding her apparent above-satisfactory performance; recognition she received in 2020 for her role in coordinating a nationwide training conference for all State Treasurers' offices; and complimentary affidavits

from a former coworker and two former supervisors at the Nevada State Treasurer's office. *See* Salehian Aff., ECF No. 42-1, Exs. 1, 8; English Aff., ECF No. 42-3; McDowell Aff., ECF No. 42-4; Yeatts Aff., ECF No. 42-5.

Defendants counter that, regardless of how Salehian performed under previous Treasurers, her performance *under Treasurer Conine* was unsatisfactory. While varying degrees of relevant, the letters and affidavits that Salehian proffers, including statements from her direct supervisor during her tenure with Treasurer Conine, are probative of a reasonable inference that Salehian's job performance during the relevant time period was satisfactory—particularly given the lack contemporaneous documentation suggesting otherwise. Given the minimal burden at this stage, I find that Salehian, at a minimum, has proffered sufficient evidence to create a triable issue of fact for this element and that a reasonable jury could find that Salehian was performing her job satisfactorily at the time she was fired. *See Keliipuleole v. Molokai Ohana Health Care Inc.*, 2022 U.S. Dist. LEXIS 78844, *19 (D. Haw. May 2, 2022).

> 2.  Element four: replaced by substantially younger employee with equal or inferior qualifications.

To make a prima facie case of age discrimination, Salehian must also prove that she was replaced by a substantially younger employee who had equal or inferior qualifications. Defendants argue that Salehian provides no evidence that Dr. Mathis-Coleman had equal or inferior qualifications compared to her and that, in contrast, they present undisputed evidence that Dr. Mathis-Coleman was *more* qualified than Salehian. ECF No. 39 at 13. Defendants point out that Dr. Mathis-Coleman has a master's degree and is a doctor of public policy, while Salehian has no advanced degree. *Id.* They also note that Dr. Mathis-Coleman has fifteen years of public sector experience, including nine years working with students to help them afford a post-secondary education and ten years of experience running a college scholarship program, while Salehian has no college savings or education experience aside from the seven years she worked in the Treasurer's Office. *Id.* Salehian counters that Dr. Mathis-Coleman's prior experience was

limited to helping *individuals* with financial aid packages, as opposed to dealing with the type of macro finance that the Treasurer Office role entails, like handling multi-million dollar 529 savings programs and related venders—which is the exact type of work in which Salehian had been gaining experience for seven years prior. ECF No. 42 at 13–14. Salehian also argues that her 23 years at Citigroup working in macro financial services constitutes relevant experience for the Treasurer Office role (again, in contrast to Dr. Mathis-Coleman's background in micro finance only). *Id.*

I will not make a value judgment in this case on which individual was better qualified for the job. There are many reasons why an employer might reasonably value one of the two respective combinations of education and background more than the other for the role in question. Instead, I find that, at a minimum, Salehian has satisfied her minimal burden at this stage and has created a triable issue of fact on whether Dr. Mathis-Coleman was less qualified.

I thus find that Salehian has successfully established a prima facie case of age discrimination.

ii.   Pretext

Under the *McDonnell Douglas* framework, if a plaintiff establishes a prima facie case, the burden of production shifts to the defendants to offer evidence of legitimate nondiscriminatory reasons for the adverse employment action at issue. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *see Shelley v. Geren*, 666 F.3d 599, 608 (9th Cir. 2012) (stating that courts evaluate ADEA claims based on circumstantial evidence of discrimination by using the *McDonnell Douglas* burden-shifting framework). To prevail on a claim for age discrimination under the ADEA, unlike Title VII, a plaintiff must prove at trial that age was the "but-for" cause of the employer's adverse action, not simply a motivating factor. *Shelley v. Geren*, 666 F.3d 599, 607 (9th Cir. 2012) (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009)).

Defendants have proffered testimony from the executive team that Salehian was fired for legitimate, nondiscriminatory reasons relating to Salehian's performance which includes: (1) her

resistance to changes/challenges, (2) her general unwillingness to focus on the new administration's priorities, and (3) her unprofessional conduct towards co-workers. ECF No. 39 at 6–7, 14. The burden thus shifts back to Salehian to demonstrate that the facially legitimate reasons proffered by defendants are pretextual. *Reeves*, 530 U.S. at 143.

A plaintiff can establish pretext to defeat summary judgment in either of two ways: (1) by offering "very little" direct evidence of the employer's discriminatory animus; or (2) by offering "specific" and "substantial" indirect evidence tending to show that the employer's proffered reason for the dismissal is not credible. *Richards v. City of Seattle*, 32 Fed. Appx. 452, 454 (9th Cir. 2002) (citing *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221–22 (9th Cir. 1998)).

