**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

NOV 13 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| SHEILA SALEHIAN,<br><br>    Plaintiff - Appellant,<br><br>  v.<br><br>NEVADA STATE TREASURER'S OFFICE; ZACH CONINE, State Treasurer; STATE OF NEVADA,<br><br>    Defendants - Appellees. | No. 23-3384<br><br>D.C. No.<br>2:21-cv-01512-CDS-NJK<br><br>MEMORANDUM* |

Appeal from the United States District Court
for the District of Nevada
Cristina D. Silva, District Judge, Presiding

Argued and Submitted October 10, 2024
Las Vegas, Nevada

Before: BEA, BENNETT, and MILLER, Circuit Judges.

Sheila Salehian sued her former employer, the Nevada State Treasurer's Office, as well as the State of Nevada and Treasurer Zach Conine (collectively, "Defendants") for violations of the Age Discrimination in Employment Act of 1967 (ADEA), the Family and Medical Leave Act of 1993 (FMLA), and the

---

    *  This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Americans with Disabilities Act of 1990 (ADA). The district court granted summary judgment to Defendants on all claims, and Salehian appealed. We have jurisdiction under 28 U.S.C. § 1291. We reverse summary judgment on the ADEA discrimination claim and affirm on the remaining claims.

We review de novo a district court's grant of summary judgment. *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). At the summary judgment stage, courts must "review all of the evidence in the record," "draw all reasonable inferences in favor of the nonmoving party," and refrain from "mak[ing] credibility determinations or weigh[ing] the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

1. "We evaluate ADEA claims that are based on circumstantial evidence of discrimination by using the three-stage burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*," 411 U.S. 792 (1973). *Diaz*, 521 F.3d at 1207. The district court held that Salehian established a prima facie case of age discrimination under the ADEA, and the parties do not challenge this holding. The parties also do not dispute that Defendants have met their burden of "articulat[ing] a legitimate, non-discriminatory reason for [their] adverse employment action." *Id.* Thus, the only issue on appeal is whether the district court erred in its decision on pretext.

The district court granted summary judgment on the ADEA age discrimination claim because it determined that Salehian did not demonstrate pretext. Defendants had "proffered testimony from the executive team" that Salehian was fired because of "(1) her resistance to changes/challenges, (2) her general unwillingness to focus on the new administration's priorities, and (3) her unprofessional conduct toward coworkers." The district court concluded that Salehian failed to produce "specific" and "substantial" evidence tending to show that at least the first two of Defendants' proffered nondiscriminatory reasons for the dismissal were not credible. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (collecting cases); *see also Reeves*, 530 U.S. at 144, 147 (holding that if a plaintiff makes "a substantial showing that [an employer]'s explanation was false," "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation"). We disagree.

Regarding the first two reasons, Salehian presented evidence sufficient to raise a triable issue of fact about whether she was resistant to changes and challenges and unwilling to focus on Treasurer Conine's priorities. Beth Yeatts,[1]

---

[1] The district court disregarded Yeatts's affidavit as probative of pretext because Yeatts was not involved in the decision to terminate Salehian. It relied on *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996), for the proposition that "[i]t is the perception of the decision maker which is relevant." *Id.* at 960–61

Salehian's direct supervisor throughout Treasurer Conine's tenure, testified that Salehian "was more than willing [to] take direction and focus on administration priorities from Treasurer Conine when he took office in 2019" and put up "no resistance to the changes Treasurer Conine put in place once he took office." Yeatts's testimony that Salehian "would wait weeks, and even months without commentary or feedback on items she had been asked to provide to Treasurer Conine or [Chief of Staff Miles] Dickson" is further evidence that might lead a trier of fact to reject Defendants' stated concerns with Salehian's adaptability— including her failure to develop a draft strategic plan into a "responsive" final product.