Salehian provides no direct evidence of discriminatory animus here; thus, she must offer specific and substantial indirect evidence drawing an inference of pretext. *See id.* To survive summary judgment, Salehian must raise an issue of fact regarding each of the nondiscriminatory reasons proffered for her termination. *Richards*, 32 Fed. Appx. at 455. Evidence of pretext is considered cumulatively. *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1129 (9th Cir. 2000).

> 1. Salehian's proffered evidence of pretext is insufficient to survive summary judgment.

Salehian offers several pieces of evidence and arguments that she contends establish an inference of pretext. Her core argument is that the evidence, or lack thereof, suggests that defendants' stated reasons for firing her were made after the fact. *First*, Salehian notes that she was not warned nor even made aware of any potential performance issues, formally or otherwise, prior to her termination. ECF No. 42 at 15. *Second*, she notes that there is no paper trail documenting the said performance issues, which she argues is "absolutely unfathomable" in this information age, particularly with an employer as large and established as the State of Nevada. *Id.* at 16. *Third*, she notes that her direct supervisor, Yeatts, was never informed of any issue with Salehian's performance nor did she receive any negative feedback about Salehian from

Treasurer Conine, Chief of Staff Dickson or anyone else, for the entire ten months that Salehian worked for Treasurer Conine. *Id.* (citing Yeatts Aff., 42-5 at 2, ¶7). *Fourth,* at the time of her termination, Salehian notes that she was not told that she was being let go for performance issues, but rather because the Treasurer's office was "going in a different direction." *Id.* at 18.

Salehian also attempts to directly rebut the legitimacy of the individual nondiscriminatory reasons proffered. She cites her affidavit stating that she "was more than willing take direction and focus on administration priorities from Treasurer Conine" and that she "gave no resistance to the changes Treasurer Conine put in place once he took office[,]" *Id.* at 17. Salehian also cites Yeatt's affidavit, which supports these assertions based on Yeatt's personal experience as her supervisor. *Id.* at 17 (citing Yeatts Aff, ECF No. 42-5 at 2, ¶¶5–6). Salehian also contradicts the contention that she exhibited unprofessional conduct by offering her own assertion to the contrary, as well as affidavits from three other individuals with whom she worked at the Nevada Treasurer's Office—Yeatts (her last direct supervisor), McDowell (a former supervisor), and English (a former coworker)—contending that, in their experience and opinion, Salehian never exhibited unprofessional conduct towards co-workers, subordinates, or supervisors. *Id.* at 17 (citing Yeats Aff., ECF No. 42-5 at 2, ¶¶17–18; English Aff., ECF No. 42-3 at 3, ¶11); *see also* McDowell Aff., ECF No. 42-4 at 3, ¶10.

Salehian further argues that the pattern of recent hiring and firing decisions of the Treasurer's Office supports a finding of a pretext. She notes that Yeatts, who was 62 years of age at the time, was terminated on the same day as Salehian and replaced by Kirsten Van Ry, someone more than half her age. *Id.* at 18 (citing Yeatts Aff., ECF No. 42-5 at 9, ¶56; Salehian Aff., ECF No. 42-1 at 11, ¶64; Van Ry Depo. 18:25–19:3). She also alleges that nine of the eleven positions hired or promoted in the College Savings Division since Treasurer Conine took office in January 2019 (including the two mentioned above) were individuals under the age of 40 years old. *Id.* (citing Yeatts Aff., ECF No. 42-5 at 9, ¶57; Salehian Aff., ECF No. 42-1 at 11, ¶65).

Salehian also points to several allegations of hers which she contends evince Treasurer Conine's preference toward younger employees, including: (1) her allegation that Chief of Staff Dickson told Salehian that she would be getting a smaller office than younger staff/deputies, contrary a supposed prior planned office move a few years earlier in which offices were going to be assigned based on staff level and seniority according to State of Nevada rules (ECF No. 42 at 6 (citing Salehian Aff., ECF No. 42-1 at ¶32)); (2) her allegation that younger employees were supposedly permitted to pick up and accompany Treasurer Conine to public facing meetings or functions, but not Salehian (*id.* at 7 (citing Salehian Aff., ECF No. 42-1 at ¶35)); and (3) her allegation that she generally experienced a reduction of duties, including media outreach responsibilities that were given to younger newly appointed deputies under Treasurer Conine (*id.* at 6 (citing Salehian Aff., ECF No. 42-1 at ¶33)).