    We agree with the district court's suggestion that Salehian also provided evidence disputing that she engaged in unprofessional conduct toward coworkers. Yeatts testified that she "never witnessed unprofessional conduct by [Salehian]

---

(quoting *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980)). That case concerned a plaintiff's attempt to rebut the employer's proffered reasons with "self-assessment," including "unsubstantiated allegations and bald assertions concerning her own qualifications." *Id.* At issue here is testimony about Salehian's performance from Salehian's direct supervisor, not from Salehian herself.

    The district court also disregarded Yeatts's affidavit because Yeatts was fired by the same decisionmakers on the same day as Salehian was, "suggesting that [Yeatts's] work performance was similarly unsatisfactory to Treasurer Con[ine] and his executive team." Two inferences are required: that the similar timing meant similar performances by Yeatts and Salehian and that this in turn rendered all of Yeatts's testimony irrelevant. Thus, the district court's conclusion rests on inferences improperly drawn in the moving parties' favor and entails the weighing of evidence. *See Reeves*, 530 U.S. at 150.

towards co-workers, subordinates, or supervisors" and "was not aware of one staff member complaining of Salehian 'yelling [at] and belittling' staff members." This suffices to create a triable issue of fact as to the falsity of Defendants' third cited reason for her termination.

Viewed in the light most favorable to Salehian, this evidence establishes "a genuine issue . . . with respect to the credibility of each of the employer's proffered explanations." *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987). Thus, the record supports an inference of pretext for Salehian's ADEA age discrimination claim, and Defendants are not entitled to summary judgment on this claim.

2. We agree with the district court that summary judgment is appropriate as to the ADEA age-related hostile work environment claim based on eleven incidents alleged by Salehian because she fails to show that they were pervasive or hostile enough to create a "working environment" that is "objectively . . . perceived as abusive." *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir. 1995) (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). The incidents alleged include reductions in duties, such as media outreach opportunities and opportunities to accompany Conine to public functions, as well as a handful of comments by Dickson, such as that Salehian "had been with the state forever" and "it probably has been 20 years since the policies and procedures [for a program

managed by Salehian] were updated." Such actions and statements do not amount to conduct that would be viewed as offensive by "a reasonable person with the same fundamental characteristics" (i.e., age) as Salehian. *Id.* And "'offhand comments[] and isolated incidents (unless extremely serious)' do not constitute a hostile or abusive work environment." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1095 (9th Cir. 2008) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

       3.     The district court correctly granted summary judgment as to the FMLA interference claim because Salehian "provides no evidence, direct or circumstantial, evincing that her FMLA-leave was a factor in the decision to terminate her, nor even an argument to that effect." On appeal, Salehian argues only that "it is reasonable to make the circumstantial inference" that Defendants terminated Salehian because they "didn't want to grant her leave so they terminated her instead." But asking us simply to infer an FMLA-related reason for her termination is neither "direct [n]or circumstantial *evidence*" that FMLA leave was a "negative factor in the decision to terminate her." *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1125 (9th Cir. 2001) (emphasis added). There is also unrebutted evidence that Defendants began to work on Salehian's termination in late August or early September 2019, before she notified them of her cancer diagnosis and treatment in October 2019.

        4.        We agree with the district court that summary judgment is appropriate as to the ADA disability discrimination claim because Salehian fails to prove that she "suffered an adverse employment action *because* of [her] disability." *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015) (emphasis added) ("[A] plaintiff must establish a prima facie case [of disability discrimination under the ADA] by showing that: (1) he is a disabled person within the meaning of the statute; (2) he is a qualified individual with a disability; and (3) he suffered an adverse employment action because of his disability." (quoting *Hutton v. Elf Atochem N. Am., Inc.*, 273 F.3d 884, 891 (9th Cir. 2001))). Even assuming that skin cancer qualifies as a disability under the ADA, Salehian points to no evidence supporting that she was terminated because of her skin cancer or need to work from home while receiving cancer treatment.

        **AFFIRMED in part, REVERSED in part, and REMANDED.**[2]

---

[2] The parties shall bear their own costs on appeal.