Finally, Salehian cites comments made by Chief of Staff Dickson during this time as evidence of age-related discriminatory animus from Treasurer Conine's executive team: for example, Dickson's comment during the office's move in September 2019 that the Nevada State Treasurer's office was moving to a new location to "refresh the office and was interested in fresh faces and starting with a clean slate[,]" which she states she understood as meaning they wanted younger employees when the office moved. *Id.* at 6 (citing Salehian Aff., ECF No. 42-1 at ¶31).

                a.    **Salehian fails to specifically rebut defendants' proffered legitimate reasons for her termination.**

I address first whether Salehian directly creates an issue of fact on the facially legitimate reasons that defendants proffered for her termination. I find that she has not. While Salehian arguably may have produced enough evidence to create a triable issue of fact as to defendants' last proffered reason—whether she displayed unprofessional conduct—her evidence is insufficient to rebut the first two. As a threshold matter, Salehian's subjective, personal beliefs of her competence alone are insufficient to defeat summary judgment. *Richards*, 32 Fed. Appx. At 455 ("A plaintiff's subjective personal beliefs of [their] competence alone does not defeat

summary judgment.") (citing *Schuler v. Chronicle Broad. Co.*, Inc., 793 F.2d 1010, 1011 (9th Cir. 1986)). Further, her former supervisors' and former coworker's supporting affidavits are either not germane for the relevant time period or not probative of the experiences and thought processes of the relevant decision makers—here, Treasurer Conine and his executive team. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (With respect to plaintiff's performance, "it is the perception of the decision maker which is relevant"). While a jury could find that these individuals *might* be sufficiently positioned to rebut the contention that Salehian exhibited unprofessional conduct, Salehian's proffer of Yeatt's affidavit as evidence that Salehian was in fact satisfactorily executing the new Treasurer's directives does not reflect the relevant individuals' perceptions—who indeed testified to the contrary. *See* Dickson Dep., ECF No. 39-5 at 71–74; Conine Dep., ECF No. 39-4 at 50–52, 98; *see Evans,* 80 F.3d at 960–61. Moreover, Yeatts was fired by these same decision makers, suggesting that her work performance was similarly unsatisfactory to Treasurer Conine and his executive team.

Simply, Salehian has not proffered sufficient competent evidence to directly rebut the credibility of the nondiscriminatory reasons that defendants proffered for her termination—in particular, her alleged unsatisfactory execution of Treasurer Conine's directives. *See Richards*, 32 Fed. Appx. at 455 (stating that a plaintiff must raise a triable issue of fact for *each* legitimate reason proffered to survive summary judgment). That does not end the analysis, however.

        b. Salehian fails to demonstrate that defendants' proffered

          legitimate reasons are pretext for age discrimination.

Salehian may also prove indirectly that defendants' proffered nondiscriminatory reasons for terminating her were pretextual through circumstantial evidence. Salehian argues that the broader pattern of behavior from Treasurer Conine and his executive team evinces underlying animus toward age and demonstrates an inference of pretext. After careful consideration of the record, I find her evidence insufficient to support this argument.

i.  Lack of documentation

Salehian makes much of the lack of paper or verbal trail documenting any dissatisfaction with her performance at any point prior to her termination.[3] While Treasurer Conine and his team had no obligation to make such documentation nor provide any remedial measures prior to Salehian's termination, the absence of such can help support an inference of pretext, particularly when paired with other supporting evidence or context. *See, e.g., Ramirez v. Kingman*, 374 F. Supp. 3d 832, 852 (D. Ariz. 2019) (finding employer's failure to document alleged productivity issues, which was one of the asserted reasons for his termination, when considered with fact that employer gave "shifting" reasons for termination, was evidence of pretext). The lack of documentation in the instant case is not particularly compelling as defendants have not shifted or changed their reasons for terminating Salehian, nor are such reasons the kind for which a lack of underlying documentation would be particularly surprising. *Cf. Riddle v. Washington*, 454 Fed. Appx. 613, 2011 WL 5024195, at *1 (9th Cir. Sept. 1, 2011) (finding sufficient as evidence the absence in plaintiff's employment file of "references to the violations the purportedly caused [defendant] to lose all faith in [plaintiff]"). While the lack of documentation here supports a finding of pretext in a general sense, given the circumstances, I find that it is neither specific nor substantial by itself to survive summary judgment.

I address the rest of the evidence in turn.

ii.  Statistical evidence

Salehian argues that the pattern of hiring or promoting under 40-year-olds in nine of the eleven positions to be hired or promoted in the College Savings Division, since Treasurer Conine took office in January 2019, is evidence of underlying age animus.

---

[3] I note that this is not entirely true. In 2017, Salehian received a detailed letter from former Treasurer Schwartz outlining performance issues to address, in particular, her difficulty adapting to new conditions. ECF No. 39-2 at 2–3. There is, however, no indication that any performance issues were documented during Treasurer Connie's tenure.

As a threshold matter, I find that the underlying support for this evidence—affidavits from Salehian and Yeatts—is inadequate. The relevant affidavit statements do not meet the requirements of Federal Rule of Civil Procedure 56(c)(4). That rule requires that an "affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). While "[p]ersonal knowledge may be inferred from a declarant's position" within a company, *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000) (citation omitted), I note that for at least five of the eleven positions referenced, neither Salehian nor Yeatts were employed at the company during this time. Neither affidavit provides any other basis on which to demonstrate that either Salehian or Yeatts has personal knowledge on which to testify that such hirings or promotions did in fact occur, and that such individuals were said ages.

Even if the affidavits were serviceable, the Ninth Circuit has cautioned that "statistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee. . . because a company's overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer when dismissing a particular individual." *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 663 n.6 (9th Cir. 2002); *see also EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1184–85 (10th Cir. 1996) ("[P]articularly in age discrimination cases where innumerable groupings of employees are possible according to ages and divisions within the corporate structure, statistics are easily manipulated and may be deceptive."). Indeed, a statistical disparity must usually be "gross" to rebut an employer's articulated nondiscriminatory reason. *Tex. Instruments, Inc.*, 100 F.3d 1173 at 1184–85.

Courts have routinely determined that sample sizes of eleven are too small to demonstrate that a defendant's proffered reason for terminating a plaintiff is pretext. *See, e.g., Shutt v. Sandoz Crop Prot. Corp.*, 944 F.2d 1431, 1433 (9th Cir. 1991) (sample size of eleven was too

small to provide a statistical pattern of age discrimination); *Pippin v. Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1198 (10th Cir. 2006) (sample size of nineteen failed to account for individual circumstances of each employee); *see also Mayor of City of Philadelphia v. Educ.l Equal. League*, 415 U.S. 605, 621 (1974) (expressing concern regarding a sample size of 13). Particularly here, where Salehian fails to proffer specifics relating to the individual circumstances of each employee comprising her statistical evidence, I find her sample size of 11 insufficient to support a finding of pretext. *See Chan v. Covenant Aviation Sec.*, 2014 U.S. Dist. LEXIS 4687, *16 (N.D. Cal. Jan. 13, 2014).

### iii.   Disparate treatment evidence

The evidence that Salehian offers to demonstrate pretext via an alleged disparity in treatment between herself and younger employees suffers from a similar lack of specifics. Salehian makes broad assertions about the favorable treatment for younger employees under Treasurer Conine, such as the assignment of larger offices to employees junior to her; a reduction in her duties, given instead to younger, newer appointed duties; and an assertion that younger employees were chosen to accompany the Treasurer over her to public events. ECF No. 42 at 6–7. However, to establish pretext on this basis, a plaintiff must present evidence showing not only that other employees not in her protected class were treated more favorably, but that they were *similarly situated* to her. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Salehian makes no attempt to even *name* these supposedly better treated younger employees, let alone demonstrate that they had similar jobs and displayed similar conduct to herself. *See Chan*, 2014 U.S. Dist. LEXIS 4687, *18–19. For this reason, her disparate treatment evidence is unavailing as a matter of law. *See id.*

iv.  Discriminatory comments

Finally, I consider the comments allegedly made by Dickson in considering whether Salehian can establish an inference of pretext. The sum of the purported comments are as follows:

- that Salehian "had been with the state forever" and seven years was longer than he had worked anywhere.

- when discussing outdated customer facing websites, that "all the deputies that were Millennials at the table and on video conference would much rather look at an appealing website than talk to a public servant" and that it was "probably an age thing."

- that "it probably has been 20 years since the policies and procedures were updated" for the program that reconciled payments for a scholarship program Salehian managed, and Mr. Dickson's comment that "when it was installed there were probably dot-matrix printers."

- that he "would prefer to get a recorded message and then hang up," when discussing a call center phone tree Salehian had worked on, and that it must be "an age thing" since Salehian and Ms. Yeatts liked to talk to a human, and he preferred to hang up as quickly as possible.

- that the office was moving to "refresh the office and was interested in fresh faces and starting with a clean slate." *See* ECF No. 37 at ¶¶15–16, 18–19, 23, 73.

While certain comments attributable to the decision makers, particularly when directed at the plaintiff, may constitute evidence showing that discrimination more likely motivated an employer's decision than the proffered legitimate reason, "[p]assing comments or ambiguous remarks are not sufficient to prove pretext to survive a motion for summary judgment." *Baylink v. Nicholson*, 2007 U.S. Dist. LEXIS 105316, *10 (C.D. Cal. May 8, 2007); *see Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 919 (9th Cir. 1996) (a supervisor's comment about getting rid of "old timers"

insufficient to support an inference of age discrimination); *see also Pottenger v. Potlatch Corp.*, 329 F3d 740, 747 (9th Cir. 2003) ("[S]ome remarks lead to no reasonable inference of discrimination and thus no triable issue of material fact exists").

Here, the majority of comments are general and make no reference to Salehian, and the one comment directed at her, that she "had been with the state forever[,]" is ambiguous at best. *See Kirkpatrick v. Pfizer*, 391 Fed. Appx. 712, 720 (10th Cir. 2010) ("[I]solated or ambiguous comments are too abstract . . . to support a finding of age discrimination") (internal quotation marks and citation omitted); *White v. Home Depot U.S.A., Inc.*, 2019 U.S. Dist. LEXIS 40810, *19 (S.D. Cal. Mar. 13, 2019) (finding that statement regarding "keeping an eye" on older employees with "bad backs" is "too ambiguous" to constitute direct evidence of discrimination). Moreover, none of the comments were made during or in connection with Salehian's termination. *See Nesbit v. Pepsico, Inc.*, 994 F.2d 703, 705 (9th Cir. 1993) (finding supervisor's comment to plaintiff that "we don't necessarily like grey hair" insufficient because uttered in "ambivalent manner and was not directly tied to [plaintiff's] termination."). Even taken all together, these comments are too abstract to support a finding that age discrimination was the "but for" cause of Salehian's termination. *See, e.g., Kirkpatrick*, 391 Fed. Appx. at 720 (finding that supervisor's comments to plaintiff that he "didn't realize [she was] as old as [she] was"; that her suggestions were "old school"; and comments inquiring about her retirement insufficient for a finding of pretext); *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1420-21 (9th Cir. 1990) ("old-boy network" comment did not support inference of discriminatory motive); *see also Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1140 (10th Cir. 2000) (holding supervisor's comments that "at [employee's] age, it would be difficult to train for another position" or "difficult to find a new job" were too abstract to support an inference of age discrimination).

Even when every piece of evidence on the record is considered together, there is insufficient evidence of pretext for a reasonable jury to conclude that age discrimination was the

"but for" cause of Salehian's termination. Thus, I grant defendants summary judgment on the ADEA age discrimination claim.

       B.   *Summary judgment on Salehian's ADEA age-related hostile work environment claim is appropriate because she fails as a matter of law to allege behavior on the part of defendants that rises to the level of a hostile environment.*

Defendants move for summary judgment on Salehian age-related hostile work environment claim on the basis that her evidence, even if taken as true, is insufficient as a matter of law. ECF No. 39 at 16–20. I agree.

"Hostile environment" harassment refers to situations where employees work in offensive or abusive environments. *Ellison v. Brady*, 924 F.2d 872, 875 (9th Cir. 1991). Whether an environment is "hostile" or "abusive" is a matter that "can be determined only by looking at all the circumstances." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "The working environment must both subjectively and objectively be perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris*, 510 U.S. at 21–22). The circumstances that determine whether an environment is abusive "may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. In determining whether a work environment is considered objectively "hostile," courts analyze the facts by asking whether a reasonable person under the same or similar circumstances with the same fundamental characteristics as the plaintiff, would find the work environment to be hostile. *See Crowe v. Wiltel Communications Sys.*, 103 F.3d 897, 900 (9th Cir. 1996). It is well established that "'simple teasing, offhand comments, and isolated incidents (unless extremely serious)' do not constitute a hostile or abusive work environment." *Davis*, 520 F.3d at 1095 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

Salehian argues that she was subjected to a hostile work environment because of negative comments supposedly related to her age that Chief of Staff Dickson made, such as her

desire to talk on the phone to customers versus handle issues online in contrast with the millennials in the office; that she had been with the state "forever" and that the State was moving to a new location to refresh the office and was interested in "fresh faces" and starting with a clean slate. ECF No. 37 at 4–5; ECF No. 42 at 20–21. Salehian alleges in her amended complaint that she was "extremely offended and humiliated by Chief of Staff Dickson's comments which she felt were directed at her age and her ability to do her job because of her age." ECF No. 37 at 5.

Salehian also argues that her alleged denial of attendance at a Financial Literacy leadership meeting in Nashville, TN in favor of Dickson in April of 2019, as well as "numerous [other] incidents of harassment over a roughly six-month period prior to her termination at the end of October 2019[,]"[4] attributed to an intimidating, hostile or offensive work environment for Plaintiff. ECF No. 42 at 20–21 (citing Salehian Aff., ECF No. 42-1 at ¶¶29-30).

       i. Salehian fails to demonstrate that her work environment was objectively hostile.

Even assuming arguendo that Salehian has demonstrated that defendants' alleged actions and comments were subjectively hostile, she fails as a matter of law to demonstrate that defendants' behavior constituted the kind of requisite frequency or pervasiveness to be objectively hostile.

As a threshold matter, the alleged comments here are a far cry from a targeted pattern of abusive comments directed at a plaintiff severe enough to affect her working conditions. All but one of Dickson's alleged comments were made generally, and the one comment directed at her, his remark that she had "been with the State forever," is ambiguous at best, and certainly far from severe. *See, e.g., Manatt v. Bank of America*, 339 F.3d at 792, 795–99 (co-workers' use of the term

---

[4] Though not detailed in this part of her motion, I interpret these "incidents" to include the other alleged instances of Treasurer Connie's supposed preferential treatment of younger employees detailed elsewhere in her motion and amended complaint, such as his decision to assign younger employees than Salehian larger offices.

"China-man," ridicule of the plaintiff's mispronunciation of English words, statement that "I've had the worst kind of trouble with your countrymen," using gestures mocking the appearance of Asians, held to be insufficient to create to hostile work environment); *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 643–44 (9th Cir. 2003) (holding a coworker's isolated remarks, six months apart, that an employee had "a typical Hispanic macho attitude" and "should consider transferring to the field because 'Hispanics do good in the field,'" plus negative remarks and complaints made about the plaintiff and yelling at him, were not severe enough to create a hostile work environment). Moreover, Salehian fails to demonstrate that the other alleged incidents, such as Dickson's attendance of the Financial Literacy leadership meeting or Treasurer's Conine's alleged decision to give Salehian a smaller office compared to her younger coworkers, were motivated by *age* bias. Her speculation of such, unaccompanied by supporting evidence, is insufficient to survive summary judgment on her hostile work environment claim. *See Copeland v. Graybar Elec. Co.*, 2023 U.S. Dist. LEXIS 118227, *17 (W.D. Wash. July 10, 2023); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. To be cognizable on summary judgment, evidence must be competent.").

Even if all her evidence is taken as true, no reasonable jury could find that Salehian was subjected to objectively severe comments or behavior motivated by age animus. For that reason, I grant defendants summary judgment on the age-related hostile work environment claim.

    C.  *Summary judgment on Salehian's FMLA interference claim is appropriate because she cannot prove a causal connection between her termination and the request for leave.*

Defendants argue that they are entitled to summary judgment on Salehian's FMLA claim because there is no evidence that Salehian's termination was motivated by her use of or request for FMLA leave. ECF No. 39 at 20. I agree.

Under the FMLA, it is "unlawful for any employer to interfere with...any right provided" for in the statute, 28 U.S.C. § 2615(a)(1), or implementing regulations, 29 C.F.R. § 825.220(b). *Aguirre v. California*, 842 Fed. Appx. 91, 93 (9th Cir. 2021). To make out a prima facie case of FMLA interference, an employee must establish that "(1) [they] were eligible for the FMLA's protections, (2) [their] employer was covered by the FMLA, (3) [they] were entitled to leave under the FMLA, (4) [they] provided sufficient notice of [their] intent to take leave, and (5) [their] employer denied [them] FMLA benefits to which [they] were entitled." *Sanders v. City of Newport*, 657 F.3d 772, 778 (9th Cir. 2011) (internal quotations omitted).

To prevail on a claim that an employer interfered with her rights by terminating her in violation of FMLA, a plaintiff must show "by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001). This can be proved by either direct or circumstantial evidence, or both. *Id*.

i.    Salehian provided defendants sufficient notice of her FMLA rights.

Though defendants argue that Salehian failed to provide defendants with "sufficient notice" of her intent to take FMLA leave, that is not the case.

"The Ninth Circuit has held that '[e]mployees need only notify their employers that they will be absent under circumstances which indicate that the FMLA might apply.'" *Dela Cruz v. DeJoy*, 2022 U.S. Dist. LEXIS 121877, 2022 WL 2668378, at *5 (N.D. Cal. July 11, 2022) (quoting *Bachelder*, 259 F.3d at 1130). "It is the employer's responsibility to determine when FMLA leave is appropriate, to inquire as to specific facts to make that determination, and to inform the employee of his or her entitlements." *Xin Liu v. Amway Corp.*, 347 F.3d 1125, 1134 (9th Cir. 2003); *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014) ("After an employee alerts the employer of desiring to take leave for a reason that would qualify under the FMLA, the employer will be expected to obtain any additional required information through informal means.") (internal quotations omitted). An employee seeking FMLA leave "need not expressly

assert rights under the FMLA or even mention the FMLA." 29 C.F.R. §§ 825.302(c), 825.303(b) (information that is sufficient "for an employer to reasonably determine whether the FMLA may apply to [a] leave request" may include "that a condition renders the employee unable to perform the functions of the job").

Here, Salehian provided defendants with sufficient information from which they would have been alert to the potential need for FMLA leave. On October 8, 2019, Salehian informed Treasurer Conine, Chief of Staff Dickson and Yeatts of her need to work from home because of the scabbing and pain on her face from her cancer treatment. Salehian Aff., ECF No. 42-1 at ¶54. On October 18, 2019, she updated them that she had completed her first round of chemotherapy treatments (two weeks of a six-week regiment), and thus had four weeks of treatment left. *Id.* at ¶57. Four days later, Salehian thanked them in email for allowing her to work from home during her current chemotherapy treatment and informing them that she would have to undergo two more rounds of chemotherapy treatment in early November and mid-December. *Id.* at ¶58, Ex. 5. On October 28, 2019, Salehian gave defendants FMLA paperwork explicitly explaining her potential need for intermittent leave or accommodations given that she will need "to heal from [the] treatment." *Id.* at Ex. 4. While defendants complain that Salehian only altered them of her need to work *from home*, between their awareness of Salehian's ongoing condition and the explanation on the FMLA paperwork, defendants were provided with ample information from which to form a reasonable belief that FMLA leave may in fact be required at some point in the future, and it was defendants' obligation to make any further, appropriate inquires. 29 C.F.R. § 825.303(c); *Xin Liu*, 347 F.3d at 1134; *Escriba*, 743 F.3d at 1243. As such, I find that Salehian has satisfied the sufficient notice aspect of her FMLA claim.

            ii.   Salehian fails to demonstrate that her FMLA-protected leave constituted a negative factor in the decision to terminate her.

Even though she can demonstrate that defendants were properly on notice, to prevail on her FMLA claim, Salehian must still prove that her FMLA-protected leave constituted a negative

factor in the decision to terminate her. *Bachelder*, 259 F.3d at 1125. Her claim fails because she provides no evidence, direct or circumstantial, evincing that her FMLA-leave was a factor in the decision to terminate her, nor even an argument to that effect. She just summarily states in her summary judgment response that "by firing Plaintiff instead of allowing her to take leave, defendants may have denied Salehian FMLA benefits to which she was entitled." ECF No. 42 at 24. Conversely, defendants provide evidence that the decision to terminate Salehian was in progress by August of 2019, well before the first time they would have first had reasonable notice of her potential need for FMLA-leave in October. ECF No. 39 at 6–7; *see Law v. Kinross Gold U.S.A., Inc*, 651 Fed. App'x 645, 648 (9th Cir. 2016) (affirming summary judgment on the plaintiff's FMLA interference claim where the evidence showed the defendant had set the plaintiff's discharge in motion months before the plaintiff's unanticipated hospitalization and need for leave). Because no reasonable jury could find that Salehian's FMLA-protected leave was a negative factor in her termination based on the record, I grant summary judgment for defendants on this count.

> D. *Summary judgment on Salehian's ADA disability discrimination claim is appropriate because she fails to demonstrate that she requested, and was rejected for, a reasonable accommodation nor that she suffered an adverse employment action because of her disability.*

Defendants argue that they are entitled to summary judgment on Salehian's ADA claim because Salehian's skin cancer does not qualify as a disability under the ADA, and even if it does, that there is no evidence that it affected the decision to terminate her. ECF No. 44 at 16–18.

In resolving summary-judgment motions for ADA claims, courts apply the same burden-shifting analysis derived from *McDonnell Douglas. See Raytheon Co. v. Hernandez*, 540 U.S. 44, 49–50 (2003) (applying *McDonnell Douglas* burden-shifting framework to ADA disability-discrimination claim). As applicable to ADA claims, that burden-shifting analysis requires a plaintiff to establish a prima facie case by showing three factors: (1) she is a disabled person within the meaning of the statute; (2) she is a qualified individual with a disability; and (3) she suffered an

adverse employment action because of her disability. *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996). Failing to establish any of these elements is fatal to an ADA claim. *See, e.g., Bradley v. Harcourt, Brace & Co.*, 104 F.2d 267, 272 (9th Cir. 1996) (affirming grant of summary judgment when plaintiff "failed to produce evidence showing that she has a disability"). If a plaintiff establishes her prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Raytheon*, 540 U.S. at 49 n.3. If a defendant proffers a nondiscriminatory reason for termination, "the presumption of intentional discrimination disappears," but the plaintiff can still prove disparate treatment by offering evidence that a defendant's proffered reason is pretextual. *Id.* (citation omitted).

"[T]he ADA says that discrimination includes an employer's not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified...employee unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of its business." *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, 620 F.3d 1103, 1110 (9th Cir. 2010) (internal quotations omitted). "[O]nce the employee requests an accommodation...the employer must engage in an interactive process with the employee to determine the appropriate reasonable accommodation." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002). But "there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and reasonable accommodation." *Snapp v. United Transp. Union*, 889 F.3d 1088, 1095 (9th Cir. 2018).

Even assuming arguendo that her skin cancer qualifies as a disability within the meaning of the ADA, Salehian's claim fails because she fails to prove element three of a prima facie case: that she suffered an adverse employment action because of her disability. Specifically, Salehian cannot demonstrate that defendants either denied her a "reasonable accommodation" or terminated her because of her disability. As a threshold matter, the evidence demonstrates that defendants honored the one disability-related request that Salehian made: allowing her to work from home because of redness and "scabbing" on her face from the cancer treatment. *See* Salehian

Dep. at 166–168; ECF No. 39-8. And, like the FMLA claim, the record is void of any evidence that her skin cancer or any related accommodations played a role in her termination, which was decided *before* defendants even knew about her condition or a need for accommodation. ECF No. 39 at 6–7; ECF No. 39-2 at 24–26. *Brown v. Constellation Brands, Inc.*, 2018 U.S. Dist. LEXIS 172084, *30 (E.D. Cal. Oct. 4, 2018) ("Any evidence that [defendant] learned of a purported disability after deciding to terminate [plaintiff] is not probative and is irrelevant to determining whether [defendant] acted from discriminatory animus."); *see also Parker v. Comcast Cable Communs. Mgmt., LLC*, 2017 U.S. Dist. LEXIS 80637, *11 (N.D. Cal. May 25, 2017). For that reason, I grant defendants summary judgment on the ADA claim.

E.   *Summary judgment on Salehian's Title VII sex/gender discrimination claim is appropriate because she fails to provide sufficient detail establishing that terminated male employees were "similarly situated."*

Defendants argue that Salehian's Title VII claim fails because she fails to demonstrate that her male comparators were similarly situated and that, even if she could establish a prima facie case of sex/gender discrimination, Salehian has failed to offer any evidence that defendants' asserted nondiscriminatory reasons for the alleged different treatment was pretextual. ECF No. 44 at 19–20.

Under Title VII, employers may not discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment because of that individual's sex. 42 U.S.C. § 2000e-2 (a). Disparate treatment arises when an employer treats some employees less favorably than others due to their sex. *Harris*, 510 U.S. at 20; *Frank v. United Airlines, Inc.*, 216 F.3d 845, 853 (9th Cir. 2000). To establish a prima facie case of gender discrimination, a plaintiff must plead facts that: (1) they are a member of a protected class, (2) they performed according to legitimate expectations, (3) they suffered an adverse employment action, and (4) similarly situated individuals outside their protected class were "treated more favorably, or

other circumstances surrounding the adverse employment action give rise to an inference of discrimination." *Hawn v. Executive Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010).

Salehian alleges that Treasurer Conine permitted certain male employees to enjoy a number of benefits that she was not allowed, including being able to retire, vacation pay, extended health benefits and Public Employment Requirement System (PERS) benefits, employee travel and responding to work requests. ECF No. 42 at 29 (citing Salehian Aff., ECF No.42-1 at ¶¶43, 47–50, Ex. 2). However, her Title VII claim fails out of the gate because Salehian fails to demonstrate that these male employees were similarly situated in all relevant aspects.

"[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003). Salehian lists a number of ways in which these male deputies had similar jobs to her, including that: (1) they all served at the pleasure of the Treasurer; (2) they were all sworn into office by the State Treasurer and took the same oath of office; (3) they were all required to take the same employee training course (see NAC 284.498); (4) they were all entitled to the same annual leave as outlined in NRS 284.350; and (5) they all earned time in the PERS according to the policies, procedures and statutes outlined in NRS Chapter 286. ECF No. 42 at 29. However, Salehian fails to demonstrate how any of them had comparable job *duties* or histories nor does she show that the circumstances regarding her end of employment and theirs were at all similar. For example, she has not demonstrated that these male counterparts were involuntarily terminated for performance reasons. *See Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (summary judgment is appropriate where plaintiff failed to meet his burden of establishing a prima facie case of discrimination because the individuals he identified as similarly situated did not have comparable histories of misconduct). For this reason, Salehian fails to establish element four of her prima facie case and I thus grant defendants summary judgment on the Title VII claim.

## IV.    Conclusion

IT IS THEREFORE ORDERED that defendants' motion for summary judgment [ECF No. 39] is GRANTED.

The Clerk of Court is kindly directed to enter judgment accordingly and CLOSE THIS CASE.

DATED: October 12, 2023

_____
Cristina D. Silva
United States District Judge

25